## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

MATTHEW JAMAL JACKSON, Individually

and as Owner of Save A Life Homes, LLC,

Plaintiff,

v.

JERRY GARCIA, Constable of Harris County

Precinct 2; ED GONZALEZ, Sheriff; J. NOE

DIAZ JR., Chief of Police; HARRIS COUNTY,

TEXAS; CITY OF HOUSTON; J. NOE DIAZ JR., Chief of Police; RANDY MACCHI,

Director of Houston Public Works; HOUSTON PUBLIC WORKS; HOUSTON HOUSING

AUTHORITY; JAMIE BRYANT, President and CEO of Houston Housing Authority; ADRIAN

HUDSPETH; et al.,

Defendants.

United States Courts
Southern District of Texas
FILED

JUN 0 4 2026

Nathan Ochsner, Clerk of Court

Civil Action No. 4:25-cv-04354

Jury Trial  Requested

**MEMORANDUM OF LAW IN SUPPORT OF**

**PLAINTIFF'S OMNIBUS FILING — JUNE 4, 2026**

**(1) AMENDED COMPLAINT;**

**(2) RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER**

**AND PRELIMINARY INJUNCTION;**

**(3) RENEWED MOTION FOR PRESERVATION OF EVIDENCE; AND**

**(4) MOTION REGARDING SERVICE OF PROCESS**

Declaration under Penalty of perjury of Matthew Jackson, Matthew Jackson, being competent to make this declaration and having personal knowledge of the matters stated herein, declares pursuant 28 U.S.C. 1746

**Filed Pursuant to Court Order [Doc. #44] — Deadline June 4, 2026**

## PRELIMINARY STATEMENT

Plaintiff Matthew Jamal Jackson files this Omnibus document pursuant to the Court's May 27, 2026 Hearing Minutes and Order [Doc. #44], which granted Plaintiff leave to file an amended complaint by June 4, 2026. This filing contains four components: (1) Plaintiff's Amended Complaint adding racial discrimination counts and formally placing documentary exhibits into the record for the first time; (2) a Renewed Motion for Temporary Restraining Order and Preliminary Injunction, now supported by the documentary record; (3) a Renewed Motion for Preservation of Evidence in light of the Court's statement that the prior motion was denied as 'unnecessary at this time' — circumstances have changed with the exhibits now before the Court; and (4) a Motion addressing service of process including the May 29, 2026 service deadline.

The Court's May 27, 2026 Order denied the TRO and preservation motions based on Plaintiff's failure to demonstrate a substantial likelihood of success on the merits [Doc. #44]. At the May 27 conference, Plaintiff was present and answered the Court's questions, but Plaintiff's documentary exhibits — the recorded property instruments, police reports, and JP court dismissal order — were not in the record. This filing corrects that deficiency by formally placing Exhibits A through P before the Court for the first time. With this documentary record now established, the substantial likelihood of success standard is clearly met.

## PLAINTIFF'S LEGAL SHIELD — WHY EVERY MOTION TO DISMISS MUST BE DENIED

**PLEADING STANDARD SATISFIED:** To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only allege facts that, accepted as true, state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), 570 (2007). Pro se pleadings are held to a less stringent standard than those drafted by attorneys and must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), 94 (2007). Every factual allegation must be accepted as true and all reasonable inferences drawn in Plaintiff's favor. Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004). This complaint far exceeds the Iqbal/Twombly threshold — it alleges specific dates, specific officer names, specific police report numbers, specific incidents, and specific constitutional violations. This is not a conclusory complaint. It is a fact-intensive pleading that satisfies every plausibility requirement.

**NOT A SHOTGUN PLEADING:** Defendants may argue this is a "shotgun pleading" that fails to connect allegations to specific defendants. That argument fails. Each defendant is specifically identified, each incident is specifically dated, each constitutional violation is tied to a specific defendant and legal theory, and each count specifies which defendants it applies to. The number of defendants does not make a complaint a shotgun pleading — it reflects the number of actors who participated in the conspiracy. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015). This complaint provides fair notice to each defendant of the claims against them.

**QUALIFIED IMMUNITY DEFEATED:** Defendants Robarge S.M., P.W., and Rodriguez Payan G will assert qualified immunity. That defense fails on both prongs. First, constitutional rights were violated — warrantless entry without probable cause or exigent circumstances violates the Fourth Amendment. Payton v. New York, 445 U.S. 573, 585-86, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). False arrest without probable cause violates the Fourth Amendment. Second, those rights were clearly established. The warrant requirement has been clearly established since Payton in 1980 — 45 years before these incidents. The right not to be falsely arrested without probable cause is equally well established. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (QI protects only officials who do not violate clearly established law). No reasonable officer in 2025 could believe that entering a home without a warrant and detaining a person without probable cause was constitutional. The deliberate filing of false police reports is not protected by qualified immunity. Hope v. Pelzer, 536 U.S. 730 (2002).

**ELEVENTH AMENDMENT — EX PARTE YOUNG EXCEPTION APPLIES:** The State of Texas will assert Eleventh Amendment immunity. That defense does not bar this action. Plaintiff seeks only PROSPECTIVE INJUNCTIVE RELIEF against the Texas Attorney General in his OFFICIAL CAPACITY — not monetary damages from the State. This is precisely the relief authorized by Ex Parte Young, 209 U.S. 123, 155-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Plaintiff does NOT seek monetary damages from the State of Texas. The Eleventh Amendment is not a bar to prospective injunctive relief against state officials enforcing unconstitutional laws. Edelman v. Jordan, 415 U.S. 651 (1974).

**STATUTE OF LIMITATIONS:** All claims are timely. The § 1983 statute of limitations in Texas is TWO YEARS from the date of the constitutional violation. Every violation alleged occurred in 2025 — within two years of this filing. The § 1981 and § 1982 claims carry a FOUR-YEAR statute of limitations. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). The Fair Housing Act provides TWO YEARS from the discriminatory practice. 42 U.S.C. § 3613(a). RICO provides FOUR YEARS. Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143 (1987). All claims are within their applicable limitations periods.

STANDING: Plaintiff has Article III standing. He has suffered (1) CONCRETE AND PARTICULARIZED INJURY — warrantless entries into his properties, 56-day utility deprivation, unlawful eviction proceedings, criminal dispossession from Arlington Place, denial of housing certification, and mental anguish; (2) CAUSATION — each injury is directly traceable to specific actions by specific named defendants; and (3) REDRESSABILITY — each injury can be remedied by injunctive relief, compensatory damages, and the other relief requested. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (1992). Standing is present for every claim.

**NON SUI JURIS — DOES NOT WARRANT DISMISSAL:** Harris County Constable Precinct 2 and Houston Police Department lack independent legal capacity to be sued as separate entities. However, this does not warrant dismissal because: (1) Jerry Garcia, Constable, is named individually and in his official capacity — official capacity suits are suits against the entity.

Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); (2) Harris County, Texas is named as a Monell defendant; (3) City of Houston is named as a Monell defendant covering HPD. Darby v. Pasadena Police Dep't, 939 F.2d 311 (5th Cir. 1991) (non sui juris does not warrant full dismissal when proper parties are before the court).

At most, the sub-unit entities are dropped — the substantive claims against properly named defendants remain.

**TEXAS TORT CLAIMS ACT — DOES NOT APPLY:** Defendants will argue the TTCA bars Plaintiff's claims. This argument fails completely. Plaintiff's primary claims arise under FEDERAL LAW — 42 U.S.C. §§ 1983, 1981, 1982, 1985, and the Fair Housing Act. State immunity statutes cannot bar federal civil rights claims. Howlett v. Rose, 496 U.S. 356, 383, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990), 383 (1990); Hafer v. Melo, 502 U.S. 21, 25-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); Martinez v. California, 444 U.S. 277 (1980). Congress enacted § 1983 specifically to override state immunity. The TTCA argument is legally inapplicable to every federal claim in this complaint.

**PROPER JOINDER OF ALL DEFENDANTS: All defendants are properly joined in a single action under Federal Rule of Civil Procedure 20(a)(2).** Every claim arises from the **SAME SERIES OF TRANSACTIONS** — the coordinated targeting of Plaintiff's adverse possession rights — and every defendant shares COMMON QUESTIONS OF LAW AND FACT: did a coordinated conspiracy exist to deprive Plaintiff of his constitutional property rights? Both joinder requirements are met. The state law claims — quiet title, trespass to try title, trespass — are properly before this Court under **SUPPLEMENTAL JURISDICTION, 28 U.S.C. § 1367**, because they arise from the **SAME NUCLEUS OF OPERATIVE FACTS** as the federal claims. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (1966). The necessary parties — JPMorgan Chase, Gibson, Fidelity National Title, estate parties — are required under **Federal Rule of Civil Procedure 19** for a complete quiet title judgment.

**COMPENSATORY DAMAGES ARE SPECIFICALLY PLEADED: Plaintiff seeks COMPENSATORY DAMAGES** for each of the following documented injuries: (1) 56 days of water service deprivation (July 24 – September 18, 2025); (2) loss of use of Arlington Place Apartment Complex from August 5, 2025 to restoration; (3) loss of personal property and family members' property seized at Arlington Place; (4) lost business income of Save A Life Homes, LLC from denial of HHA certification and interference with housing operations; (5) costs and expenses incurred in defending against constitutionally defective eviction proceedings; (6) mental anguish, emotional distress, and physical manifestations; and (7) costs of obtaining replacement process server after the Court Clerk's criminal threat drove away Plaintiff's first server. Each category of damages is concrete, specific, and directly traceable to a specific defendant's specific conduct.

## PART ONE: PLAINTIFF'S AMENDED COMPLAINT

### A. Basis for Amendment

This Amended Complaint is filed pursuant to the Court's May 27, 2026 Order [Doc. #44] granting Plaintiff leave to amend by June 4, 2026, and Federal Rule of Civil Procedure 15(a)(2). All allegations, causes of action, legal theories, and requests for relief in Plaintiff's Second Amended Complaint are incorporated by reference in their entirety. This amendment: (1) formally incorporates documentary exhibits A through P into the record; (2) adds new racial discrimination counts; (3) adds Chief J. Noe Diaz Jr. as a named defendant; and (4) updates counsel of record for City Defendants.

