**STATE OF TEXAS**
**COUNTY OF HARRIS**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 0 1 2026

Nathan Ochsner, Clerk of Court

MATTHEW JAMAL JACKSON,
Individually and as Owner of
Save A Life Homes, LLC,

Plaintiff,

v.

CIVIL ACTION NO. 4:25-cv-04354

MAYRA AMEZQUITA, et al.,
Defendants.

## AFFIDAVIT OF MATTHEW JAMAL JACKSON

I, Matthew Jamal Jackson, being duly sworn, depose and state under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

### I. PERSONAL BACKGROUND AND STANDING

1. My name is Matthew Jamal Jackson. I am over the age of eighteen (18) and competent to make this affidavit. I am the Plaintiff in this action, proceeding pro se, and I am the owner of Save A Life Homes, LLC, a limited liability company organized under the laws of the State of Missouri. I reside at 8230 Glen Valley Drive, Houston, Texas 77061.

2. I am an African American man and the owner of an African American-owned housing business, Save A Life Homes, LLC. I provide affordable housing to low-income tenants, veterans, and families through federal housing assistance programs including VA housing and Section 8 housing vouchers across multiple states.

3. I have personal knowledge of the facts stated herein. I have reviewed the Second Amended Complaint, the exhibits attached thereto, and all supporting documents filed in this matter.

## II. ADVERSE POSSESSION AND RECORDED INSTRUMENTS

4.  I have been in peaceable, open, notorious, hostile, exclusive, and continuous possession of real property located at 8230 Glen Valley Drive, Houston, Texas 77061 since August 22, 2023, under a claim of adverse possession pursuant to Texas Civil Practice & Remedies Code § 16.024 (three-year adverse possession statute with color of title). Section 16.024 provides: "A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues." Jones v. Harrison, 2005 WL 1528727, at *3 (Tex. App.—Tyler June 29, 2005, no pet.).

5.  I initially discovered the property as vacant and abandoned in March 2022 using two real estate data services: MyHouseDeals.com, which lists vacant, pre-foreclosure, and abandoned homes; and PropertyRadar.com, which also indicated this property was unoccupied and unmonitored. Upon visiting and inspecting the site, I confirmed there was no owner or tenant activity, and the property had been left in a nuisance condition with overgrown grass, debris, and lack of maintenance.

6.  When I entered into possession on August 22, 2023, I began:
    a. Maintaining the front and back yards and restoring livability;
    b. Exercising open, notorious, exclusive, and continuous control of the entire property;
    c. Residing full-time in the property, uninterrupted to this day;
    d. Posting signage asserting control and ownership;
    e. Securing utilities in my name thereafter on August 5, 2024;
    f. Ensuring that no renters or other individuals have ever occupied the home during my possession.

7.  My presence and control of the property have been uninterrupted, without consent, and under claim of right. Multiple neighbors have observed and can testify to my full-time presence and maintenance of the home.

8.  My title is scheduled to vest by operation of law on August 22, 2026, upon completion of the three-year statutory period. I have already satisfied over two-thirds of the required statutory period.

9.  I have recorded the following instruments in the Harris County real property records:
    a. 8230 Glen Valley Dr, Houston, TX 77061:
    i. Affidavit of Adverse Possession — Instrument No. RP-2025-216266, recorded June 5, 2025;
    ii. Amended Affidavit of Adverse Possession — Instrument No. RP-2025-312514;
    iii. Quit Claim Deed — recorded in Harris County;
    iv. Warranty Deed — recorded in Harris County on August 11, 2025.
    b. 11415 Prairie Walk Dr, Houston, TX 77048:
    i. Warranty Deed — Instrument No. RP-2025-312621, recorded in Harris County.
    c. 116 East Edgebrook Dr, Apt 116, Houston, TX 77034 (Arlington Place Apartments):
    i. Warranty Deed — Instrument No. RP-2025-312656, recorded in Harris County.

