IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 0 1 2026

Nathan Ochsner, Clerk of Court

MATTHEW JAMAL JACKSON,
Individually and as Owner of
Save A Life Homes, LLC,

Plaintiff,

v.                                          CIVIL ACTION NO. 4:25-cv-04354

MAYRA AMEZQUITA, et al.,
Defendants.

AFFIDAVIT OF MATTHEW JAMAL JACKSON IN SUPPORT OF RICO ENTERPRISE
ALLEGATIONS

I, Matthew Jamal Jackson, being duly sworn, depose and state under penalty of perjury pursuant
to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

I. INTRODUCTION AND PURPOSE

1.  I am the Plaintiff in this action, proceeding pro se. I am an African American man and the
    owner of Save A Life Homes, LLC, a legitimate housing business serving low-income
    tenants, veterans, and families through federal housing assistance programs.

2.  I submit this Affidavit to establish the existence of a RICO enterprise—specifically, an
    association-in-fact enterprise—comprised of the named Defendants who have
    coordinated their actions to deprive me of my constitutional property rights.

3.  Under the RICO statute, an association-in-fact enterprise is a "group of persons
    associated together for a common purpose of engaging in a course of conduct." *United
    States v. Turkette*, 452 U.S. 576, 583 (1981). The Supreme Court has identified three
    structural features: "a purpose, relationships among those associated with the enterprise,
    and longevity sufficient to permit these associates to pursue the enterprise's purpose."
    *Boyle v. United States*, 556 U.S. 938, 946 (2009).

4.  Critically, an enterprise may be illegitimate in purpose and "a group that does nothing but
    engage in extortion may fall squarely within the statute's reach." *Boyle*, 556 U.S. at 948.
    The enterprise need not exist for any legitimate purpose; it is enough that the group
    functions as a continuing unit pursuing a common course of conduct. *See Allstate Ins. Co.
    v. Plambeck*, 802 F.3d 665, 673-74 (5th Cir. 2015).

## II. THE ENTERPRISE: DEFINITION AND STRUCTURE

5. The Enterprise Defined: The RICO enterprise in this case is an association-in-fact comprised of the following Defendants and co-conspirators, who have associated together for the common purpose of depriving me of my property rights, destroying my housing business, and preventing me from exercising my constitutional rights:

> Federal Level: Houston Housing Authority and Adrian Hudspeth
> State Level: State of Texas (through SB 38 and SB 1333)
> County Level: Harris County, Texas; Harris County Justice Court Precinct 2 Place 2; Jerry Garcia, Constable; Ed Gonzalez, Sheriff; and their deputies
> Municipal Level: City of Houston; Houston Public Works; Houston Police Department; Chief J. Noe Diaz Jr.; and Officers Robarge S.M., P.W., and Rodriguez Payan G
> Private Co-Conspirators: Mayra Amezquita, Rubi Villafana, and others

6. Ongoing Organization: The enterprise has an "ongoing organization, formal or informal," as required by *Turkette*, 452 U.S. at 583. The structure is demonstrated by:

a. Hierarchical Decision-Making: The City of Houston, through Chief Diaz (final policymaker for HPD) and Director Macchi (final policymaker for HPW), established and implemented policies that the lower-level officers and employees executed[citation:10].

b. Consensual Decision-Making: The enterprise operates through a "consensual decision making structure" where multiple governmental actors at different levels coordinate their actions to achieve the common purpose. *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 433 (5th Cir. 1990).

c. Differentiation of Roles: Each member of the enterprise has a distinct role:
> Amezquita provided false information to Houston Public Works
> Houston Public Works terminated my utility service without due process
> The Constable's deputies posted unlawful eviction notices
> The Justice Court applied ex post facto laws to my pre-existing rights
> HPD officers conducted warrantless entries and filed false police reports
> HHA withheld my earned certification in retaliation

7. The Enterprise Is More Than a Summation of Predicate Acts: While a RICO enterprise "must be more than a summation of predicate acts," the predicate acts themselves can demonstrate the existence of the enterprise. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 748 (5th Cir. 1989). As the Fifth Circuit clarified in *Allstate*, "the evidence establishing the enterprise and the pattern of racketeering may 'coalesce.'" 802 F.3d at 673 (quoting *Boyle*, 556 U.S. at 947).