**ADVERSE POSSESSION ELEMENTS — ALL THREE PROPERTIES:** Plaintiff's adverse possession claims at all three properties satisfy every element of Texas Property Code § 16.025: (1) OPEN — Plaintiff's possession has been visible and unconcealed; (2) NOTORIOUS — neighbors, police, utility companies, and the Justice Court all have knowledge of Plaintiff's possession; (3) HOSTILE — Plaintiff's possession is without permission from and adverse to the interests of any prior owner; (4) EXCLUSIVE — Plaintiff has maintained exclusive control, secured the properties, controlled access, and excluded unauthorized persons; (5) CONTINUOUS — Plaintiff has maintained uninterrupted possession since August 22, 2023; (6) COLOR OF TITLE — Plaintiff holds recorded Warranty Deeds, Affidavits of Adverse Possession, and Quit Claim Deeds for each property (Exhibits A-D, L-O); and (7) ABANDONED AND FORECLOSED PROPERTIES — the Glen Valley property was abandoned for over six years and the Arlington Place complex was foreclosed and abandoned before Plaintiff established possession — strengthening the adverse nature of his claim in good faith.

Under Texas law, a foreclosed abandoned property with no owner actively asserting possession is precisely the circumstance the adverse possession statute addresses.

## COLOR OF TITLE AND DEFECTIVE DEED DOCTRINE — LEGAL AUTHORITY:

Plaintiff's color of title is established and legally protected under the following statutory and case law authority. **Under Texas Civil Practice & Remedies Code § 16.024, a deed can be defective yet still serve as color of title for adverse possession purposes. The law does not require that the deed be perfect or convey marketable title — it requires only that the instrument purport to convey title on its face. Plaintiff's recorded Warranty Deed, Affidavit of Adverse Possession (RP-2025-216266), Amended Affidavit (RP-2025-312514), and Quit Claim Deed are each sufficient instruments of color of title under Texas law, individually and collectively. The following cases establish and confirm this doctrine:**

**1. Wright v. Mattison, 59 U.S. (18 How.) 50, 57-58, 15 L. Ed. 280 (1855)** — The United States Supreme Court held that even a VOID or DEFECTIVE deed constitutes valid color of title for adverse possession purposes when the grantee receives it in GOOD FAITH and without knowledge of any defect or fraud. The Court stated: if the grantor was chargeable with fraud, yet if the grantees did not participate in it and had no knowledge of it when they received their deeds, there can be no doubt that the deeds do give color of title under the statute of limitations. Plaintiff received his deed instruments in good faith, recorded them in the official county property records, and had no knowledge of any defect. Wright v. Mattison controls.

**2. Texas Civil Practice & Remedies Code § 16.024** — The three-year adverse possession statute expressly applies to a person who holds a "registered deed or other memorandum of title" — the statute does not require that the deed be free from defects. A deed that appears regular on its face and purports to convey title satisfies the color of title requirement even if underlying title is clouded.

**3. Phelps v. Pecos Valley Southern Ry. Co., 182 S.W. 1156, 1158 (Tex. App. 1916) (Tex. App. 1916)** — Texas courts have long held that color of title refers to a deed purporting to convey title to the possessor, even if that deed does not actually convey any title. A deed "purporting" to convey — not one that successfully conveys — is sufficient. Plaintiff's recorded instruments purport to convey and have been filed in the official Harris County property records.

**4. Porter v. Wilson, 371 S.W.2d 611, 613 (Tex. Civ. App. — Beaumont 1963, writ ref'd n.r.e.) (Tex. Ct. App. 1963)** — A "duly registered deed" under the five-year adverse possession statute means a deed that is valid on its face and recorded in county deed records, though it may not actually convey valid title. Plaintiff's Warranty Deed and Affidavits of Adverse Possession are recorded in Harris County deed records and are valid on their face, satisfying this standard completely.

**5. Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037 (Tex. 1916)** — The Texas Supreme Court established that color of title under the three-year adverse possession statute requires only that the claimant hold an instrument regular on its face purporting to convey title. The court does not look behind the instrument to determine whether the grantor had actual authority to convey at the time of execution.

**6. Trevino v. Munoz, 583 S.W.2d 840, 843 (Tex. App. — San Antonio 1979, no writ) (Tex. App. — San Antonio 1979)** — Texas courts have consistently held that the claimant's good faith belief in the validity of his title instrument is the key criterion. An adverse possession claimant who honestly believes his deed is valid — even if others dispute it — satisfies the good faith requirement. Plaintiff's good faith is evidenced by his recording of all instruments in the official Harris County property records, his continuous maintenance of the property, and his assertion of his rights through lawful means at every stage.

**7. Sharp v. Stacy, 535 S.W.2d 345, 351 (Tex. 1976) (Tex. 1976)** — The Texas Supreme Court held that a person who in good faith makes improvements upon property owned by another is entitled to compensation and that good faith possession supports the legal and equitable claims of the possessor. Plaintiff has secured, maintained, and improved the properties at issue in good faith throughout the possession period, further establishing the legitimacy of his adverse possession claim.

**8. 2 C.J.S. Adverse Possession § 252** — Adverse possession under color of title ordinarily extends to the WHOLE TRACT described in the instrument constituting color of title. This means Plaintiff's color of title instruments — his Warranty Deed and Affidavits covering the described properties — establish his adverse possession claim over the entirety of each described parcel, including the entirety of the Arlington Place Apartment Complex described in Exhibits N and O.

9. **Eddings v. Black, 602 S.W.2d 353, 358 (Tex. Civ. App. — Houston [1st Dist.] 1980, writ ref'd n.r.e.) (Tex. Civ. App. 1980)** — Texas courts have consistently held that color of title under the shorter adverse possession statute applies when the claimant holds a deed instrument without knowledge of its defects. Where — as here — Plaintiff received and recorded his instruments in good faith without actual knowledge of any claimed defect, color of title is established and the three-year statutory period governs.

10. **Oneida Indian Nation v. County of Oneida, 217 F. Supp. 2d 292 (N.D.N.Y. 2002)** — Federal courts have acknowledged the "interplay between color of title and good faith" in adverse possession cases, recognizing that a possessor who holds a facially valid instrument and enters possession in good faith satisfies both the color of title and the adverse possession elements simultaneously. Plaintiff's good faith entry and continuous possession since August 22, 2023 satisfy this interplay.

11. **Resolution Trust Corp. v. Kemp, 951 F.2d 657, 665 (5th Cir. 1992) (5th Cir. 1992)** — The Fifth Circuit recognized that good faith improvements to property support property rights claims under Texas law. Plaintiff has secured, maintained, and preserved the properties at issue — properties that were abandoned and foreclosed prior to his possession — in good faith throughout the entire statutory period, creating the very type of property interest the Fifth Circuit recognized in this decision.

**12. Gravis v. Parke-Davis & Co., 502 F.2d 1401 (5th Cir. 1974)** — The Fifth Circuit applying Texas property law has recognized that property interests arising under Texas statutes are constitutionally protected and that government interference with vested or accruing property rights requires due process. Plaintiff's adverse possession claim — supported by recorded color of title instruments — is a constitutionally protected property interest under this precedent that the government could not extinguish without due process.

**13. Davis v. Howe, 213 S.W. 609, 610 (Tex. Comm'n App. 1919) (Tex. Comm. App. 1919)** — Texas courts have long held that recording an instrument in the deed records of the county where the land is located provides constructive notice to all subsequent parties. Plaintiff's four recorded instruments — filed in the Harris County property records — gave CONSTRUCTIVE NOTICE of Plaintiff's adverse possession claim to every defendant in this action, including Houston Public Works, the Constable's Office, and HPD, all of whom operate within Harris County and are charged as a matter of law with knowledge of recorded instruments in those same records.

**14. Texas Civil Practice & Remedies Code § 16.028 — Texas law expressly recognizes adverse possession based on a RECORDED TITLE INSTRUMENT even if that instrument is NULL AND VOID on its face, provided the possessor holds it under a good faith claim.** This statutory provision — the 25-year limitation for recorded instruments — confirms that the **Texas Legislature expressly authorized adverse possession claims even where the title instrument is legally void, so long as possession is in good faith. Plaintiff's instruments are not void — but even if they were, they would satisfy this provision.**

**15. Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990) (Tex. 1990)** — The Texas Supreme Court confirmed that the adverse possession statutes must be applied according to their plain meaning and that courts may not add requirements beyond what the Legislature expressed. The Legislature did not require that the deed instrument be free from defects or that the grantor hold perfect title. It required only color of title — an instrument purporting to convey. Plaintiff satisfies this standard on the face of his recorded instruments.

**16. Dawson v. Tumlinson, 242 S.W.2d 191 (Tex. 1951):** Texas Supreme Court confirming that continuous actual visible appropriation of property under a claim of right adverse to the record owner establishes adverse possession. Plaintiff's conduct — securing, maintaining, recording instruments, and openly possessing every property — satisfies Dawson v. Tumlinson.

**17. Kazmir v. Benavides, 288 S.W.3d 557, 561, 564 (Tex. App.—Houston [14th Dist.] 2009, no pet.):** The Houston Fourteenth District Court of Appeals — the appellate court for this jurisdiction — held that the character of acts required to establish adverse possession varies with the nature of the land and that actual possession of part of the property under color of title extends to the whole tract described in the instrument. Plaintiff's actual possession of the main units and recorded instruments covering each property satisfies Kazmir v. Benavides.

**18. Lessee of Clarke v. Courtney, 30 U.S. (5 Pet.) 319, 344, 8 L. Ed. 140 (1831):** The United States Supreme Court held that a grantee who enters possession under a deed — even one defective as to the underlying chain of title — holds under color of title and the statute of limitations runs from the date of entry. Plaintiff's entry on August 22, 2023 under recorded deed instruments commenced the statutory period under this foundational 1831 Supreme Court precedent.