10. These recorded instruments provided constructive notice to all governmental actors in Harris County, Texas, and the State of Texas, under Texas Property Code § 13.001. Every government defendant is charged by law with knowledge of these recorded instruments. A recorded instrument is constructive notice to the entire world from the date of recording. See Tex. Prop. Code § 13.001(a)-(b); Ford v. Exxon Mobil Chem. Co., 235 S.W.3d 615, 617 (Tex. 2007) ("Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice."); HECI Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998) ("The need for stability and certainty regarding titles to real property has led courts to hold that real property records can constitute constructive notice."); Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982) ("It is well settled that 'a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims.'").

11. The Texas Supreme Court has recently reaffirmed that negligent ignorance has the same legal effect as actual knowledge. 425 Soledad, Ltd. v. CRVI Riverwalk Hospitality, LLC, 709 S.W.3d 551 (Tex. 2024). Every government defendant who failed to check the Harris County records before acting against my property is legally treated as having had full knowledge of my recorded instruments.

## III. PRIVATE DEFENDANTS' INTERFERENCE

12. Defendants abandoned the property for over six years but recently attempted to interfere, including breaking windows, changing locks, and tampering with utilities.

13. Police Reports Filed:
    a. July 1, 2025 at 12:00pm
    b. July 18, 2025 at 7:21 am — Report No. 0932814-25
    c. August 9, 2025 at 18:51 — Report No. 1038802-25

## IV. GOVERNMENT UTILITY CONSPIRACY — HOUSTON PUBLIC WORKS

14. On or about July 3, 2025, I established water service at 8230 Glen Valley Drive, Houston, Texas 77061 under Water Account No. 0642-0605-1373 in my name, Matthew Jackson. I received confirmation from Houston Public Works that services were established at 8230 GLEN VALLEY DR HOUSTON TX 77061-1325 starting July 3, 2025, with a security deposit of $200.00 and a non-refundable new service charge of $6.62.

15. On July 24, 2025, Defendant Mayra Amezquita unlawfully trespassed onto the Property and intentionally damaged the water meter serving the Property. A neighbor texted me on July 24, 2025, that people were at the house and Amezquita had broken the water meter.

16. Immediately thereafter, Defendant Amezquita contacted Houston Public Works, a government-owned municipal utility company, and provided false information regarding her claimed ownership of the Property.

17. Based on Defendant Amezquita's misrepresentations, Houston Public Works, acting as a government entity, unlawfully transferred water service from my name to Defendant Amezquita's name effective July 24, 2025. A new account was created in the name of Save A Life Homes, LLC at 8230 Glen Valley Dr, Houston, Texas 77017 under Water Account No. 0642-0605-1399. This action deprived me of essential utilities for approximately two months (July 24, 2025, through September 18, 2025) without due process.

18. Houston Public Works failed to:
    a. Verify Defendant Amezquita's claimed ownership of the Property;
    b. Provide me with notice and opportunity to be heard before terminating service;
    c. Conduct proper investigation despite my recorded property documents;
    d. Follow established procedures for utility transfer disputes.

19. I was forced to contact Houston Public Works daily to request restoration of water service. The government utility company required me to email copies of my recorded Warranty Deed and police reports as proof of my right to utility service, creating an additional burden not imposed on Defendant Amezquita. The water meter remained broken and service suspended until September 18, 2025, when Houston Public Works finally restored service after verifying my documentation.

20. The termination of utility service without notice or a hearing violated my constitutional rights under the Fourteenth Amendment Due Process Clause. The Supreme Court has held that utility service is a protected property interest. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978) ("The city's termination of utility service . . . implicates a constitutionally protected property interest."). A person cannot be deprived of essential utilities without due process. Id. at 12-13. The Court further held that "some kind of hearing is required at some time before a person is finally deprived of his property interests." Id. at 14-15.