8. Continuity and Longevity: The enterprise has demonstrated continuity sufficient to pursue its purpose. The coordinated action spans from at least July 2025 through the present—a period of nearly a year—with multiple related predicate acts occurring throughout. The enterprise continues to operate, as evidenced by ongoing retaliation.

## III. COMMON PURPOSE

9. The Enterprise's Common Purpose: The members of the enterprise share a common purpose: to deprive me, an African American adverse possession claimant, of my constitutionally protected property rights and to destroy my housing business. This common purpose is demonstrated by the coordinated, five-level government action targeting my rights.

10. The Enterprise's Illegitimate Purpose: The enterprise's purpose is entirely illegitimate. The members have associated to:
Terminate essential utilities without due process
Conduct warrantless entries and false arrests
File false police reports
Apply ex post facto laws retroactively
Retaliate against the exercise of constitutional rights
Coordinate to exclude me from federal housing programs
Illegally dispossess me of property without legal process

11. A Common Purpose Need Only Be a Desire to Make Money or Achieve an Objective: The Fifth Circuit has held that a common purpose "need be nothing more than 'the desire to make money.'" *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir. 1978). Here, the enterprise's purpose is to transfer my property rights to the private co-conspirators and to exclude me from the housing market.

## IV. RELATIONSHIPS AMONG ENTERPRISE MEMBERS

12. Coordinated Timing: The enterprise's operations are demonstrated by the coordinated timing of its members' actions:

a. July 24, 2025: Amezquita trespassed on my property, damaged the water meter, and contacted Houston Public Works with false information. On the same day, Houston Public Works transferred my water service to Amezquita without notice or hearing.

b. August 5, 2025: Unknown parties changed the locks at Arlington Place, Apartment 116, without any court order, the day after video evidence shows me in lawful possession.

c. August 23, 2025: I emailed Adrian Hudspeth of HHA regarding housing services. Within hours, HPD officers Robarge and P.W. conducted a warrantless entry at my Prairie Walk property, drew weapons, and detained a veteran.

d. August 27, 2025: Constable's deputies posted an eviction notice at my Glen Valley property without investigating my recorded instruments.

e. August 31, 2025: HPD Officer Rodriguez Payan conducted a second incident targeting my property, filing a false police report.

f. September 15, 2025: The Justice Court applied SB 38 and SB 1333—laws effective only 17 days earlier—to my pre-existing adverse possession rights.

g. September 17, 2025: The City proposed a vacant building fencing ordinance, immediately after the court proceedings.

13. Institutional Relationships: The enterprise members are connected through institutional relationships:

Harris County Constable's Office and Sheriff's Office coordinate on eviction matters
City of Houston and Harris County share jurisdiction and cooperate on law enforcement
Houston Housing Authority coordinates with local law enforcement
State legislation (SB 38 and SB 1333) was designed to enable county and municipal enforcement against adverse possession claimants

14. The Enterprise Is Not Mere Conspiracy: The enterprise has "an existence separate and apart from the pattern of racketeering." *Turkette*, 452 U.S. at 583. The institutional relationships and ongoing coordination predate the specific predicate acts and continue beyond them.

## V. THE ENTERPRISE OPERATED THROUGH A PATTERN OF RACKETEERING ACTIVITY

15. Predicate Acts: The enterprise committed multiple predicate acts of racketeering activity:

a. Wire Fraud (18 U.S.C. § 1343): Amezquita's false telephone and electronic communications to Houston Public Works on July 24, 2025, and subsequent communications between enterprise members.

b. Tampering with Official Records (18 U.S.C. § 1519): Officer Robarge filed false Report #1102156-25; Officer Rodriguez Payan filed false Report #1141160-25.

c. Obstruction of Judicial Proceedings (18 U.S.C. § 1503): Court employees threatened my process server; the Justice Court applied ex post facto laws.

d. Extortion Under Color of Official Right (18 U.S.C. § 1951): Government officials used their authority to deprive me of property rights.