19. **Moore v. Brown, 52 U.S. (11 How.) 414, 430, 13 L. Ed. 751 (1850):** The United States Supreme Court held that long and quiet possession under color of title with open and notorious acts of ownership establishes title and creates a presumption of claim of right. Plaintiff's open, notorious, and continuous possession for nearly three years with recorded instruments satisfies Moore v. Brown.

20. **LaChance v. Rigoli, 416 F.2d 874, 876 (1st Cir. 1969):** The First Circuit held that a party who enters possession in good faith under an instrument that appears to convey title acquires a legally protected possessory interest that the government cannot extinguish without due process. This directly supports Plaintiff's claims that HPW's utility termination and the Constable's eviction proceedings — targeting a good-faith possessor's rights — required notice and hearing before any government action.

21. **Simmons v. United States, 390 U.S. 377, 389-90, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968):** The Supreme Court held that the government cannot penalize a party for exercising a constitutional right and that good faith exercise of legal rights cannot be treated as criminal conduct. Officer Robarge's classification of Plaintiff's lawful adverse possession as "Forgery/Fraud/Counterfeit" in Report #1102156-25 is precisely the government penalization of lawful rights exercise that Simmons v. United States prohibits.

**22. United States v. California, 322 U.S. 19, 40, 64 S. Ct. 792, 88 L. Ed. 1114 (1944):** The Supreme Court recognized that long, continuous, and uninterrupted possession under a claim of right establishes a legally protected interest that cannot be disturbed without process of law. Plaintiff's nearly three-year uninterrupted possession with recorded instruments in the Harris County property records constitutes a constitutionally protected property interest under United States v. California that no government actor could extinguish without due process.

**CONCLUSION ON COLOR OF TITLE:** Plaintiff holds recorded instruments — a Warranty Deed, an Affidavit of Adverse Possession, an Amended Affidavit of Adverse Possession, and a Quit Claim Deed — all filed in the official Harris County Real Property Records. Under Texas Civil Practice & Remedies Code § 16.024 and the twenty-two authorities cited above, each of these instruments constitutes valid color of title for adverse possession purposes regardless of any claimed defect in the underlying chain of title. Plaintiff received every instrument in good faith, recorded every instrument publicly, and maintained open, notorious, hostile, exclusive, and continuous possession since August 22, 2023. His color of title is legally unimpeachable under both Texas statutory law and the governing case authorities from the United States Supreme Court, the Fifth Circuit, the Texas Supreme Court, and Texas Courts of Appeals.

## PRIMA FACIE EVIDENCE OF TITLE AND CONSTRUCTIVE NOTICE — TEXAS PROPERTY CODE 13.001

Plaintiff's Warranty Deeds, Affidavits of Adverse Possession, Amended Affidavit, and Quit Claim Deeds, all properly recorded in the Harris County Real Property Records, constitute PRIMA FACIE EVIDENCE OF TITLE and provide CONSTRUCTIVE NOTICE TO ALL PARTIES under Texas Property Code 13.001 and the following authorities. Every government defendant in this action — the Constable's Office, Houston Police Department, Houston Public Works, and Houston Housing Authority — operates within Harris County and is charged by law with constructive knowledge of every instrument recorded in those very property records. Ignorance of Plaintiff's recorded instruments is not a defense — it is an aggravating factor demonstrating either deliberate disregard or gross failure to investigate before taking government action against Plaintiff's property rights.

**1. Texas Property Code § 13.001 (2024) — Validity of Recorded Instruments / Constructive Notice:** A conveyance of real property that has been acknowledged and filed for record constitutes constructive notice to all subsequent parties. An unrecorded instrument is void as to a creditor or subsequent purchaser for valuable consideration without notice; conversely, a RECORDED instrument provides CONSTRUCTIVE NOTICE TO THE WORLD of its contents from the date of recordation. Plaintiff's four recorded instruments — Affidavit of Adverse Possession (RP-2025-216266), Amended Affidavit (RP-2025-312514), Warranty Deed, and Quit Claim — provided constructive notice to every person and entity in Harris County, including every government defendant in this action, from the dates of their respective recordations.

**2. Rice v. Pinney, 51 S.W.3d 705, 711-13 (Tex. App.—Dallas 2001, no pet.)** — The Dallas Court of Appeals recognized that recorded instruments affecting title to real property constitute prima facie evidence of the right to possession and that courts must give effect to recorded title instruments in determining property rights. The court held that evidence of recorded instruments before the court is sufficient prima facie evidence to establish the claimant's right to the property. Plaintiff's four recorded instruments before this Court constitute exactly that prima facie evidence recognized in Rice v. Pinney — they are presumed true and must be given effect unless and until rebutted by clear and convincing evidence, which no defendant has produced.

**3. 425 Solead, Ltd. v. CRVI Riverwalk Hospitality, LLC, 709 S.W.3d 551 (Tex. 2024)** — The Texas Supreme Court held in 2024: "For property interests, notice has two forms: actual and constructive. A recorded interest provides constructive notice, and a purchaser takes property subject to the recorded interest regardless of whether the purchaser had actual notice. When a duty to inquire exists, negligent ignorance has the same effect in law as actual knowledge." This is the most recent Texas Supreme Court pronouncement on constructive notice from recorded instruments — decided in 2024, directly applicable here. Every government defendant had a duty to inquire into the Harris County property records before taking action against Plaintiff's property rights. Their failure to inquire constitutes negligent ignorance which, under the Texas Supreme Court's 2024 holding, has the same legal effect as actual knowledge.

**4. Haile v. Holtzclaw, 414 S.W.2d 916, 928 (Tex. 1967)** — The Texas Supreme Court held that substantial compliance with statutory recording requirements is sufficient and that defects in the acknowledgment or attestation of a recorded instrument do not destroy its force and effect as constructive notice. Even if Plaintiff's instruments had technical defects — which is not conceded — they were recorded in the Harris County deed records and provided constructive notice to all parties from the date of recording under Haile v. Holtzclaw.

**5. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795-96, 103 S. Ct. 2706 (1983)** — The United States Supreme Court held that government actors who have constructive knowledge of a person's property interest — through recorded instruments — must provide that person with constitutionally adequate notice before taking action affecting that interest. Government defendants cannot rely on ignorance of Plaintiff's recorded deeds when those deeds were in the very same Harris County property records that every government defendant is charged with knowing. Mennonite Board requires that they investigate before acting.

**6. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950)** — The United States Supreme Court established that notice must be "reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Where Plaintiff's property interest is evidenced by recorded instruments providing constructive notice to the world, the government's obligation to provide notice to Plaintiff before adverse action is at its highest. The Constable's deputies had constructive knowledge through the property records that Plaintiff had a recorded adverse possession claim, yet provided no individual notice before posting the eviction notice — a direct violation of Mullane.

**7. Soldal v. Cook County, 506 U.S. 56, 61-64, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)** — The United States Supreme Court held that the Fourth Amendment applies to government-assisted seizures of property, and that a person's prima facie possessory interest — including an interest documented by recorded instruments — is constitutionally protected against warrantless government interference. Plaintiff's recorded prima facie evidence of title established a Fourth and Fourteenth Amendment-protected interest in each property. The government's warrantless entry at Prairie Walk, warrantless utility termination at Glen Valley, and warrantless lockout at Arlington Place each violated Soldal v. Cook County.

**8. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)** — The United States Supreme Court held that property interests protected by the Due Process Clause include interests in real property supported by "legitimate claims of entitlement" arising from "existing rules or understandings." Plaintiff's adverse possession claim — arising from Texas Property Code § 16.025, supported by recorded instruments constituting prima facie evidence of title under Texas Property Code § 13.001, and documented by two-plus years of open notorious possession — is precisely the type of legitimate claim of entitlement that Board of Regents v. Roth holds is constitutionally protected. Defendants' actions depriving Plaintiff of this protected interest without due process violated the Fourteenth Amendment.

**9. Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)** — The United States Supreme Court held that a person's legitimate expectation in a property interest — even one not yet fully vested — is protected by the Due Process Clause against deprivation without notice and a hearing. Plaintiff's adverse possession rights are not yet fully vested (vesting August 22, 2026) but are protected as a legitimate expectation by Perry v. Sindermann. The government cannot deprive Plaintiff of his reasonably expected property right — documented by prima facie evidence of title in the public records — without due process.

**10. Benner v. Armstrong, 622 S.W.3d 562 (Tex. App.—Waco 2021, no pet.)** — The Texas Court of Appeals in 2021 confirmed that adverse possession requires actual and visible appropriation commenced and continued under a claim of right inconsistent with and hostile to the claims of all others. Plaintiff's claim of right is established by recorded prima facie evidence — instruments in the Harris County property records — making his hostility to all other claims legally documented and publicly recorded. Benner v. Armstrong confirms that Plaintiff's recorded instruments establish the claim of right element of adverse possession.

**11. Fuentes v. Shevin, 407 U.S. 67, 80-83, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)** — The United States Supreme Court held that a person cannot be deprived of property — even temporarily — without prior notice and a hearing, and that the existence of a competing claim does not eliminate the need for due process before the government acts. **Where Plaintiff's prima facie evidence of title was on record and available for investigation by every government actor, the failure to provide notice and a hearing before the utility termination, eviction notice, and warrantless entries violated Fuentes v. Shevin directly.**

**CONCLUSION ON PRIMA FACIE EVIDENCE AND CONSTRUCTIVE NOTICE:** Plaintiff's Warranty Deeds are **PRIMA FACIE EVIDENCE OF TITLE**. His recorded **Affidavits of Adverse Possession are PRIMA FACIE EVIDENCE OF HIS POSSESSORY CLAIM. Texas Property Code 13.001 makes these recorded instruments CONSTRUCTIVE NOTICE TO THE ENTIRE WORLD** — including every government defendant in this action — from the date of recordation. The 2024 Texas Supreme Court in 425 Soledad confirms that negligent ignorance of a recorded interest has the same legal effect as actual knowledge. Every government actor who took adverse action against Plaintiff's properties without first checking the Harris County property records is charged by law with knowledge of what those records contained. **Their failure to investigate before acting against an African American man's recorded property interests — when a simple property records search would have revealed four recorded instruments — is both a due process violation and evidence of the racial discrimination alleged in this complaint.**

**FOURTEENTH AMENDMENT AND COLOR OF STATE LAW — ALL 1983 CLAIMS:**

Every Government Defendant named in this action acted UNDER COLOR OF STATE LAW in violation of the FOURTEENTH AMENDMENT to the United States Constitution and 42 U.S.C. 1983. Each defendant was acting in their official government capacity — the Constable's deputies exercising official eviction authority, HPD officers exercising official police authority, Houston Public Works exercising official utility authority, and Houston Housing Authority exercising official federal program authority. The constitutional deprivations were accomplished through the use of official government power. West v. Atkins, 487 U.S. 42, 48-49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (1988). This element is satisfied for every government defendant.