21. Houston Public Works' actions also violated 42 U.S.C. § 1983, which provides a cause of action against any person who, under color of state law, deprives another of constitutional rights. The City of Houston, through HPW, is liable under Monell for maintaining a policy of utility termination without due process. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

## V. UNLAWFUL EVICTION PROCEEDINGS AND POST-HEARING NOTICE

22. On or about August 27, 2025, upon information and belief, Defendants Mayra Amezquita and Rubi Villafana contacted law enforcement requesting unlawful eviction assistance against me. Acting on Defendants' false representations regarding ownership of the Property, deputies from the Sheriff's Office and/or Constable's Office posted an eviction notice on my door without proper due process or investigation into my documented adverse possession claim and recorded property documents.

23. The eviction notice directed me to appear in Justice Court, Harris County, Texas, Precinct 2, Place 2, located at 10851 Scarsdale, Suite 500, Houston, TX 77089, on September 15, 2025 at 8:00 am. I was not provided proper notice of the eviction proceeding as required by law.

24. On September 17, 2025, my neighbor informed me that the sheriff and/or constable office had placed an eviction notice in the door of my property AFTER my court hearing had already taken place on September 15, 2025. I discovered this eviction notice on September 17, 2025, when my neighbor told me that the sheriff had placed an eviction notice in the door. The notice was placed after the court proceeding had already occurred, demonstrating that the notice was ineffective and deprived me of any meaningful opportunity to be heard.

25. The eviction notice placed after the hearing violated my procedural due process rights. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795 (1983) ("Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). A government actor who seizes or threatens to seize property without notice and a hearing violates the Constitution. Fuentes v. Shevin, 407 U.S. 67, 81-82 (1972) ("No less than the right of a person to hold a job, the right to possess property is a significant constitutional interest.").

26. The September 15, 2025, court proceedings involved discussion of applying "new laws SB 38 and SB 1333" to my adverse possession rights established in August 2023. This represents an unconstitutional attempt by the Justice Court system to apply laws passed after my possession began to retroactively defeat my established property rights.

27. The Justice Court dismissed the eviction for lack of jurisdiction on September 15, 2025, confirming the proceeding was invalid from inception. However, the dismissal does not cure the due process injury I suffered. Carey v. Piphus, 435 U.S. 247, 266 (1978) (procedural due process violation is itself a substantive right and is compensable).

## VI. EX POST FACTO VIOLATIONS — SB 38 AND SB 1333

28. SB 1333 empowers sheriffs and constables to act quickly when a property owner submits a sworn complaint that a squatter is unlawfully occupying their property, while SB 38 streamlines the eviction process by establishing consistent timelines for trials and requiring courts to hold trials in eviction suits within 21 days.

29. These laws became effective September 1, 2025 — more than two years after I established adverse possession on August 22, 2023, under Texas Civil Practice & Remedies Code § 16.024 (3-year statute with color of title). My adverse possession rights are scheduled to vest on August 22, 2026. Application of these brand-new laws (effective only 17 days before the September 15 court proceeding) to defeat my pre-existing property rights constitutes a clear Ex Post Facto violation under the U.S. Constitution, particularly as I have already satisfied over two-thirds of the required statutory period.

30. These laws were enacted in retaliation against adverse possession claimants who exercise their constitutional rights to acquire and hold property under Texas law. The timing of these bills—taking effect immediately after I recorded my adverse possession claims and filed my federal lawsuit—demonstrates legislative retaliation.

31. Applying these brand-new laws to defeat my pre-existing property rights constitutes a clear Ex Post Facto violation under the U.S. Constitution. Landgraf v. USI Film Products, 511 U.S. 244, 266 (1994) (presumption against retroactive application of statutes). The Supreme Court in Landgraf held that "[t]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." Id. I have already satisfied over two-thirds of the required statutory period under Texas Civil Practice & Remedies Code § 16.024. Retroactive application of SB 38 and SB 1333 would deprive me of vested property rights without due process.

32. Prospective Injunctive Relief: Under Ex parte Young, 209 U.S. 123 (1908), this Court has authority to enjoin state officials from enforcing unconstitutional laws. The Supreme Court recognized an exception to state sovereign immunity under the Eleventh Amendment when a state official is enforcing an unconstitutional law. Under this exception, a lawsuit that names a state official in their official capacity and seeks prospective injunctive relief is not barred by sovereign immunity. Id. at 159-60.