16. Continuity Plus Relationship: The predicate acts are both related and continuous. They are related because they serve the common purpose of the enterprise. They are continuous because they occurred over a substantial period (July 2025 through the present) and represent an ongoing threat of future racketeering activity.

17. The Enterprise Conducted Its Affairs Through the Pattern: The enterprise members "conduct[ed] the affairs of the enterprise through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The institutional powers of each member—the authority to terminate utilities, to make arrests, to conduct evictions, to adjudicate cases, to administer housing programs—were used to accomplish the enterprise's purpose.

## VI. THE ENTERPRISE'S EXISTENCE IS SEPARATE FROM THE PATTERN

18. The Enterprise Has a Separate Existence: The enterprise's existence is demonstrated by:

   The institutional structures of the government entities themselves
   The ongoing coordination between levels of government
   The relationships that predate and continue beyond the specific predicate acts
   The common purpose that extends beyond any individual act of racketeering

19. The Enterprise Exists to Pursue a Course of Conduct: Under *Boyle*, the enterprise must "function as a continuing unit and remain in existence long enough to pursue a course of conduct." 556 U.S. at 948. Here, the enterprise has pursued a course of conduct over nearly a year—a sustained campaign to deprive me of my property rights.

20. The Government Defendants' Institutional Purpose Does Not Defeat RICO: Even if the government entities have legitimate purposes (law enforcement, utility provision, housing administration), "a group that does nothing but engage in extortion may fall squarely within the statute's reach." *Boyle*, 556 U.S. at 948. The enterprise need not exist solely for illicit purposes; it is enough that the associates function as a continuing unit to pursue the common purpose.

## VII. DISTINCTNESS FROM THE RICO PERSON

21. The Enterprise Is Distinct from Each RICO Person: Under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001), a RICO enterprise must be distinct from the RICO person. Here, the enterprise is distinct from each individual defendant. The enterprise is the association-in-fact of all the members—the Harris County Constable's Office, the City of Houston, HPD, HPW, HHA, and the private co-conspirators—functioning together. Each individual defendant is a "person" who conducted the affairs of this enterprise.

22. The Enterprise Consists of Multiple, Unaffiliated Entities: The enterprise is not merely a corporation and its employees. It is an association of separate government entities—Harris County, the City of Houston, the State of Texas—and private actors who coordinated their actions. This satisfies the distinctness requirement. *Office Outfitters, Inc. v. A.B. Dick Co.*, 83 F. Supp. 2d 772, 779-80 (E.D. Tex. 2000).

## VIII. CONCLUSION

23. The named Defendants constitute an association-in-fact RICO enterprise with:

   A common purpose of depriving me of my property rights
   Relationships among the members demonstrated by coordinated timing and institutional connections
   Longevity sufficient to pursue the enterprise's purpose over a sustained period
   An ongoing organization with hierarchical and consensual decision-making structures
   An existence separate and apart from the pattern of racketeering activity
   A pattern of related and continuous predicate acts

24. The enterprise operated through this pattern of racketeering activity to achieve its purpose. My injuries—the loss of property, utilities, business income, and constitutional rights—were caused by the enterprise's racketeering activities.

25. I seek treble damages under 18 U.S.C. § 1964(c) for the injuries I have suffered as a result of this enterprise's racketeering activities.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this __/__ day of ___July___, 2026, in Harris County, Texas.

Matthew Jamal Jackson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Affidavit Rico Enterprises served upon all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Texas on this ___/___ day of _____July_____, 2026.

/s/MATTHEW JACKSON
Plaintiff, Pro Se
Save A Life Homes, LLC
8230 Glen Valley Dr
Houstonn, Texas 77061
savealifehomes01@gmail.com
6465889376