**MONELL — POLICYMAKER, CUSTOM, AND MOVING FORCE:** For Harris County: Constable Jerry Garcia is the FINAL POLICYMAKER for Harris County Constable Precinct 2. His established CUSTOM of accepting private-party eviction requests without verifying property ownership was the MOVING FORCE behind the August 27, 2025 constitutional violation. For the City of Houston: Chief J. Noe Diaz Jr. is the FINAL POLICYMAKER for HPD. Randy Macchi, Director of Houston Public Works, is the FINAL POLICYMAKER for HPW utility service policies. His CUSTOM of processing utility account transfers based on unverified third-party claims without notice to the account holder was the MOVING FORCE behind the 56-day utility deprivation beginning July 24, 2025.

Jamie Bryant, President and CEO of Houston Housing Authority, is the FINAL POLICYMAKER for HHA program participation and landlord certification policies. His CUSTOM of tolerating and ratifying the retaliatory withholding of earned certifications from federal housing program participants who file lawsuits against government actors was the MOVING FORCE behind the ongoing denial of Plaintiff's HHA certification.

Randy Macchi, Director of Houston Public Works, is the FINAL POLICYMAKER for all utility service policies, transfer procedures, and customer account protocols for Houston Public Works. Director Macchi was appointed November 20, 2024 and was therefore the final policymaking authority on July 24, 2025 when Houston Public Works transferred Plaintiff's water service without notice, investigation, or hearing based solely on Amezquita's unverified claim. The specific unconstitutional POLICY and CUSTOM Macchi maintained was: transferring utility service accounts based on unverified third-party ownership claims without: (1) notifying the current account holder; (2) requiring documentation of ownership from the requesting party; or (3) investigating competing recorded property claims. This policy was the MOVING FORCE behind the 56-day deprivation of Plaintiff's water service. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978). Macchi is liable in his individual capacity for maintaining this unconstitutional policy and in his official capacity as a suit against the City of Houston under Monell, 436 U.S. 658 (1978). Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-83, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (1986).

**RICO ENTERPRISE AND PREDICATE ACTS:** The named Defendants constitute an ASSOCIATION-IN-FACT ENTERPRISE under 18 U.S.C. § 1961(4) — a combination of government actors and private parties operating together with the common purpose of depriving Plaintiff of his property rights. The PREDICATE ACTS constituting the PATTERN OF RACKETEERING ACTIVITY under 18 U.S.C. § 1961(1) include: (1) WIRE FRAUD (18 U.S.C. § 1343) — Amezquita's false telephone/electronic communications to Public Works on July 24, 2025; (2) TAMPERING WITH OFFICIAL RECORDS (18 U.S.C. § 1519) — Officers Robarge and Rodriguez Payan falsifying police reports #1102156-25 and #1141160-25; (3) EXTORTION UNDER COLOR OF OFFICIAL RIGHT (18 U.S.C. § 1951) — government officials using authority to deprive Plaintiff of property. Plaintiff seeks TREBLE DAMAGES under 18 U.S.C. § 1964(c).

**FHA § 3617 — INTERFERENCE, COERCION, AND INTIMIDATION:** Under 42 U.S.C. § 3617, all Defendants are liable for INTERFERING WITH, COERCING, AND INTIMIDATING Plaintiff in the exercise of his Fair Housing Act rights. The warrantless police raids, utility termination, eviction proceedings without process, and HHA certification denial collectively constitute the most extensive § 3617 violation documented against a single housing provider. No pre-suit notice required. 42 U.S.C. § 3613(a).

**MENTAL ANGUISH AND EMOTIONAL DISTRESS DAMAGES:** As a direct result of the coordinated government conspiracy, Plaintiff has suffered severe mental anguish and emotional distress including: constant fear of arrest for exercising constitutional rights; anxiety and stress from coordinated government harassment; sleep deprivation from worry about losing property and business; depression from systematic targeting by multiple levels of government; fear of retaliation for prosecuting this lawsuit; and physical manifestations of stress-related health issues. These are compensable damages under 42 U.S.C. § 1983. Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299 (1986).

## PLAINTIFF'S DISABILITIES, MEDICAL CONDITIONS, AND ADA STATUS

Plaintiff Matthew Jamal Jackson is an individual with disabilities as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Plaintiff suffers from multiple physical and mental impairments that substantially limit one or more major life activities, including seeing, walking, standing, lifting, sleeping, concentrating, thinking, communicating, caring for himself, and working.

Plaintiff's disabilities and medical conditions include:

1.  Ptosis of the bilateral eyelids, causing significant visual impairment and difficulty seeing without corrective eyeglasses;

2.  Prior ankle fracture resulting in pain, mobility limitations, and difficulty walking and standing for extended periods;

3. Herniated disc causing chronic pain and limitations in mobility, lifting, bending, and other physical activities;

4. Diabetes mellitus;

5. Hypertension (high blood pressure);

6. Major depressive disorder;

7. Post-Traumatic Stress Disorder (PTSD);

8. Anxiety disorder.

Because of these impairments, Plaintiff experiences substantial limitations in major life activities recognized and protected by the ADA and Rehabilitation Act.

Plaintiff receives ongoing medical treatment and takes prescription medications including:

Venlafaxine; Haloperidol; Doxepin; Gabapentin; Ibuprofen; Cyclobenzaprine; Lisinopril; and Metformin.

Defendants knew or should have known that Plaintiff was a person with disabilities entitled to equal treatment, reasonable accommodations where required by law, equal participation in government programs, equal access to public services, and protection from discrimination based upon disability.

The actions complained of herein caused Plaintiff to suffer additional physical pain, emotional distress, mental anguish, anxiety, depression, humiliation, stress-related symptoms, loss of sleep, fear, frustration, and worsening of his pre-existing medical and psychological conditions.

Plaintiff has standing to assert claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act because he is a qualified individual with disabilities who suffered actual and concrete injuries, including denial of equal access to government services, interference with housing-related activities, emotional distress, physical injury, loss of business opportunities, and deprivation of constitutionally protected rights.

As a direct and proximate result of Defendants' actions, Plaintiff seeks all available legal and equitable relief under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. 1983, the Fourteenth Amendment, and all other applicable federal and state laws.

**ADDITIONAL ADA AND DISABILITY IMPACT ALLEGATIONS**

Plaintiff Matthew Jamal Jackson is a qualified individual with disabilities under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Plaintiff suffers from ptosis of the bilateral eyelids, substantially impairing his vision and requiring corrective eyeglasses to adequately see and perform daily activities. Plaintiff further suffers from a prior ankle fracture, herniated disc, diabetes mellitus, hypertension (high blood pressure), depression, post-traumatic stress disorder (PTSD), and anxiety disorder.

These impairments substantially limit one or more major life activities including seeing, walking, standing, lifting, sleeping, concentrating, thinking, communicating, caring for oneself, and working.

Plaintiff requires ongoing medical treatment and prescription medications including Venlafaxine, Haloperidol, Doxepin, Gabapentin, Ibuprofen, Cyclobenzaprine, Lisinopril, and Metformin.

The actions of Defendants have caused substantial aggravation of Plaintiff's disabilities and medical conditions. The stress, uncertainty, loss of housing opportunities, interference with business operations, utility interruptions, property disputes, repeated law enforcement encounters, and ongoing litigation have increased Plaintiff's anxiety, depression, PTSD symptoms, chronic pain, sleep disturbances, and physical health complications.

As a direct result of Defendants' conduct, Plaintiff has suffered emotional distress, mental anguish, humiliation, fear, frustration, worsening medical symptoms, and loss of enjoyment of life.

Defendants knew or reasonably should have known that Plaintiff was a person with disabilities entitled to equal treatment, equal access to public services, equal participation in governmental programs, and the protections afforded by federal disability-rights laws.

The injuries suffered by Plaintiff are ongoing and irreparable in nature and cannot be fully compensated through monetary damages alone.

**ADA / REHABILITATION ACT AUTHORITIES SUPPORTING DISABILITY STATUS**

**UNITED STATES SUPREME COURT**

1.  Bragdon v. Abbott, 524 U.S. 624 (1998)

    Broad interpretation of "disability" under the ADA.

2. Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002)

   Discussed substantial limitation of major life activities.

3. Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999)

   Addressed mitigating measures and disability analysis.

4. Albertsons, Inc. v. Kirkingburg, 527 U.S. 555 (1999)

   Vision impairments may constitute disabilities.

5. Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999)

   ADA rights preserved despite disability benefit claims.

6. Tennessee v. Lane, 541 U.S. 509 (2004)

   Disabled individuals entitled to meaningful access to public services and courts.

7. US Airways, Inc. v. Barnett, 535 U.S. 391 (2002)

   Reasonable accommodation requirements.

8. PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001)

   Mobility impairments protected under the ADA.

9. School Board of Nassau County v. Arline, 480 U.S. 273 (1987)

   Foundational disability discrimination case.

10. Olmstead v. L.C., 527 U.S. 581 (1999)

Integration mandate and disability discrimination.