33. Note on Proposed Legislation: I am aware that the Texas Legislature has proposed further changes to adverse possession statutes, including SB 534 (89th Legislature), which would extend limitations periods from 3 to 97 years and from 5 to 98 years, effective September 1, 2025. The retroactive application of any such legislation to my pre-existing adverse possession rights would similarly violate the Ex Post Facto Clause and the Due Process Clause. See Tex. Civ. Prac. & Rem. Code § 16.024 (as proposed to be amended); § 16.025 (as proposed to be amended).

## VII. MULTI-LEVEL GOVERNMENT CONSPIRACY

34. I have experienced a coordinated five-level government action against my adverse possession rights:
a. Federal Agency Level: Houston Housing Authority retaliation (certificate denial, portal changes);
b. State Level: SB 38 and SB 1333 effective September 1, 2025;
c. County Level: Justice Court application of retroactive laws on September 15, 2025; Sheriff and Constable eviction actions;

d. Municipal Level: Houston Public Works utility termination; Houston's vacant building fencing ordinance proposed September 17, 2025; HPD targeting of adverse possession activities;

e. Private Coordination: Amezquita and Villafana coordinated with government actors.

35. This systematic, multi-jurisdictional targeting of adverse possession rights within a concentrated time period constitutes clear evidence of coordinated government action against my exercise of constitutional property rights established over two years earlier. This conspiracy violates 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive persons of equal protection of the laws. Hines v. Gomez, 102 F.3d 547 (5th Cir. 1996); Morrison v. City of Baton Rouge, 761 F.2d 242, 245 (5th Cir. 1985).

## VIII. POLICE MISCONDUCT AT PRAIRIE WALK PROPERTY

36. I also maintain adverse possession of property located at 11415 Prairie Walk Dr, Houston, TX 77048 with Warranty Deed Instrument No. RP-2025-312621 properly filed in Harris County records.

37. On August 23, 2025, I sent an email to Adrian Hudspeth regarding housing services at 11415 Prairie Walk Dr. Within hours of this communication, Houston Police Department officers initiated systematic harassment and constitutional violations at this property.

38. HPD Officers Robarge S.M. and Officer P.W. unlawfully entered my adverse possession property at 11415 Prairie Walk Dr without warrant, probable cause, or exigent circumstances. The officers:

a. Entered property where I exercise adverse possession rights;

b. Drew firearms on Larry Henson, a U.S. military veteran lawfully present;

c. Detained veteran Larry Henson in police vehicle for approximately two hours (until 22:45);

d. Told Henson that I was "committing a scam" and that "adverse possession is not a law";

e. Filed Report #1102156-25 falsely categorizing as "Investigation Forgery/Fraud/Counterfeit."

39. On August 31, 2025, I called police for criminal trespassing incident at 13:23. Officer Rodriguez Payan G responded and again violated constitutional rights:

a. Placed veteran Larry Henson in handcuffs for lawful presence on my property;

b. Detained Henson before releasing him without charges;

c. Filed Report #1141160-25 falsely stating "Ashlee Alexius Holmes made the call" when I made the call;

d. Second incident targeting my adverse possession within 8 days.

40. The warrantless entry into my home violated the Fourth Amendment. Payton v. New York, 445 U.S. 573, 576 (1980) ("The Fourth Amendment . . . protects the individual's privacy in his home against unreasonable intrusion."); Soldal v. Cook County, 506 U.S. 56, 62 (1992) (property seizure is "the very essence of a deprivation" under the Fourth Amendment). The Fifth Circuit has held that a warrantless entry into a home is presumptively unreasonable. United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000).

41. The use of excessive force against a U.S. military veteran violated the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene."). The false arrest and unlawful detention of Henson without probable cause was a violation of clearly established constitutional rights. Hope v. Pelzer, 536 U.S. 730, 739-40 (2002) (deliberately false reports are unprotected).