FIFTH CIRCUIT CASES

11. Frame v. City of Arlington, 657 F.3d 215 (5th Cir. 2011) (en banc)

Broad ADA protections for disabled individuals.

12. Melton v. Dallas Area Rapid Transit, 391 F.3d 669 (5th Cir. 2004)

Public entity obligations under ADA Title II.

13. Delano-Pyle v. Victoria County, 302 F.3d 567 (5th Cir. 2002)

ADA and Rehabilitation Act damages standards.

14. Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448 (5th Cir. 2005)

Disability discrimination by public entities.

15. Hale v. King, 642 F.3d 492 (5th Cir. 2011)

ADA standards in government settings.

## FEDERAL APPELLATE CASES

16. EEOC v. Chevron Phillips Chemical Co., 570 F.3d 606 (5th Cir. 2009)

   Depression and chronic medical conditions may qualify as disabilities.

17. Head v. Glacier Northwest, Inc., 413 F.3d 1053 (9th Cir. 2005)

   PTSD recognized as potential disability.

18. Jacques v. DiMarzio, Inc., 386 F.3d 192 (2d Cir. 2004)

   Mental impairments and major life activities.

19. Weaving v. City of Hillsboro, 763 F.3d 1106 (9th Cir. 2014)

   Mental impairments under ADA.

20. McAlindin v. County of San Diego, 192 F.3d 1226 (9th Cir. 1999)

   Anxiety disorders and psychological impairments.

## REHABILITATION ACT CASES

21. Alexander v. Choate, 469 U.S. 287 (1985)

   Section 504 protections.

22. Barnes v. Gorman, 536 U.S. 181 (2002)

   Remedies under ADA and Rehabilitation Act.

23. Consolidated Rail Corp. v. Darrone, 465 U.S. 624 (1984)

Broad anti-discrimination protections.

TEXAS AUTHORITIES

24. Rodriguez v. ConAgra Grocery Products Co., 436 F.3d 468 (5th Cir. 2006)

Physical limitations and disability analysis under Texas-related claims.

25. Hagood v. County of El Paso, 408 S.W.3d 515 (Tex. App.—El Paso 2013)

Disability discrimination standards involving governmental entities.

**CRIMINAL CONDUCT UNDER COLOR OF LAW:** Officer Robarge's false classification of adverse possession as fraud in Report #1102156-25 constitutes a criminal offense under Texas Penal Code 37.08 (false report to government agency) and 18 U.S.C. 1519 (falsification of official records). Officer Rodriguez Payan's false identification of the caller in Report #1141160-25 is an independent criminal act under the same statutes. Amezquita's false ownership representations to Houston Public Works on July 24, 2025 — the same day as her trespass and water meter damage, demonstrating pre-planning — constitute criminal fraud under Texas Penal Code § 32.46. The same-day coordination between Amezquita's trespass, false report to Public Works, and immediate utility transfer on July 24, 2025 proves this was not coincidental but pre-planned. The September 17, 2025 Vacant Building Ordinance proposal — one day after the September 16 JP court proceedings targeting Plaintiff — is direct temporal evidence of coordinated governmental retaliation.

## B. Updated Counsel of Record

Plaintiff notes for the record that the May 27, 2026 hearing [Doc. #44] revealed the following counsel appearing for City Defendants that were not previously identified in prior filings:

James C. Butt — Harris County Attorney's Office — counsel for Harris County Constable Precinct 2

Natoya Inglis — counsel for City of Houston and Houston Police Department

Eric Laskowski — counsel for City of Houston and Houston Police Department

All future filings will be served on Natoya Inglis and Eric Laskowski in addition to Michelle C. Taylor and James C. Butt.

## C. New Defendant — Chief J. Noe Diaz Jr.

Plaintiff adds J. Noe Diaz Jr., Chief of Police of the Houston Police Department, as a defendant in both his individual and official capacities. Chief Diaz is the final Monell policymaking authority for HPD. Address: 1200 Travis Street, Houston, Texas 77002. Email: Chief.Diaz@houstontx.gov. His failure to train officers on adverse possession law — documented by Officer Robarge's recorded statement that 'adverse possession is not a law' — and maintenance of policies resulting in warrantless entries, false arrests, and falsified police reports constitute Monell liability under City of Canton v. Harris, 489 U.S. 378, 385-88, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

**Defendant Randy Macchi — Director, Houston Public Works:** Plaintiff adds RANDY MACCHI, Director of Houston Public Works, as a defendant in both his INDIVIDUAL and OFFICIAL capacities. Randy Macchi was appointed Director of Houston Public Works in November 2024 and was serving as Director and FINAL POLICYMAKING AUTHORITY for Houston Public Works on July 24, 2025 — the specific date Houston Public Works transferred Plaintiff's water service without notice, investigation, or hearing, based solely on Defendant Amezquita's unverified ownership claim. Address: Houston Public Works, 611 Walker Street, Houston, Texas 77002.

In his INDIVIDUAL CAPACITY, Macchi is liable for personally establishing and maintaining the unconstitutional policy and custom of processing utility account transfers based on unverified third-party claims without: (1) notifying the current account holder; (2) requiring ownership documentation from the requesting party; or (3) investigating competing recorded property claims. This policy was the direct moving force behind Plaintiff's 56-day water deprivation from July 24 through September 18, 2025, in violation of the Fourteenth Amendment due process clause. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978). In his OFFICIAL CAPACITY, claims against Macchi constitute claims against the City of Houston under Monell, 436 U.S. 658 (1978). Macchi had full supervisory authority over all HPW utility transfer personnel and the power and duty to implement constitutionally adequate procedures. His failure to do so makes him personally liable under 42 U.S.C. 1983.

**Defendant Jamie Bryant — President and CEO, Houston Housing Authority:** Plaintiff adds JAMIE BRYANT, President and CEO of Houston Housing Authority, as a defendant in both his INDIVIDUAL and OFFICIAL capacities. Jamie Bryant is the President, CEO, and FINAL POLICYMAKING AUTHORITY for the Houston Housing Authority. Address: Houston Housing Authority, 2640 Fountain View Drive, Houston, Texas 77057. In his INDIVIDUAL CAPACITY, Bryant is liable for: (1) establishing and maintaining the policy and custom that permitted retaliatory withholding of earned HHA Landlord Orientation completion certificates from federal housing program participants who exercise their constitutional rights; (2) failing to supervise HHA official Adrian Hudspeth, who refused to issue Plaintiff's earned certificate in direct retaliation for Plaintiff's filing of this federal lawsuit and refused to restore Plaintiff's landlord portal access; and (3) ratifying Hudspeth's unconstitutional retaliatory conduct by failing to correct it despite having supervisory authority and a constitutional duty to prevent retaliation. Bryant had the final authority to direct that Plaintiff's earned certificate be issued. His failure to exercise that authority constitutes supervisory liability and ratification of unconstitutional retaliation. The denial of Plaintiff's HHA certification has directly and continuously harmed Save A Life Homes, LLC — a Missouri LLC providing housing services to veterans, low-income families, and persons of color through Section 8 and VA housing programs — by preventing Plaintiff's equal participation in federal housing programs.

In his OFFICIAL CAPACITY, claims against Bryant constitute claims against the Houston Housing Authority. Bryant is liable under 42 U.S.C. § 1983 (First Amendment retaliation), Fair Housing Act 3617 (interference with housing rights), and 42 U.S.C. 1981 (denial of equal right to participate in federal program contracts as an African American business owner).

## D. Documentary Exhibits Now Filed — The Missing Record

The following exhibits are attached to this Amended Complaint. These exhibits were not previously filed with the Court. Their absence was the reason the Court could not find a substantial likelihood of success on the merits at the May 27, 2026 hearing. They are now formally part of the record:

**Exhibit A:** Affidavit of Adverse Possession, Instrument No. RP-2025-216266 — Harris County Records — Establishes Plaintiff's adverse possession claim and color of title since August 22, 2023 under Texas Property Code § 16.025

**Exhibit B:** Amended Affidavit of Adverse Possession, Instrument No. RP-2025-312514 — Harris County Records — Supplements and amends original adverse possession affidavit — both filed in official county property records

**Exhibit C:** Warranty Deed — Harris County Real Property Records — Documents Plaintiff's color of title to 8230 Glen Valley Drive — publicly recorded instrument

**Exhibit D:** Quit Claim Deed — Harris County Real Property Records — Additional recorded instrument establishing Plaintiff's chain of claim

**Exhibit E:** HPD Report No. 1102156-25 — August 23, 2025 — Official HPD record showing Officer Robarge S.M.'s false classification of Plaintiff's lawful adverse possession as 'Forgery/Fraud/Counterfeit' — proves both the Fourth Amendment warrantless entry and the false official records claim on its face

**Exhibit F:** HPD Report No. 1141160-25 — August 31, 2025 — Official HPD record showing Officer Rodriguez Payan G's false statement that 'Ashlee Alexius Holmes made the call' when Plaintiff made the call — proves false arrest and falsified records claims

**Exhibit G:** Police Reports: (1) HPD No. 0658511-25 — neighbor at 8226 Glen Valley Dr reported break-in at Plaintiff's property; (2) HPD No. 0932814-25 — July 18, 2025, Plaintiff reported burglary, Amezquita family members broke gate lock, officer warned them not to return or face arrest; (3) HPD No. 1038802-25 — August 9, 2025, Plaintiff reported burglary while he was in Missouri City, Amezquita associates broke side window and broke into Plaintiff's steel safe inside the home — Three documented criminal incidents — break-in, gate burglary, window break-in and safe burglary — establishing Amezquita's escalating criminal campaign to forcibly dispossess Plaintiff before coordinating with government actors; Plaintiff's Missouri City alibi for August 9 burglary confirmed by his absence from the property

**Exhibit H:** Justice Court Precinct 2 Place 2 Dismissal — September 15, 2025 — Official judicial record showing eviction was DISMISSED FOR LACK OF JURISDICTION — proves the entire eviction proceeding initiated by the Constable's deputies was constitutionally defective from the start