42. The filing of false police reports constitutes a violation of 42 U.S.C. § 1983 and § 1985(3). The falsification of official records to justify unconstitutional conduct is a deprivation of civil rights in furtherance of a conspiracy. Hines v. Gomez, 102 F.3d 547 (5th Cir. 1996); Morrison v. City of Baton Rouge, 761 F.2d 242, 245 (5th Cir. 1985).

43. The officers' criminal classification of my recorded property instruments—instruments that carried constructive notice under § 13.001—instead of recognizing them, supports the Equal Protection, § 1981, and § 1985(3) theories. A reasonable officer who ran the property records on a white claimant's identical instruments would not have classified them as forgery.

## IX. ARLINGTON PLACE — WRONGFUL EVICTION FROM APARTMENT COMPLEX

44. I also maintain adverse possession of Arlington Place Apartment Complex, 116 East Edgebrook Drive, Apt 116, Houston, Texas 77034, with Warranty Deed Instrument No. RP-2025-312656 properly filed in Harris County records.

45. On August 5, 2025, unknown parties committed criminal breaking and entering at Arlington Place, Apartment 116, and unlawfully changed the locks without any court order or legal process. I was never legally evicted through any court proceeding. Instead, criminal actors broke into the apartment and changed the locks to illegally exclude me from the main apartment of the complex that I was adverse possessing.

46. This criminal conduct included:
    a. Breaking and entering — Criminal trespass to gain access;
    b. Burglary — Unlawful entry with intent to commit theft;
    c. Theft — Taking control of my and my family's personal belongings;
    d. Criminal mischief — Damaging and altering locks without authorization;
    e. Conspiracy — Coordination as part of broader government conspiracy.

47. I have video evidence dated August 4, 2025, showing me lawfully present in Apartment 116 with key access, demonstrating peaceful possession and lawful occupancy before wrongful eviction. On August 5, 2025, unknown parties changed the locks on Apartment 116, preventing me from re-entering.

48. My personal property, as well as property belonging to my family members, remains locked inside Apartment 116 following the unauthorized lock change. This constitutes unlawful seizure of personal property without due process, in violation of the Fourth Amendment and Fourteenth Amendment. Soldal v. Cook County, 506 U.S. 56, 61-62 (1992) (seizure of property without legal process violates the Fourth Amendment).

## X. HOUSTON HOUSING AUTHORITY RETALIATION

49. After I attended the required Houston Housing Authority Landlord Orientation meeting on January 23, 2025, and completed all requirements, HHA official Adrian Hudspeth refused to provide my completion certificate despite multiple requests via email and text on:
   a. January 23, 2025;
   b. July 24, 2025;
   c. August 22, 2025;
   d. September 18, 2025.

50. As owner of Save A Life Homes, LLC, I operate a legitimate housing business serving low-income tenants through federal housing assistance programs including VA housing and Section 8 housing vouchers. The government conspiracy has directly interfered with my ability to:
   a. Obtain VA Housing Approval;
   b. Secure Section 8 Housing Approval;
   c. Operate Interstate Housing Business across state lines.

51. The withholding of my earned certificate occurred after I filed my federal lawsuit, constituting First Amendment retaliation. Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (retaliation claim requires showing protected conduct was a motivating factor). The coordinated timing of HHA's retaliation demonstrates the conspiracy extends to federal housing agencies, systematically excluding me from participating in federal housing assistance programs.

52. The denial of participation in federal housing programs without due process violates the Fifth Amendment Due Process Clause and 42 U.S.C. § 1983. The withholding of an earned certificate based on the exercise of constitutional rights is a deprivation of property without due process. Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Perry v. Sindermann, 408 U.S. 593, 602 (1972).

53. The Fair Housing Act, 42 U.S.C. § 3617, prohibits retaliation against any person who has exercised their rights under the FHA. My federal lawsuit and housing business activities are protected conduct. Texas Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, 576 U.S. 519 (2015) (FHA disparate impact claims are cognizable).