**Exhibit I:** Neighbor Text Messages — July 24, 2025 and subsequent dates — Independent witness corroboration of Amezquita's trespass, water meter damage, and coordinated government interference; neighbor at 8226 Glen Valley Dr confirmed Amezquita and associates were at the property on July 24, 2025 — third-party evidence of the conspiracy **Exhibit J:** Certificate of Organization, Save A Life Homes, LLC — Missouri Secretary of State — Establishes Save A Life Homes, LLC as a lawfully formed Missouri business entity; directly refutes characterization of Plaintiff's activities as fraudulent or illegitimate; supports RICO, FHA, interstate commerce, and lost business income damages claims

**Exhibit K:** Articles of Organization, Save A Life Homes, LLC — Missouri Secretary of State — Confirms formation, registered agent, and organizational structure of Save A Life Homes, LLC; supports HHA landlord certification denial claim and lost business income damages **Exhibit L:** Affidavit of Adverse Possession — 11415 Prairie Walk Dr, Houston, Texas — Harris County Real Property Records — Establishes Plaintiff's recorded adverse possession claim for the property where Officers Robarge S.M. and P.W. conducted the warrantless entry on August 23, 2025 and Officer Rodriguez Payan G conducted the false arrest on August 31, 2025; proves Plaintiff had a documented possessory claim at the time of both incidents; directly supports Fourth Amendment and First Amendment retaliation claims

**Exhibit M:** Warranty Deed — 11415 Prairie Walk Dr, Houston, Texas — Harris County Real Property Records — Color of title for Plaintiff's adverse possession claim at 11415 Prairie Walk Dr; corroborates Exhibit L and establishes the full recorded instrument package for this property at the time of the August 23 and 31, 2025 constitutional violations

**Exhibit N:** Affidavit of Adverse Possession — 116 East Edgebrook Dr, Apt. 116, Houston, Texas 77034 (Arlington Place Apartment Complex) — Harris County Real Property Records — Establishes Plaintiff's recorded adverse possession claim for the ENTIRE Arlington Place Apartment Complex, 116 East Edgebrook Dr, Houston TX 77034. Apartment 116 is the MAIN UNIT of the entire apartment complex. Plaintiff had full access to and operated from this main unit and the complex office, exercising acts of ownership and control over the entire property. Plaintiff was removed WITHOUT ANY COURT ORDER on August 5, 2025. No eviction, no unlawful detainer, no JP court order, and no legal process of any kind was ever obtained. Three categories of direct evidence establish Plaintiff's lawful possession: (1) VIDEO EVIDENCE — Plaintiff has video footage dated August 4, 2025 showing him entering Apartment 116, locking the door, and confirming key access, proving lawful peaceable possession the day before the criminal lock change; (2) NEXT DAY LOCKOUT — on August 5, 2025, the very next day after the video, unknown parties changed all locks and barred Plaintiff's entry without any court order, legal process, or notice of any kind; and (3) LETTER OF POSSESSION AND CONTROL REMOVED — Plaintiff had posted a Letter of Possession and Control on the door of the main apartment as formal notice of his possessory claim and right to exclude others — that letter was physically removed from the door, constituting deliberate destruction of evidence of Plaintiff's claim and an independent act of interference with property rights. Personal property of Plaintiff and family members remains locked inside to this day. See also Exhibit O — Warranty Deed and Exhibit P — Video Evidence

**Exhibit O:** Warranty Deed — 116 East Edgebrook Dr, Apt. 116, Houston, Texas 77034 (Arlington Place Apartment Complex) — Harris County Real Property Records — Provides color of title for Plaintiff's adverse possession claim over the ENTIRE Arlington Place Apartment Complex (main unit Apartment 116 plus entire complex); together with Exhibit N establishes the complete recorded instrument package; Plaintiff operated from the main apartment (Apt. 116) and the complex office, exercising acts of ownership over the whole property before being removed WITHOUT ANY COURT ORDER through criminal breaking and entering on August 5, 2025 — the most legally clear violation in this case because it was accomplished with zero legal process; supports: (1) immediate restoration of access to entire complex; (2) return of all personal property; (3) adverse possession claim over entire complex; and (4) punitive damages for criminal removal without any court order

With these exhibits now before the Court, the factual record fully supports every constitutional claim in this lawsuit. The police reports in Exhibit G document a specific and escalating pattern of criminal conduct by Defendant Amezquita and her associates against Plaintiff's property that directly preceded and precipitated the government conspiracy alleged in this complaint. The specific incidents are as follows:On or about June-July 2025, a neighbor at 8226 Glen Valley Drive reported a break-in at Plaintiff's property at 8230 Glen Valley Drive (HPD Report No. 0658511-25). Plaintiff was in Missouri City, Texas at the time, confirming that the break-in occurred in Plaintiff's absence and without any provocation by Plaintiff.On July 18, 2025, Plaintiff called HPD to report a burglary at 8230 Glen Valley Drive (HPD Report No. 0932814-25).

Amezquita family members had broken the lock on Plaintiff's gate. HPD responded. The responding officer informed the individuals that they were not to return to the property or they would be arrested. No identity was confirmed as to whether the individuals were actually family members of Amezquita, but they were present at the property without authorization. This police contact put law enforcement on notice that private parties were attempting to take possession of Plaintiff's adverse possession property by force.On August 9, 2025, Plaintiff again called HPD to report a burglary at 8230 Glen Valley Drive (HPD Report No. 1038802-25). On this occasion, individuals associated with Amezquita broke through a side window of the property and broke into Plaintiff's steel safe inside the home. Plaintiff was in Missouri City, Texas at the time of this break-in, which is documented and provable. This constitutes: (1) criminal trespass; (2) burglary; (3) breaking and entering; (4) theft of or damage to personal property including a steel safe; and (5) criminal mischief. These are serious felony-level offenses committed against Plaintiff's adverse possession property.The significance of this escalating criminal pattern cannot be overstated. Within days of the August 9, 2025 burglary, Defendant Amezquita contacted Houston Public Works on July 24, 2025 and provided false ownership information to have Plaintiff's water service transferred. The criminal break-ins, the gate lock destruction, and the utility fraud are all part of one coordinated campaign by Amezquita and associates to forcibly dispossess

Plaintiff of his adverse possession property through a combination of criminal conduct and government coordination. Plaintiff's adverse possession rights are established by four recorded instruments in the Harris County property records — Exhibits A through D. The constitutional violations are documented by official government records — Exhibits E, F, G, and H. The conspiracy is corroborated by independent witness evidence — Exhibit I. The process server affidavit documenting service obstruction [Doc. #11] is already in the record.

## E. New Counts — Racial Discrimination

Plaintiff Matthew Jamal Jackson is an African American man and owner of an African American-owned housing business. The five-level coordinated government response targeting his adverse possession rights — bypassing normal procedural protections simultaneously at every level — constitutes differential treatment that would not have been applied to a similarly situated white property owner with the same recorded instruments.

**Count 18 — Equal Protection / 1983 — Racial Discrimination — NO PRE-SUIT NOTICE REQUIRED**

Government Defendants applied Texas property law, utility service policies, police protocols, and housing program administration in a racially discriminatory manner.

But for Plaintiff's race, Defendants would not have bypassed warrant requirements, notice requirements, and ownership verification; classified lawful adverse possession as criminal fraud; or coordinated across five government levels to deprive him of property rights Texas law grants equally to all citizens. Washington v. Davis, 426 U.S. 229, 238-42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); Village of Arlington Heights, 429 U.S. 252 (1977).

### Count 19 — 42 U.S.C. 1981 — Equal Right to Enforce Contracts — NO PRE-SUIT NOTICE REQUIRED

Section 1981 provides a direct private right of action. No EEOC complaint, no exhaustion, no pre-suit letter required. Johnson v. Railway Express Agency, 421 U.S. 454 (1975). Plaintiff has been denied the same right to make and enforce his recorded property instruments enjoyed by white citizens. His Warranty Deed, Affidavit, Amended Affidavit, and Quit Claim — now Exhibits A through D — were ignored by government actors who honored an unverified competing claim instead. But for Plaintiff's race, his recorded instruments would have been recognized. Comcast Corp. v. NAAAOM, 589 U.S. 327 (2020).

### Count 20 — 42 U.S.C. 1982 — Equal Right to Hold Property — NO PRE-SUIT NOTICE REQUIRED

Section 1982 provides a direct private right of action. No exhaustion required. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413-14, 88 S. Ct. 2186, 20 L. Ed. 2d 1189 (1968). All citizens have the same right as white citizens to hold and convey real property. The coordinated government action denied Plaintiff the equal right to hold his adverse possession property on the same terms extended to white property owners with the same recorded instruments.

**Count 21 — Fair Housing Act  3604 — Racial Housing Discrimination — NO PRE-SUIT NOTICE REQUIRED**

Private FHA plaintiffs file directly in federal court within two years. No HUD complaint required. 42 U.S.C.  3613(a). Defendants discriminated against Plaintiff in the terms and conditions of his dwelling at 8230 Glen Valley Drive because of his race. SB 38 and SB 1333's expedited eviction procedures also have a racially disparate impact on Black adverse possession claimants. Texas Dep't of Housing v. Inclusive Communities Project, 576 U.S. 519 (2015).

**Count 22 — 42 U.S.C.  1985(3) — Racially Motivated Conspiracy — NO PRE-SUIT NOTICE REQUIRED**

Direct private right of action. Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971). The five-level coordinated government conspiracy, combined with racial discriminatory intent evidenced by the Arlington Heights factors, constitutes a § 1985(3) racially motivated conspiracy to deprive Plaintiff of equal protection of the laws.

## PART TWO: RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### A. Basis for Renewal

The Court denied Plaintiff's TRO at the May 27, 2026 hearing for 'failure to demonstrate a substantial likelihood of success on the merits.' [Doc. #44]. At that hearing, Plaintiff was present and responded to the Court's questions, but Plaintiff's documentary exhibits — the four recorded property instruments, the two HPD reports, the earlier police reports, and the JP court dismissal order — were not in the record. The Court was asked to find likelihood of success without the foundational documents establishing Plaintiff's property rights and the constitutional violations.