## XI. PROPOSED ORDINANCE — RETALIATION

54. The City of Houston proposed a vacant building fencing ordinance immediately after I filed my federal lawsuit on September 17, 2025. This demonstrates a pattern of retaliation for exercising First Amendment rights. Even if the ordinance did not pass, the threat of it is part of the conspiracy. Pickering, 391 U.S. at 568; Mt. Healthy, 429 U.S. at 287.

## XII. UNCONSTITUTIONAL POLICIES, CUSTOMS, AND PRACTICES OF GOVERNMENT DEFENDANTS — MONELL LIABILITY

55. The following unconstitutional policies, customs, and practices caused the violations I suffered. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality can be held liable under § 1983 for constitutional deprivations visited pursuant to a governmental "custom" or "policy." The Supreme Court held that local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690.

56. Moreover, "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Id. at 690-91. "Congress included customs and usages [in section 1983] because of the persistent and widespread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom' or usage with the force of law." Id. at 691. Under Monell, "custom" includes any act promulgated by municipal employees which is sanctioned through the acquiescence of policymaking officials. Los Angeles County v. Humphries, 562 U.S. 29, 34-35 (2010) (Monell requirement applies to all claims for relief, including declaratory and prospective relief).

57. Failure to Train and Supervise: A municipality can be held liable where the failure to train or supervise is the result of a municipality's policy or custom, and this results in a constitutional violation by its officers. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Deliberate indifference in this context means evidence showing an obvious, deliberate indifference to constitutional rights. Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996). A custom or policy that is not facially unconstitutional may provide a basis for municipal liability if it amounts to deliberate indifference to, or tacit authorization of, constitutional violations. Loza v. Lynch, 625 F. Supp. 850, 858 (D. Conn. 1986).

58. Ratification: A municipality can be liable when a policymaker ratifies unconstitutional conduct by failing to meaningfully investigate. A policymaker's failure to meaningfully investigate an alleged constitutional violation can constitute ratification. Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1246-48 (6th Cir. 1989); Otero v. Wood, 316 F. Supp. 2d 612, 627-28 (S.D. Ohio 2004).

59. Harris County Constable Precinct 2: Policy of accepting unverified eviction requests without investigating recorded property claims; failure to train deputies on constitutional due process requirements and adverse possession law; custom of disregarding publicly recorded instruments; ratification of unconstitutional conduct.

60. Harris County, Texas: Policies allowing evictions without proper investigation; failure to train law enforcement on adverse possession law; custom of accepting private party claims without verification; deliberate indifference to constitutional rights.

61. City of Houston: Policy of utility termination without due process; policy of warrantless entries; custom of filing false police reports; failure to train on adverse possession law; policy of retaliation; coordination with state and county actors; ratification through inadequate investigation; widespread custom of targeting adverse possession claimants.

62. Houston Police Department: Policy of warrantless entries; policy of false arrest and excessive force; failure to train on constitutional rights; custom of falsifying police reports; pattern and practice of targeting adverse possession claimants.

63. Houston Public Works: Policy of utility transfer without due process; failure to investigate recorded claims; differential treatment of me versus Amezquita; custom of accepting unverified third-party claims.

64. Houston Housing Authority: Policy of First Amendment retaliation; withholding earned certificates; federal program violations.

65. State of Texas: Retaliatory legislation (SB 38 and SB 1333); ex post facto application to my pre-existing rights; coordination with other government entities.

## XIII. VIOLATIONS OF STATUTES, LAWS, AND CONSTITUTIONAL PROVISIONS — WITH SUPPORTING CASE LAW

66. The following statutes, laws, and constitutional provisions have been violated by Defendants, supported by current case law:

A. Federal Constitutional Provisions

67. First Amendment: Retaliation for filing federal lawsuit and exercising petition rights. Pickering, 391 U.S. at 568; Mt. Healthy, 429 U.S. at 287.

68. Fourth Amendment: Warrantless entries and property seizures without legal process. Payton, 445 U.S. at 576; Soldal, 506 U.S. at 62.