That deficiency is now cured. Exhibits A through P are now formally before the Court. With this documentary record established, Plaintiff respectfully renews his motion for a TRO and preliminary injunction. The standard under Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), requires: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable harm; (3) balance of harms favors Plaintiff; and (4) public interest favors relief. All four factors are now demonstrably satisfied.

## B. Factor 1 — Substantial Likelihood of Success Is Now Established

Plaintiff's likelihood of success on the merits is now supported by documentary proof in the record:

Adverse possession claim: Four recorded instruments (Exhibits A-D) establish over two years of lawful possession with color of title under Texas Property Code § 16.025. Title vests August 22, 2026 — 79 days from now. No defendant has filed a superior recorded instrument.

Fourth Amendment — warrantless entry: Exhibit E (HPD Report #1102156-25) is an official government document that on its face records a police response to Plaintiff's adverse possession property. Combined with the allegations of warrantless entry, this creates a plausible Fourth Amendment claim. Payton v. New York, 445 U.S. 573, 585-86, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

Due process — eviction: Exhibit H (JP Court Dismissal) is a judicial finding that the eviction proceeding was dismissed for lack of jurisdiction — official confirmation that the Constable initiated constitutionally defective proceedings. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795-96, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983).

Due process — utility: Houston Public Works terminated Plaintiff's water service for 56 days based on unverified claims without notice or hearing. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978).

False official records: Exhibit F (Report #1141160-25) is an official government document that on its face contains a false statement — identifying Ashlee Holmes as the caller when Plaintiff made the call.

Racial discrimination: Exhibits A through P collectively demonstrate that a Black man's four recorded property instruments were ignored while an unverified competing claim was immediately honored — differential treatment supporting Equal Protection and 1981 claims.

## C. Factor 2 — Irreparable Harm Is Immediate

Plaintiff faces two categories of imminent irreparable harm that no monetary award can remedy:

Property rights vesting August 22, 2026: Plaintiff's adverse possession title vests in 79 days. Any eviction before that date permanently extinguishes property rights that have been accruing for over two years. Once possession is lost, the statutory period cannot be restarted retroactively. This harm is per se irreparable.

Constitutional violations are ongoing: The deprivation of constitutional rights constitutes irreparable harm per se. Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). Plaintiff faces the continued threat of warrantless entries, utility termination, and eviction proceedings without due process absent an injunction.

**D. Factor 3 — Balance of Harms Favors Plaintiff**

Defendants suffer no cognizable hardship from being required to comply with the Constitution. Requiring the Constable to investigate recorded instruments before posting eviction notices, requiring HPD to obtain warrants before entering property, and requiring Public Works to provide notice before terminating utilities — these are constitutional requirements that already bind every government defendant. No new burden is imposed. Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 298 (5th Cir. 2012).

**E. Factor 4 — Public Interest**

It is always in the public interest to prevent the violation of constitutional rights. The public interest also favors protecting a housing business that serves low-income tenants, veterans, and families of color through VA housing and Section 8 programs. An injunction protecting Plaintiff's ability to operate serves those communities directly.

**F. Specific Relief Requested**

Plaintiff requests a TRO and preliminary injunction ordering:

1. No further eviction proceedings at any Plaintiff adverse possession property without a final lawful court judgment through constitutionally adequate proceedings;

2. No warrantless entries at 8230 Glen Valley Dr, 11415 Prairie Walk Dr, or 116 East Edgebrook Drive without a valid warrant or recognized constitutional exception;

3. Houston Public Works to restore and maintain water service to 8230 Glen Valley Dr in Plaintiff's name pending final judgment;

4. Houston Housing Authority and Adrian Hudspeth to issue Plaintiff's earned landlord orientation certificate within 72 hours;

5. No further retaliation against Plaintiff for prosecuting this lawsuit or exercising constitutional rights; and

6. No application of SB 38 or SB 1333 to Plaintiff's adverse possession claims established before September 1, 2025.

## PART THREE: RENEWED MOTION FOR PRESERVATION OF EVIDENCE

### A. The Court's Prior Ruling — 'Unnecessary at This Time'

The Court denied Plaintiff's preservation motion as 'unnecessary at this time.' [Doc. #44]. Plaintiff respectfully submits that circumstances have changed such that preservation is now necessary. First, the documentary exhibits now before the Court establish the factual foundation of the claims, making the relevance of government-held evidence — body camera footage, court recordings, utility records — now clear on the record. Second, body camera footage from the August 23 and 31, 2025 incidents is now approximately ten months old and is at or near HPD's standard retention deadline. Third, Officer Robarge's deliberate misclassification of the August 23 incident as 'Forgery/Fraud/Counterfeit' in Exhibit E may have triggered a shorter retention period for that footage, making deletion imminent.

## B. The Specific Evidence at Immediate Risk

HPD body camera footage from August 23 and 31, 2025 is the most urgent category. That footage will show — or contradict — whether Officers Robarge, P.W., and Rodriguez Payan entered Plaintiff's property without a warrant, drew weapons on veteran Larry Henson without justification, and detained him without legal basis. It is the single most important category of evidence in this case. Under HPD General Order 600-16, non-flagged footage faces automatic deletion. Officer Robarge's own false report (Exhibit E) misclassifying the incident as fraud may mean the footage was never properly flagged for extended retention.

The September 15, 2025 Justice Court recording is also at risk. The Court's own electronic recording of the proceedings in which SB 38 and SB 1333 were applied to Plaintiff's adverse possession claim is subject to routine administrative deletion schedules. Exhibit H establishes the proceedings occurred — but the recording itself provides the direct evidence of what was said.

## C. Minimal Relief Requested

Plaintiff requests only that the Court order: (1) HPD to preserve body camera footage from August 23 and 31, 2025 and file a sworn declaration within 72 hours confirming preservation or disclosing deletion; and (2) Harris County Justice Court Precinct 2 Place 2 to preserve the September 15, 2025 recording and produce a copy to Plaintiff within 14 days. This is the minimum relief necessary to prevent irreversible evidence destruction.

## PART FOUR: MOTION REGARDING SERVICE OF PROCESS

### A. The May 29, 2026 Deadline — Good Cause for Excusable Delay

The Court's May 27, 2026 Order directed Plaintiff to file service-related motions by May 29, 2026 [Doc. #44]. Plaintiff respectfully acknowledges that filing has not been made by that deadline. Plaintiff is a pro se litigant managing complex multi-defendant litigation without counsel. The May 27 hearing itself occurred just two days before the deadline, leaving insufficient time for Plaintiff to prepare and file the required service motions. Plaintiff respectfully requests that the Court accept this filing as satisfying the service-related motion requirement, or grant a brief extension of that deadline. Fed. R. Civ. P. 6(b)(1)(B) (excusable neglect); Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993).

### B. Status of Service on All Defendants

Pursuant to the Court's Order, Plaintiff provides the following service status report:

Harris County Constable Precinct 2 — SERVED via certified mail on March 19, 2026 [Doc. #36]. Counsel James C. Butt has appeared.

City of Houston and Houston Police Department — Service was attempted on March 3, 2026 by process server Starr Owens. The City Attorney's Office refused to accept service. Security cameras recorded the refusal. [Doc. #11]. Counsel Natoya Inglis and Eric Laskowski appeared at the May 27 hearing.

Remaining Defendants — Not yet served. Plaintiff has a pending Motion for Extension of Time [Doc. #35] which the Court granted in part, ordering service within 30 days of the Court's order on forthcoming service motions.

## C. Request for Alternative Service Authorization

For defendants whose current addresses are unknown — including Secundino Vazquez, Venson Gibbs, Estate of Rogelio P. Villafana, and All Unknown Heirs — Plaintiff requests authorization to effect service by publication for ALL DEFENDANTS in this action as a whole pursuant to Federal Rule of Civil Procedure 4(e)(1) and Texas Property Code. Publication shall be made in a Harris County newspaper of general circulation once per week for four consecutive weeks, covering: (a) unknown-address defendants including Secundino Vazquez, Venson Gibbs, Estate of Rogelio P. Villafana, All Unknown Heirs, and the John Does who changed the Arlington Place locks; (b) defendants who evaded service at 8311 Cayton Street; (c) government defendants who refused service at official offices; and (d) any other unserved defendant. Service by publication shall be deemed complete upon final publication and valid for all purposes in this action. A Declaration of Due Diligence and proof of publication will be filed with the Clerk within 30 days of final publication.

For defendants who evaded service — including Mayra Amezquita and the Villafana group at 8311 Cayton St — the sworn affidavit of process server Starr Owens [Doc. #11] documents deliberate evasion. Under Fifth Circuit precedent, defendants who deliberately evade service after having actual notice of the lawsuit cannot benefit from technical service deficiencies. Lozano v. Bosdet, 693 F.3d 485, 488-89 (5th Cir. 2012). The Court should deem service constructively effectuated as of the date of documented evasion.

## CONCLUSION AND SUMMARY OF RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

7. Accept this Amended Complaint as timely filed pursuant to the Court's June 4, 2026 deadline [Doc. #44];

8. Accept Exhibits A through P as now formally part of the record in this case;

9. GRANT the Renewed Motion for Temporary Restraining Order and Preliminary Injunction based on the documentary record now before the Court — specifically the four recorded property instruments (Exhibits A-D), the two false HPD reports (Exhibits E-F), the JP court dismissal (Exhibit H), and the witness corroboration (Exhibit I);

10. GRANT the Renewed Motion for Preservation of Evidence as to HPD body camera footage from August 23 and 31, 2025 and the September 15, 2025 Justice Court recording — both at imminent risk of deletion;

11. Accept this filing as satisfying Plaintiff's service-related motion obligation or grant a brief extension of the May 29 deadline for excusable neglect;

12. Authorize service by publication for defendants whose addresses remain unknown; and

13. Allow this case to proceed on all 22 causes of action — including the new racial discrimination counts — with defendants' motion to dismiss due June 11, 2026 and Plaintiff's response due July 2, 2026 as scheduled.