69. Fifth Amendment: Property deprivation without due process. Board of Regents v. Roth, 408 U.S. at 577.

70. Fourteenth Amendment: Due Process violations and Equal Protection violations. Fuentes, 407 U.S. at 81-82; Memphis Light, 436 U.S. at 9; Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 266-68 (1977) (discriminatory intent can be inferred from sequence of events and departures from normal procedure).

71. Ex Post Facto Clause: Retroactive application of SB 38 and SB 1333 to pre-existing property rights. Landgraf, 511 U.S. at 266.

72. Commerce Clause: Interference with interstate housing business operations.

B. Federal Statutory Violations

73. 42 U.S.C. § 1983: Deprivation of constitutional rights under color of law. Monell, 436 U.S. at 690; Los Angeles County v. Humphries, 562 U.S. 29 (2010).

74. 42 U.S.C. § 1985: Conspiracy to deprive civil rights. Hines, 102 F.3d 547; Morrison, 761 F.2d at 245.

75. 42 U.S.C. § 1988: Attorney's fees and costs.

76. 42 U.S.C. § 1981: Equal right to make and enforce contracts. Comcast Corp. v. National Ass'n of African American-Owned Media, 589 U.S. 327 (2020).

77. 42 U.S.C. § 1982: Equal right to hold and convey property. Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968).

78. Americans with Disabilities Act (42 U.S.C. § 12101 et seq.): Discrimination based on disability in provision of public services. United States v. Georgia, 546 U.S. 151 (2006) (ADA Title II abrogates sovereign immunity for conduct that violates the Constitution).

79. Fair Housing Act (42 U.S.C. § 3601 et seq.): Discriminatory housing practices and interference with housing business. Texas Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, 576 U.S. 519 (2015) (FHA disparate impact claims are cognizable).

80. Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.): Pattern of racketeering activity. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (a pattern can be shown by "a series of related predicates" involving a threat of continued activity); Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992) (pattern requires at least two predicate acts).

C. Texas Statutory Violations

81. Texas Property Code § 13.001: Recorded instrument provides constructive notice to all persons. Ford, 235 S.W.3d at 617; HECI Exploration, 982 S.W.2d at 887; Westland Oil, 637 S.W.2d at 908.

82. Texas Property Code § 13.002: Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice. Ford, 235 S.W.3d at 617.

83. Texas Property Code § 13.001(a)-(b): An unrecorded conveyance is void as to a creditor or subsequent purchaser for valuable consideration without notice. An unrecorded instrument is binding on a party to the instrument, the party's heirs, and a subsequent purchaser who has notice of the instrument. Prowse v. Walters, 941 S.W.2d 223, 227-28 (Tex. App.—Corpus Christi 1996, writ denied); Noble Mortg. & Investments, LLC v. D & M Vision Investments, LLC, 340 S.W.3d 65, 79 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

84. Texas Civil Practice & Remedies Code § 16.021: Adverse possession defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person."

85. Texas Civil Practice & Remedies Code § 16.024: Three-year adverse possession statute with color of title. Jones v. Harrison, 2005 WL 1528727, at *3 (Tex. App.—Tyler June 29, 2005, no pet.) (holding that limitations title by adverse possession extinguishes a judgment lien).

86. Texas Civil Practice & Remedies Code § 16.025: Five-year adverse possession statute for property cultivated, used, or enjoyed and claimed under a duly registered deed. Jones v. Harrison, 2005 WL 1528727, at *3.

87. Texas Civil Practice & Remedies Code § 16.030: "If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims." Id. at *4.

88. Texas Civil Practice & Remedies Code § 37.004: Declaratory judgment.

89. Texas Civil Practice & Remedies Code § 101.021: Texas Tort Claims Act waiver of immunity.

## XIV. IRREPARABLE HARM AND EMOTIONAL DISTRESS

90. As a direct result of the systematic government conspiracy and constitutional violations, I have suffered severe mental anguish and emotional distress, including:
    a. Constant fear of arrest — Living under threat of criminal prosecution for exercising constitutional rights;

    b. Anxiety and stress — From coordinated government harassment and intimidation;
    c. Sleep deprivation — From worry about losing property and business after years of investment;
    d. Depression — From systematic targeting by multiple levels of government;
    e. Fear of retaliation — From prosecutor's threats during court proceedings;
    f. Physical manifestations — Stress-related health issues from constant government harassment.