14. Award Plaintiff damages in an amount to be determined by the jury at trial, which Plaintiff

believes will exceed $5,000,000 based on the nature, duration, and severity of the constitutional

violations, racial discrimination, RICO enterprise activity, and property deprivations alleged

herein, including but not limited to: compensatory damages for each documented injury; punitive

damages against each individual defendant who acted with malice or reckless indifference; treble

damages under 18 U.S.C. § 1964(c); racial discrimination damages under 42 U.S.C. §§ 1981 and

1982; Fair Housing Act damages; and full restoration and compensation for Arlington Place.

Plaintiff expressly reserves the right to present a complete damages calculation following

discovery, and this estimate shall not be construed as a cap or limitation on Plaintiff's recovery.


I declare under penalty of perjury under the laws of the United States of America and the State of
Texas that the foregoing is true and correct. Executed on 6/3/2026


Respectfully submitted,


/s/ Matthew Jamal Jackson
Matthew Jamal Jackson
Individually and as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr   Houston, Texas 77061
savealifehomes06@gmail.com
646-588-9376
Pro Se Plaintiff
Dated: June 3, 2026

## PLAINTIFF'S COMPLETE MTD-PROOF LEGAL SHIELD

Preemptive Response to Every Argument James C. Butt, Natoya Inglis, and Eric Laskowski

Will Make in Their June 11, 2026 Motions to Dismiss

**1. SUPERVISORY LIABILITY — GARCIA IS PERSONALLY LIABLE:** Butt will argue

Garcia had no personal involvement. Supervisory officials are liable under § 1983 when they

implement a policy that is the moving force behind a constitutional violation or fail to supervise

subordinates causing the violation. Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452-53 (5th Cir.

1994) (en banc); Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). Garcia established the policy

of accepting eviction requests without verifying ownership. That policy caused the August 27,

2025 violation. His personal participation in policy creation makes him individually liable

regardless of whether he personally posted the notice.

**2. DISMISSAL CONFIRMS — NOT CURES — THE VIOLATION:** Butt will argue

dismissal of the eviction means no harm occurred. Wrong. The Justice Court dismissed for

LACK OF JURISDICTION — confirming the proceedings were invalid from inception. Carey v.

Piphus, 435 U.S. 247, 255-58, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) holds that § 1983

plaintiffs recover for procedural due process violations even when the outcome is favorable

because the RIGHT TO DUE PROCESS IS ITSELF A SUBSTANTIVE RIGHT. Plaintiff was

forced to appear in court to defend unconstitutional proceedings — that is a cognizable injury.

The dismissal is proof of the violation, not a cure.

**3. SB 38/SB 1333 — NOT RATIONAL BASIS BUT RETROACTIVE APPLICATION:** Butt will argue SB 38/1333 satisfy rational basis. Plaintiff does not challenge the facial validity of these laws. Plaintiff challenges their RETROACTIVE APPLICATION to rights accruing since August 22, 2023 — two years before the laws took effect. Landgraf v. USI Film Products, 511 U.S. 244 (1994) establishes a strong presumption against retroactive legislation. Eastern Enterprises v. Apfel, 524 U.S. 498, 532-37, 118 S. Ct. 2131, 141 L. Ed. 2d 451 (1998) holds retroactive application destroying vested property rights raises serious constitutional concerns regardless of rational basis. The question is not whether the laws are rational — it is whether they can constitutionally be applied to rights that predated them. They cannot.

**4. RESPONDING TO COMPLAINT DOES NOT AUTHORIZE WARRANTLESS ENTRY:** Inglis and Laskowski will argue Officers Robarge and P.W. were merely responding to a third-party complaint. A third party's ownership complaint does not create probable cause to enter a home without a warrant. Payton v. New York, 445 U.S. 573, 585-86, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). The constitutionally required response to a property dispute is to keep the peace without entering — not warrantless entry. There was no warrant, no consent, no exigent circumstances, and no hot pursuit. The entry was unconstitutional as a matter of law. The complaint that generated the response does not retroactively justify the constitutional violation.

**5. NO RESPONDEAT SUPERIOR — DIRECT MONELL LIABILITY:** Inglis and Laskowski will argue the City cannot be liable under respondeat superior. Plaintiff does not plead respondeat superior. Plaintiff pleads direct Monell liability: Chief Diaz is the final policymaker; his specific unconstitutional policies and customs — warrantless entry at adverse possession properties, failure to train officers that adverse possession is a law, false report classification — were the moving force behind the violations. Officer Robarge's recorded statement that "adverse possession is not a law" is direct proof of the training failure. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Two incidents within eight days by different officers producing two false reports is a pattern. Peterson v. City of Fort Worth, 588 F.3d 838 (5th Cir. 2009).

**6. UTILITY TERMINATION IS A CONSTITUTIONAL DEPRIVATION:** The City will argue Public Works' utility transfer was mere administration. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978) directly controls. The Supreme Court held utility service is a CONSTITUTIONALLY PROTECTED PROPERTY INTEREST and termination requires notice and a hearing. Public Works provided neither. 56 days without water is not an administrative inconvenience — it is a Fourteenth Amendment due process violation. The property interest is the established utility account and the possessory right to service. Both are protected under Craft.

**7. LEGISLATIVE RETALIATION — BOGAN DOES NOT PROTECT THE CITY:** The City will argue the Vacant Building Ordinance proposal is protected legislative action under Bogan v. Scott-Harris, 523 U.S. 44 (1998). Bogan does not apply for two reasons. First, the ordinance was a PROPOSAL — not a passed law — and Bogan's protection applies to enacted legislation, not proposals. Second, even if Bogan applied to the proposal itself, it does not shield the broader coordinated retaliatory pattern of which the ordinance is only one element. The other elements — police raids, utility termination, eviction proceedings — are executive acts not protected by legislative immunity. The ordinance proposal is evidence of retaliatory motive for those executive acts. Colson v. Grohman, 174 F.3d 498, 508-09 (5th Cir. 1999).

**8. YOUNGER ABSTENTION DOES NOT APPLY — THREE INDEPENDENT GROUNDS:** Defendants may invoke Younger v. Harris, 401 U.S. 37, 43-44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) abstention. It fails on three independent grounds: (1) The JP court proceedings were DISMISSED FOR LACK OF JURISDICTION on September 15, 2025 — there are no pending state proceedings in which to abstain; (2) Younger does not apply when the state proceedings are themselves the vehicle of the constitutional violation — the JP proceedings were used to deprive Plaintiff of due process, not to adjudicate his rights fairly; (3) Younger does not apply where bad faith or harassment by state officials is shown — the coordinated five-level government attack on Plaintiff's rights is the textbook definition of bad faith. Huffman v. Pursue, Ltd., 420 U.S. 592, 611, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975). All three grounds independently defeat abstention.

**9. POLITICAL QUESTION DOCTRINE DOES NOT APPLY:** The political question doctrine applies only where there is a textually demonstrable constitutional commitment of an issue to a coordinate political branch or a lack of judicially manageable standards. Baker v. Carr, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962). Neither condition is met here. Challenges to retroactive application of state statutes destroying vested property rights are classic judicial questions governed by well-established constitutional doctrine. Federal courts adjudicate constitutional challenges to state legislation routinely under Ex Parte Young. This is not a political question under any application of Baker v. Carr.

**10. INDIVIDUAL AND OFFICIAL CAPACITIES — ALL DEFENDANTS:** Every government defendant is sued in BOTH individual AND official capacities. Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Individual capacity claims expose each defendant to PERSONAL LIABILITY for their own unconstitutional acts. Official capacity claims are suits against Harris County and the City of Houston under Monell. No defendant can escape by pointing to the other capacity. Hafer v. Melo, 502 U.S. 21, 25-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (a defendant sued in individual capacity cannot claim the entity's immunities). Both theories are independently pleaded and independently viable for every government defendant.

**11. LEAVE TO AMEND IN THE ALTERNATIVE:** Should the Court identify any pleading deficiency in any count, dismissal with prejudice would be error. Federal Rule of Civil Procedure 15(a)(2) requires that leave to amend be freely given when justice so requires. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). This case remains at the pre-discovery stage. No scheduling order has been entered. No defendant has been prejudiced by any amendment. Plaintiff requests leave to amend as an alternative to outright dismissal on any count. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305 (5th Cir. 2002). Bazrowx v. Scott, 136 F.3d 1053 (5th Cir. 1998).

**CONCLUSION:** Every argument that James C. Butt, Natoya Inglis, and Eric Laskowski will make in their June 11, 2026 motions to dismiss has been specifically anticipated and preemptively defeated in this filing. The complaint satisfies Iqbal and Twombly with specific facts, dates, officer names, and report numbers. Qualified immunity does not apply — the law has been clearly established for 45 years. The TTCA does not apply to federal claims. Non sui juris does not warrant dismissal when proper parties are named. Standing is established. All claims are timely filed. The Eleventh Amendment is not a bar to prospective relief under Ex Parte Young. Younger abstention does not apply — the state proceedings were dismissed. The political question doctrine does not apply. Respondeat superior is not the theory — direct Monell liability is. Every defendant is sued in both individual and official capacities. The motions to dismiss filed by all defendants on June 11, 2026 MUST BE DENIED IN THEIR ENTIRETY.

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, a true and correct copy of the foregoing was served via CM/ECF and/or email upon all counsel of record:


James C. Butt — Harris County Attorney's Office

1019 Congress Street, 15th Floor, Houston TX 77002


Natoya Inglis and Eric Laskowski

City of Houston Legal Department

900 Bagby, 4th Floor, Houston TX 77002


Michelle C. Taylor — Senior Assistant City Attorney

Email: Michelle.Taylor2@houstontx.gov


/s/ Matthew Jamal Jackson

Matthew Jamal Jackson, Pro Se Plaintiff