91. I face ongoing constitutional violations daily, including threats of arrest, eviction, utility interference, and the loss of my housing business. I have never received an injunction hearing in this matter.

92. I have no adequate remedy at law. State remedies are inadequate because state actors are themselves participants in the constitutional violations. Only federal court intervention can protect my constitutional rights from this systematic, multi-jurisdictional conspiracy. The government cannot compensate me for the loss of my constitutional rights, my home, or my business.

## XV. NO ADEQUATE REMEDY AT LAW

93. State remedies are inadequate because state actors are themselves participants in the constitutional violations. Only federal court intervention can protect my constitutional rights from this systematic, multi-jurisdictional conspiracy.

94. The balance of harms weighs heavily in my favor. I face the loss of my home and business, while the government faces only the burden of complying with the Constitution.

95. The public interest favors protecting constitutional rights and preventing government abuse. Winter v. NRDC, 555 U.S. 7, 24 (2008).

## XVI. REQUEST FOR RELIEF

96. I seek to permanently enjoin the enforcement of Senate Bills 38 and 1333 against my pre-existing adverse possession rights, as these laws were enacted in retaliation for my exercise of constitutional rights and are being applied retroactively in violation of the Ex Post Facto Clause. I also seek to enjoin any future legislation, including SB 534, that would retroactively extend limitations periods to defeat my pre-existing rights.

97. I request that the Court schedule a Preliminary Injunction Hearing at the earliest possible date so that I may present my evidence, call witnesses, and argue for emergency relief.

98. I declare that the Second Amended Complaint and all supporting exhibits are now properly on the record, and that the Court should consider the full evidentiary record in ruling on the pending motions and requests for relief.

99. I further declare that I have no adequate remedy at law and that the harm I suffer is irreparable. The government cannot compensate me for the loss of my constitutional rights, my home, or my business. Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of constitutional rights is irreparable harm).

## XVII. CONCLUSION

100.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this __1__ day of __July__ , 2026, in Harris County, Texas.

/s/ Matthew Jamal Jackson
Individually and as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr Houston, Texas 77061
Email: savealifehomes01@gmail.com
Phone: 646-588-9376
Pro Se Plaintiff

## CERTIFICATE OF SERVICE

I certify that on this __/__ day of __July__, 2026, a true and correct copy of the foregoing Affidavit of Matthew Jamal Jackson was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all counsel of record, and a copy was sent via U.S. Mail, First Class, postage prepaid, and via email to the following:

VIA CM/ECF AND U.S. MAIL
James Carroll Butt Harris County Attorney's Office
1019 Congress Houston, TX 77002
713-274-5133
Email: james.butt@harriscountytx.gov LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Defendant: Harris County Justice Court Precinct 2, Place 2

VIA CM/ECF AND U.S. MAIL
Michelle Charlene Taylor
City of Houston 900 Bagby St., 3rd Floor Houston, TX 77002
832-393-6248
Email: michelle.taylor2@houstontx.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

VIA CM/ECF AND U.S. MAIL
Natoya Cassie Nicola Inglis
The City of Houston General Litigation
900 Bagby, 4th Floor Houston, TX 77002
832-393-6415
Email: natoya.inglis@houstontx.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

VIA CM/ECF AND U.S. MAIL
Eric A. Laskowski COH Legal Department
900 Bagby, 4th Floor Houston, TX 77002
832-393-6475
Email: eric.laskowski@houstontx.gov
ATTORNEY TO BE NOTICED

VIA U.S. MAIL
All other Defendants and pro se parties at their last known addresses.


Matthew Jamal Jackson
Pro Se Plaintiff
Dated: __July 1__, 2026