United States Courts
Southern District of Texas
FILED

JUL 0 1 2026

Nathan Ochsner, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

MATTHEW JAMAL JACKSON,
Individually and as Owner of
Save A Life Homes, LLC,

**CIVIL ACTION NO. 4:25-cv-04354**

Plaintiff,

v.

MAYRA AMEZQUITA, et al.,

Defendants.

## PLAINTIFF'S CONSOLIDATED OBJECTION AND RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS AND REQUEST FOR REHEARING ON TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION HEARING

TO THE HONORABLE GEORGE C. HANKS, JR.:

COMES NOW Plaintiff Matthew Jamal Jackson, proceeding pro se, and files this Consolidated Objection and Response to the Motions to Dismiss filed by Defendant Harris County Constable Precinct Two ("PCT2") [Dkt. 52], Defendant City of Houston, Houston Public Works ("HPW"), and Houston Police Department ("HPD") [Dkt. 53] (collectively, "Defendants").

Plaintiff respectfully requests that this Court deny Defendants' Motions in their entirety, dismiss them with prejudice as to Defendants' arguments, grant a rehearing on the Temporary Restraining Order, and schedule a Preliminary and Permanent Injunction Hearing now that Plaintiff's complete Second Amended Complaint and Exhibits are properly on the record.

1

## TABLE OF CONTENTS

I. INTRODUCTION

II. LEGAL STANDARD FOR RESPONSE TO MOTIONS TO DISMISS

III. RECORDED INSTRUMENTS CREATED CONSTITUTIONALLY PROTECTED PROPERTY INTERESTS

IV. CONSTRUCTIVE NOTICE DEFEATS DEFENDANTS' ARGUMENTS

V. LEAVE TO AMEND SHOULD BE GRANTED IF THE COURT IDENTIFIES ANY DEFICIENCY

VI. UNCONSTITUTIONAL POLICIES, CUSTOMS, AND PRACTICES OF EACH DEFENDANT

VII. OBJECTION TO DEFENDANT HARRIS COUNTY CONSTABLE PRECINCT TWO'S MOTION TO DISMISS

VIII. OBJECTION TO DEFENDANT CITY OF HOUSTON, HOUSTON PUBLIC WORKS & HOUSTON POLICE DEPARTMENT MOTION TO DISMISS

IX. REQUEST FOR REHEARING ON TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION HEARING

X. ADDITIONAL SUPPORTING CASE LAW

XI. AFFIDAVIT OF MATTHEW JAMAL JACKSON

XII. CONCLUSION

XIII. CERTIFICATE OF SERVICE

## I. INTRODUCTION

1. Defendants seek dismissal by asking this Court to resolve disputed questions of possession, ownership, notice, constitutional injury, municipal liability, and credibility before discovery has commenced. That is not the purpose of Rule 12.

2. At the motion-to-dismiss stage, the Court must accept Plaintiff's factual allegations as true, construe the pleadings liberally, and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

3. Plaintiff's Second Amended Complaint alleges detailed facts concerning recorded property instruments, recorded Affidavits of Adverse Possession, recorded Warranty Deeds, utility service and occupancy, governmental actions affecting possessory interests, warrantless entries and seizures, due-process violations, equal-protection violations, failure to train, failure to supervise, ratification by policymakers, municipal customs and practices, retaliation for protected conduct, and violations of the Fair Housing Act, ADA, 42 U.S.C. §§ 1981, 1982, 1983, and 1985.

4. Plaintiff has therefore alleged far more than labels and conclusions. Defendants' motions improperly attempt to convert Rule 12 proceedings into a trial on the merits. Those efforts should be rejected.

5. Although Houston Public Works has since restored water service, this does not moot Plaintiff's claims for damages, declaratory relief, and injunctive relief. The 56-day deprivation of essential utilities without due process constitutes a completed constitutional violation for which Plaintiff seeks compensatory and punitive damages. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (procedural due process violation is itself compensable). Moreover, the restoration of water service does not remedy the ongoing threat of future deprivations or the retaliation Plaintiff continues to face.

6. Further, Plaintiff's prior Temporary Restraining Order was denied without a hearing and before his exhibits were on the record. Now that the Second Amended Complaint and all supporting exhibits are properly before this Court, due process requires a rehearing on the TRO and a Preliminary and Permanent Injunction Hearing. Plaintiff has never received an injunction hearing, and due process requires that he be given the opportunity to present his evidence and arguments before this Court rules on the merits.

3

7. This Court Has a New Judge Who Granted Plaintiff Permission to Amend: Plaintiff notes that this case is now before the Honorable George C. Hanks, Jr., who has granted Plaintiff permission to amend his pleadings. Plaintiff has acted diligently and in good faith throughout this litigation. Should this Court identify any pleading deficiency, Plaintiff respectfully requests leave to file a Third Amended Complaint to incorporate additional facts and legal theories that have developed since the filing of the Second Amended Complaint.

## II. LEGAL STANDARD FOR RESPONSE TO MOTIONS TO DISMISS

8. Under Rule 12(b)(6), a complaint may be dismissed only if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

9. Courts must accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10. Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

11. A complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

12. For claims against municipalities under 42 U.S.C. § 1983, Plaintiff must plausibly allege a deprivation of a constitutional right caused by a policy, custom, or practice of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). This can be shown through a formal policy, a widespread practice or custom, or a failure to train that demonstrates deliberate indifference. *Id.* at 690-91; *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

13. Two incidents by different officers within days of each other can establish a pattern. *Peterson v. City of Fort Worth*, 588 F.3d 838, 845 (5th Cir. 2009).

14. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Americans with Disabilities Act, among others.

15. Plaintiff is not seeking monetary damages from the State; the State is sued solely for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), against unconstitutional retroactive laws—an unquestionable federal question.

4

16. The Court has supplemental jurisdiction over state law claims. 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

## III. RECORDED INSTRUMENTS CREATED CONSTITUTIONALLY PROTECTED PROPERTY INTERESTS

17. Defendants repeatedly argue that Plaintiff possessed no legally protected property interest. That contention ignores both Texas property law and federal constitutional law.

18. Texas Property Code § 13.001 provides that a properly recorded instrument constitutes constructive notice to all persons from the date of recording . Under Texas law, recording a deed serves as public notice of the new owner's claim to the property. *See* Tex. Prop. Code § 13.001(a)-(b) . The Texas Supreme Court recently reaffirmed that negligent ignorance has the same legal effect as actual knowledge. *425 Soledad, Ltd. v. CRVI Riverwalk Hospitality, LLC*, 709 S.W.3d 551 (Tex. 2024).

19. Plaintiff recorded multiple instruments in the Harris County real property records, including Affidavits of Adverse Possession and Warranty Deeds. Those recordings provided constructive notice to governmental actors. *Rice v. Pinney*, 51 S.W.3d 705, 711–13 (Tex. App.—Dallas 2001, no pet.); *Haile v. Holtzclaw*, 414 S.W.2d 916 (Tex. 1967). Once recorded, the deed becomes constructive notice to the world .

20. Federal constitutional protection is not limited to perfect title. Property interests arise from legitimate claims of entitlement recognized by state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972).

21. Plaintiff's allegations of possession, occupancy, recorded instruments, utility service, and publicly asserted ownership interests are sufficient to establish a protected property interest at the pleading stage.

22. Even a not-yet-fully-vested property interest based on legitimate expectation is protected by Due Process. *Perry v. Sindermann*, 408 U.S. 593 (1972). Plaintiff's title vests August 22, 2026—his reasonable expectation is protected now.

## IV. CONSTRUCTIVE NOTICE DEFEATS DEFENDANTS' ARGUMENTS

23. Plaintiff alleges that Defendants acted despite the existence of recorded instruments in Harris County records. Under Texas law, constructive notice is legally equivalent to actual knowledge. *425 Soledad, Ltd. v. CRVI Riverwalk Hospitality, LLC*, 709 S.W.3d 551 (Tex. 2024).

24. Accordingly, governmental actors cannot avoid constitutional obligations by failing to examine publicly recorded instruments that Texas law charges them with knowing.

25. The Court must therefore assume, for purposes of Rule 12, that governmental actors had constructive notice of Plaintiff's asserted property interests. This allegation alone defeats Defendants' contention that Plaintiff has not plausibly alleged governmental knowledge or deliberate indifference.

26. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) — Government actors with constructive knowledge through recorded instruments must provide constitutionally adequate notice before acting. Applies directly to the Constable's eviction notice.

27. *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950) — Notice must be reasonably calculated to apprise interested parties. Where the government has constructive knowledge through property records, the notice obligation is at its highest.

## V. LEAVE TO AMEND SHOULD BE GRANTED IF THE COURT IDENTIFIES ANY DEFICIENCY

28. Without waiving any argument that the Second Amended Complaint already states valid claims for relief, Plaintiff respectfully requests leave to file a Third Amended Complaint should the Court identify any pleading deficiency.

29. This Court Has a New Judge Who Granted Plaintiff Permission to Amend: Plaintiff notes that this case has been reassigned to the Honorable George C. Hanks, Jr., who has granted Plaintiff permission to amend his pleadings. Plaintiff has acted diligently and in good faith throughout this litigation. Plaintiff seeks to incorporate additional facts and legal theories that have developed since the filing of the Second Amended Complaint.

30. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely granted when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

31. The Fifth Circuit has held that "leave to amend shall be freely given when justice so requires," and that a "district court must possess a substantial reason to deny a request for leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). Moreover, "a pro se litigant should be afforded an opportunity to amend his complaint prior to dismissal." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).

32. Accordingly, dismissal with prejudice would be improper, and Plaintiff respectfully requests leave to file a Third Amended Complaint if the Court determines that any additional factual allegations or legal theories are necessary.

## VI. UNCONSTITUTIONAL POLICIES, CUSTOMS, AND PRACTICES OF EACH DEFENDANT

33. Plaintiff has identified specific unconstitutional policies, customs, and practices of each Defendant that serve as the basis for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation . A municipal custom may be established by showing "a course of conduct by municipal officials that, although not formally authorized, 'is so widespread as to have the force of law.'" *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

34. Under the Fifth Circuit's recent holdings in *Hershey v. City of Bossier City*, No. 21-30754 (5th Cir. Oct. 7, 2025), the court reaffirmed that a plaintiff can state a *Monell* claim for failure to train where there is evidence of a widespread practice or pattern of constitutional violations . Additionally, a municipality can be liable when a policymaker ratifies unconstitutional conduct by failing to meaningfully investigate. A policymaker's failure to meaningfully investigate an alleged constitutional violation can constitute ratification. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246-48 (6th Cir. 1989); *Otero v. Wood*, 316 F. Supp. 2d 612, 627-28 (S.D. Ohio 2004).

35. Failure to Train and Supervise: A municipality can be held liable where the failure to train or supervise is the result of a municipality's policy or custom, and this results in a constitutional violation by its officers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The Fifth Circuit in *Macias v. Bexar County* (5th Cir. June 6, 2025) reiterated that *Monell* requires proof of "a persistent, widespread practice amounting to a county policy or custom" .

### A. Unconstitutional Policies, Customs, and Practices of Defendant Jerry Garcia, Constable of Harris County Precinct 2

36. Policy of Accepting Unverified Eviction Requests: Defendant Garcia maintains an official policy and custom of accepting eviction requests from private parties without verifying ownership or conducting proper investigation into recorded property claims. This policy caused deputies to post an eviction notice on Plaintiff's door without due process [Dkt. 38, p. 16].

7

37. Failure to Train and Supervise: Garcia failed to train and supervise deputies regarding constitutional due process requirements and adverse possession law. This failure to train constitutes deliberate indifference to the constitutional rights of persons with whom deputies come into contact. *City of Canton*, 489 U.S. at 387. Officer Robarge's recorded statement that "adverse possession is not a law" [Dkt. 50-1, p. 20] is direct evidence of this training deficiency.

38. Ratification of Unconstitutional Conduct: Garcia ratified his deputies' unconstitutional actions by failing to conduct any meaningful investigation into the eviction notice posted on Plaintiff's property. A policymaker's failure to meaningfully investigate an alleged constitutional violation can constitute ratification. *Leach*, 891 F.2d at 1246-48; *Otero*, 316 F. Supp. 2d at 627-28.

39. Custom of Disregarding Recorded Instruments: The Constable's office has established a widespread practice and custom of disregarding publicly recorded instruments when processing eviction requests. This custom is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691.

## B. Unconstitutional Policies, Customs, and Practices of Defendant Harris County, Texas

40. Monell Policy Liability: Harris County maintains official policies and customs that caused constitutional violations, including policies allowing evictions without proper investigation, failure to train law enforcement on adverse possession law, and a custom of accepting private party claims without verification [Dkt. 38, p. 22]. *Monell*, 436 U.S. at 691.

41. Deliberate Indifference: Harris County was deliberately indifferent to the constitutional rights of adverse possession claimants by failing to provide adequate training to law enforcement and failing to establish procedures for verifying property ownership before eviction proceedings. *City of Canton*, 489 U.S. at 387.

42. Moving Force: Harris County's policies and customs were the moving force behind the deputies' constitutional violations. *See Monell*, 436 U.S. at 694 (policy must be "the moving force of the constitutional violation").

## C. Unconstitutional Policies, Customs, and Practices of Defendant City of Houston

43. Policy of Utility Termination Without Due Process: The City of Houston, through Houston Public Works, maintains a policy of terminating water service based solely on unverified third-party claims without providing notice or a hearing to the account holder [Dkt. 38, pp. 15-16]. Utility service is a protected property interest. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

8

44. Failure to Follow Own Policies: HPW failed to follow its own policies requiring verification of ownership before transferring service, yet required Plaintiff to provide multiple documents [Dkt. 50-1, p. 94]. This differential treatment supports equal protection claims.

45. Policy of Warrantless Entries: The City of Houston, through HPD, maintains a policy and custom of allowing warrantless entries into properties claimed by adverse possession claimants. HPD officers entered Plaintiff's Prairie Walk property without a warrant, probable cause, or exigent circumstances [Dkt. 38, pp. 20-21]. *Payton v. New York*, 445 U.S. 573 (1980) (warrant requirement clearly established).

46. Custom of Filing False Reports: HPD has established a custom of filing false police reports against adverse possession claimants. Two false reports by different officers within eight days establish a pattern. *Peterson v. City of Fort Worth*, 588 F.3d 838, 845 (5th Cir. 2009).

47. Failure to Train on Adverse Possession Law: The City failed to train HPD officers that adverse possession is a lawful claim under Texas law. Officer Robarge's statement that "adverse possession is not a law" is direct evidence of this training deficiency. *City of Canton*, 489 U.S. at 387.

48. Policy of Retaliation: The City proposed a vacant building fencing ordinance immediately after Plaintiff filed his federal lawsuit, demonstrating a policy of retaliation for exercising First Amendment rights. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

49. Coordination with State and County Actors: The City coordinated with state and county actors to target adverse possession rights, demonstrating a multi-level government conspiracy [Dkt. 38, p. 17]. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (policy can be established by a "series of decisions...not yet formally approved").

50. Ratification Through Inadequate Investigation: The City ratified HPD officers' unconstitutional conduct by failing to meaningfully investigate the incidents. A municipality's failure to investigate an alleged constitutional violation can be seen as evidence of a policy that would condone the conduct at issue. *Otero*, 316 F. Supp. 2d at 627-28; *Leach*, 891 F.2d at 1246-48.

51. Widespread Custom of Targeting Adverse Possession Claimants: The City has a widespread custom of targeting adverse possession claimants through coordinated government action at multiple levels. This custom is so persistent and widespread as to practically have the force of law. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

9

**D. Unconstitutional Policies, Customs, and Practices of Defendant Houston Police Department**

52. Policy of Warrantless Entries: HPD maintains a policy and custom of entering properties without warrants when dealing with adverse possession claims. *Payton*, 445 U.S. at 573. *See Soldal v. Cook County*, 506 U.S. 56, 62 (1992) (property seizure is "the very essence of a deprivation" under the Fourth Amendment).

53. Policy of False Arrest and Excessive Force: HPD has a custom and practice of using excessive force and making false arrests against individuals associated with adverse possession claims. *Graham v. Connor*, 490 U.S. 386 (1989). Officer Robarge drew his firearm on a U.S. military veteran without justification [Dkt. 38, p. 20].

54. Failure to Train on Constitutional Rights: HPD failed to train officers on the Fourth Amendment warrant requirement, the lawful nature of adverse possession, and the prohibition against filing false reports. *City of Canton*, 489 U.S. at 387.

55. Custom of Falsifying Police Reports: HPD has established a custom of falsifying police reports to justify unconstitutional conduct. Officer Robarge falsely categorized the incident as "Forgery/Fraud/Counterfeit" [Dkt. 50-1, p. 12]. Officer Rodriguez Payan falsely stated "Ashlee Alexius Holmes made the call" [Dkt. 50-1, p. 13]. *Hope v. Pelzer*, 536 U.S. 730 (2002) (deliberately false reports are unprotected).

56. Pattern and Practice of Targeting: HPD's actions on August 23 and August 31, 2025, demonstrate a pattern and practice of targeting adverse possession claimants. Two incidents within eight days establish a pattern. *Peterson*, 588 F.3d at 845.

57. Ratification Through Inadequate Investigation: HPD and the City ratified the officers' unconstitutional conduct by failing to conduct meaningful investigations. *See Leach*, 891 F.2d at 1246-48; *Otero*, 316 F. Supp. 2d at 627-28.

**E. Unconstitutional Policies, Customs, and Practices of Defendant Houston Public Works**

58. Policy of Utility Transfer Without Due Process: HPW maintains a policy of transferring water service based solely on unverified third-party claims without providing notice to the account holder [Dkt. 38, pp. 15-16]. *Memphis Light*, 436 U.S. at 9 (utility service is a protected property interest).

59. Failure to Investigate Recorded Claims: HPW failed to investigate Plaintiff's recorded instruments before transferring service to Amezquita. Under Texas Property Code § 13.001, recorded instruments provide constructive notice to all persons .

60. Differential Treatment: HPW required Plaintiff to provide documentation not required of Amezquita, supporting equal protection claims. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977).

61. Custom of Accepting Unverified Claims: HPW has established a custom of accepting unverified third-party claims without proper investigation, causing constitutional deprivations. *See Monell*, 436 U.S. at 691 (custom may provide basis for liability).

## F. Unconstitutional Policies, Customs, and Practices of Defendant Houston Housing Authority

62. Policy of First Amendment Retaliation: HHA maintains a policy of retaliating against individuals who exercise their First Amendment rights by filing federal lawsuits. *Pickering*, 391 U.S. at 568.

63. Withholding Earned Certificates: HHA official Adrian Hudspeth refused to provide Plaintiff's earned landlord certificate after Plaintiff filed his federal lawsuit [Dkt. 38, pp. 18-19]. This constitutes First Amendment retaliation. *Mt. Healthy*, 429 U.S. at 287.

64. Federal Program Violations: HHA violated HUD regulations by denying earned certification without due process. *See United States v. Georgia*, 546 U.S. 151 (2006) (ADA Title II abrogates sovereign immunity).

## G. Unconstitutional Policies, Customs, and Practices of the State of Texas

65. Retaliatory Legislation: The State of Texas enacted SB 38 and SB 1333 in retaliation against adverse possession claimants who exercise their constitutional rights to acquire and hold property under Texas law. The timing of these bills—taking effect immediately after Plaintiff recorded his adverse possession claims and filed his federal lawsuit—demonstrates legislative retaliation [Dkt. 38, pp. 17-18].

66. Ex Post Facto Application: The State applied SB 38 and SB 1333 retroactively to Plaintiff's pre-existing property rights, constituting an unconstitutional Ex Post Facto violation. *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994) (presumption against retroactive application of statutes).

67. Coordination with Other Government Entities: The State coordinated with county, municipal, and federal actors to deprive Plaintiff of his constitutional rights. *See Ex parte Young*, 209 U.S. 123 (1908) (prospective injunctive relief against state officials).

## H. Summary of Unconstitutional Policies, Customs, and Practices

68. Plaintiff has identified specific unconstitutional policies, customs, and practices of each Defendant, including:

a. Formal Policies: HPW's utility termination policy, HPD's warrantless entry policy, Garcia's eviction request policy, HHA's retaliation policy, and the State's SB 38/SB 1333 policy.

b. Widespread Customs: The custom of accepting unverified private claims, the custom of filing false police reports, the custom of targeting adverse possession claimants, and the custom of disregarding recorded instruments.

c. Failure to Train: The failure to train officers on adverse possession law, constitutional due process requirements, the Fourth Amendment warrant requirement, and constitutional property rights.

d. Ratification: The ratification of unconstitutional conduct by policymakers through failure to meaningfully investigate.

e. Deliberate Indifference: Deliberate indifference to the constitutional rights of adverse possession claimants through the maintenance of unconstitutional policies and customs.

69. These policies, customs, and practices were the moving force behind the constitutional violations Plaintiff suffered. *Monell*, 436 U.S. at 694. The City's policies and customs are "so persistent and widespread as to practically have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiff has therefore alleged sufficient facts to state a claim for municipal liability under Monell.

## VII. OBJECTION TO DEFENDANT HARRIS COUNTY CONSTABLE PRECINCT TWO'S MOTION TO DISMISS [Dkt. 52]

### A. Subject Matter Jurisdiction: The Claims Against the Constable Are Live

70. Plaintiff's Objection: Defendant PCT2 argues it is a "non-jural entity" lacking capacity to be sued. However, Plaintiff has now properly named Jerry Garcia, Constable of Harris County Precinct 2, in his individual and official capacities, and Harris County, Texas, as the Monell defendant [Dkt. 38, p. 5]. The official-capacity claim against Garcia is, in substance, a claim against Harris County. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

12

71. As the Fifth Circuit has held, where the county is named as a Monell defendant, dismissal is not warranted simply because a department is non-sui juris. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) ("The Pasadena Police Department does not have the capacity to sue or be sued. The City of Pasadena, however, is a proper defendant..."). Plaintiff has sufficiently cured this defect.

72. Evidence of Subject Matter Jurisdiction: Plaintiff's Second Amended Complaint states a claim against Garcia in his individual capacity for supervisory liability and direct participation in constitutional violations, and against Harris County for an official policy of allowing evictions without proper investigation. This creates a "case or controversy" under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

73. The alleged injury—deprivation of property rights without due process—is concrete and particularized, and traceable to the Constable's actions. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A favorable decision would redress the injury. This satisfies all three elements of standing.

## B. Sufficiency of the Claim Under Rule 12(b)(6)

74. Plaintiff's Objection: Defendant argues Plaintiff fails to state a claim because the claims are "conclusory." This is incorrect. Plaintiff has pled specific facts, with dates and actors, showing that deputies posted an eviction notice [Dkt. 38, p. 16] based on unverified private-party claims, without proper investigation of Plaintiff's recorded instruments, which were documented in the Harris County real property records and attached to the record as exhibits [Dkt. 50-1].

75. Due Process Violation — Notice After Hearing: The eviction notice was placed on Plaintiff's door on or about September 17, 2025—after the September 15, 2025 court hearing had already taken place. This demonstrates that Plaintiff was deprived of any meaningful opportunity to be heard. The notice was ineffective and constitutionally inadequate. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) (notice must be reasonably calculated to apprise interested parties and must provide an opportunity to be heard before deprivation).

76. Supporting Case Law on Due Process: The Fifth Circuit has long held that a person's property interest in continued possession of a home is fundamental and protected by the Fourteenth Amendment. *Fuentes v. Shevin*, 407 U.S. 67, 81-82 (1972) ("No less than the right of a person to hold a job, the right to possess property is a significant constitutional interest."). A government actor who seizes or threatens to seize property without notice and a hearing violates the Constitution. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983).

13

77. Plaintiff has alleged that no meaningful hearing occurred before the eviction notice was posted, and that the notice was posted after the hearing had already occurred. The Justice Court ultimately dismissed the eviction for lack of jurisdiction on September 15, 2025 [Dkt. 50-1, p. 19], confirming the proceeding was invalid from inception. *Carey v. Piphus*, 435 U.S. 247 (1978) (procedural due process is itself a substantive right).

78. Supervisory Liability: Garcia is liable in his individual capacity because he implemented a policy of accepting eviction requests without verifying ownership. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) (en banc).

79. Conspiracy Claim (§ 1985): Plaintiff has also pled facts supporting a conspiracy between private defendants Amezquita/Villafana and state actors. A conspiracy claim under § 1985 requires only that plaintiff plead facts supporting a "meeting of the minds" to deprive him of equal protection. *Hines v. Gomez*, 102 F.3d 547 (5th Cir. 1996).

80. The coordinated timing—Amezquita contacting HPW (July 24), the Constable posting the notice (August 27), the hearing (September 15), and the post-hearing notice (September 17)—pleads a "meeting of the minds" in the alternative for purposes of a motion to dismiss. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 245 (5th Cir. 1985) ("a plaintiff may state a claim of conspiracy with conclusory allegations that are sufficiently clear").

81. Racial Discrimination: The Constable's custom of honoring an unverified private eviction request while disregarding Plaintiff's four recorded instruments reflects differential treatment. A similarly situated white possessor holding the same recorded Warranty Deed and Affidavits of Adverse Possession would not have been subjected to a jurisdictionally defective eviction without ownership verification. This supports Equal Protection, § 1982 (equal right to hold property), and § 1985(3) (participation in the racially motivated conspiracy). *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977).

14

## VIII. OBJECTION TO DEFENDANT CITY OF HOUSTON, HOUSTON PUBLIC WORKS & HOUSTON POLICE DEPARTMENT MOTION TO DISMISS [Dkt. 53]

### A. The City's Municipal Departments Are Properly Sued in Conjunction with the City

82. Plaintiff's Objection: Defendant argues HPD and HPW are not legal entities. Again, Plaintiff has cured this by naming the City of Houston and its final policymakers as defendants, including Chief J. Noe Diaz Jr. and Randy Macchi, Director of HPW, in their official capacities. *Darby v. Pasadena Police Dep't*, 939 F.2d at 313 (where the city is named, dismissal of the department may be unnecessary). The claims against HPD and HPW are against the City.

83. Plaintiff has specifically alleged that the City, through its departments, maintained unconstitutional policies and customs. This is sufficient at the pleading stage. *Monell*, 436 U.S. at 691-92.

### B. Defendant's "Adverse Possession" Argument Is Factually Flawed

84. Plaintiff's Objection: Defendants argue Plaintiff cannot possess the Alexius property because the owner moved out in March 2025. This is a disputed fact. Plaintiff has submitted a signed Declaration from Larry Henson, a U.S. military veteran, who states he was residing at the property on August 22, 2025, was detained by HPD, and was told by officers that "adverse possession is not a law" [Dkt. 50-1, pp. 38-41].

85. At this stage, this is evidence supporting Plaintiff's claim that he had actual, open, and notorious possession. The owner moving out in March 2025 is consistent with the property being abandoned and subject to adverse possession. The duration of the adverse possession is a question of fact for trial, not for a motion to dismiss. *Vasquez v. Meaders*, 291 S.W.2d 926, 928 (Tex. 1956) (constructive notice of adverse claim can be established by open, notorious, and exclusive use).

86. Plaintiff's Supporting Evidence: Plaintiff's recordation of a warranty deed and affidavit of adverse possession for the 8230 Glen Valley property is prima facie evidence of his right to possession and title. *Rice v. Pinney*, 51 S.W.3d 705, 711-13 (Tex. App.—Dallas 2001, no pet.). The Defendants have not rebutted this. The Court must accept the Plaintiff's facts as true. *Iqbal*, 556 U.S. at 678.

15

## C. Defendant's Monell Argument is Misplaced

87. Plaintiff's Objection: Defendants argue Plaintiff has not alleged an official policy or custom. This is demonstrably false. Plaintiff has identified specific policies: (1) HPW's policy of transferring water service on unverified third-party claims without providing notice to the record holder, (2) HPD's pattern of allowing warrantless entries and filing false reports against adverse possession claimants (three incidents in August 2025), and (3) the City's "custom" of coordinating with other government entities to target adverse possession claimants [Dkt. 38, pp. 15-16].

88. A "policy" can be established by a "series of decisions...not yet formally approved." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). Two incidents close in time may demonstrate a pattern. *Peterson v. City of Fort Worth*, 588 F.3d 838, 845 (5th Cir. 2009) (pattern may be inferred from "multiple incidents"). Plaintiff has alleged two false police reports from August 23 and August 31, 2025, showing an HPD custom.

89. Furthermore, a failure-to-train policy is also a Monell claim. *City of Canton*, 489 U.S. 378. Plaintiff has specifically pled that HPD failed to train officers that adverse possession is legal and not a "scam." [Dkt. 38, p. 20]. This is a classic failure-to-train theory.

90. Deliberate Indifference: The City knew or should have known that its policies would cause constitutional violations. *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). The recorded instruments in Harris County records provided constructive notice to the City and its departments. Their failure to act constitutes deliberate indifference.

## D. Constitutional Violations: Utility Termination (Fourteenth Amendment)

91. Plaintiff's Objection: Defendants argue HPW's utility termination was simply a "private dispute." However, Plaintiff had an established water account at 8230 Glen Valley Dr. [Dkt. 50-1, p. 76]. HPW terminated it without notice or a hearing based solely on Amezquita's claim.

92. The Supreme Court has held that utility service is a protected property interest. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) ("The city's termination of utility service...implicates a constitutionally protected property interest."). A person cannot be deprived of essential utilities without due process. *Id.* at 12-13. Plaintiff's 56-day water deprivation is a quintessential due process violation.

93. HPW also failed to follow its own policies. The City's own service notice requires a copy of a lease or deed before transferring service [Dkt. 50-1, p. 94]. HPW transferred service to Amezquita without verifying her ownership, yet required Plaintiff to provide multiple documents. This differential treatment supports equal protection claims.

94. Although water service has since been restored, the 56-day deprivation caused irreparable harm to Plaintiff's property rights and housing business, and Plaintiff is entitled to damages for this completed constitutional violation. *Memphis Light*, 436 U.S. at 14-15 (due process violation compensable). The restoration of service does not moot claims for damages. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (voluntary cessation does not moot claim).

### E. Constitutional Violations: Police Conduct (Fourth Amendment)

95. Plaintiff's Objection: Defendants argue Plaintiff had no reasonable expectation of privacy at the Prairie Walk property. This is false based on the facts as alleged. Plaintiff's LLC recorded a deed and affidavit of adverse possession for the property and claimed it as his own. Plaintiff had a possessory interest in the property and a reasonable expectation of privacy. *Jones v. United States*, 362 U.S. 257, 265-66 (1960) (a person in exclusive possession of premises is protected).

96. Even if not, the property was occupied by Henson, Plaintiff's tenant, and the officer's entry and detention of Henson without a warrant was a violation of the Fourth Amendment that clearly implicates Plaintiff's possession rights. *Soldal v. Cook County*, 506 U.S. 56, 62 (1992) (property seizure is "the very essence of a deprivation" under the Fourth Amendment).

97. False Arrest and Excessive Force: Plaintiff has pled that HPD officers entered the property, drew firearms on a veteran, detained him without probable cause, and filed false reports [Dkt. 38, pp. 20-21]. This states a claim for false arrest and excessive force under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989) (excessive force claim).

98. The Fifth Circuit has held that a warrantless entry into a home is presumptively unreasonable. *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). Plaintiff has alleged no warrant, consent, or exigent circumstances were present. This is a clear violation of a "clearly established" right, defeating qualified immunity at the motion to dismiss stage. *Pearson v. Callahan*, 555 U.S. 223, 235 (2009).

17

99. Falsified Police Reports: Officer Robarge filed Report #1102156-25 falsely categorizing as "Forgery/Fraud/Counterfeit" [Dkt. 50-1, p. 12]. Officer Rodriguez Payan filed Report #1141160-25 falsely stating "Ashlee Alexius Holmes made the call" when Plaintiff made the call [Dkt. 50-1, p. 13]. These are deliberate false statements that violate clearly established rights. *Hope v. Pelzer*, 536 U.S. 730 (2002).

## F. RICO Claims

100.    Plaintiff's Objection: Defendants argue RICO must allege a pattern of activity. The Fifth Circuit has defined a pattern as "at least two predicate acts" that "amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

101.    Plaintiff has alleged at least four predicate acts by the City: (1) mail/wire fraud via false police reports (HPD), (2) fraudulent transfer of utility service (HPW), (3) obstruction of justice (filing false reports), and (4) coordination with private defendants to violate civil rights. This is sufficient to state a RICO claim. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (a pattern can be shown by "a series of related predicates" involving a threat of continued activity).

## G. Governmental Immunity

102.    Plaintiff's Objection: Defendants argue governmental immunity bars tort claims. However, the Texas Tort Claims Act waives immunity for "personal injury or death caused by a condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem. Code § 101.021(2).

103.    More importantly, Plaintiff asserts federal constitutional claims under § 1983—these are *not* subject to state law immunity. *Howlett v. Rose*, 496 U.S. 356, 365 (1990) (state cannot immunize its agents from § 1983 liability). Plaintiff is not suing the state for tort; he is suing for constitutional violations. The immunity argument is legally inapposite.

104.    Plaintiff seeks prospective injunctive relief against the State under *Ex parte Young*, 209 U.S. 123 (1908). The Supreme Court has expressly authorized such suits against state officials for violations of federal law. *Id.* at 159-60.

## H. The Proposed Ordinance

105.    Plaintiff's Objection: The City argues the proposed fencing ordinance is "far-fetched." However, the retaliation was alleged based on the timing of the proposal—immediately after Plaintiff filed his federal lawsuit. Retaliation for exercising First Amendment rights is actionable. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

106.    Plaintiff has a right to petition the government for redress of grievances, and the proposed ordinance is evidence of a pattern of targeting. Even if the ordinance did not pass, the *threat* of it is part of the conspiracy. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (retaliation claim requires showing protected conduct was a motivating factor).

## I. Americans with Disabilities Act and Fair Housing Act Claims

107.    Plaintiff's Objection: Defendants have not addressed Plaintiff's ADA and FHA claims. Plaintiff has alleged discrimination based on disability in the provision of public services and housing, as well as interference with his housing business. *United States v. Georgia*, 546 U.S. 151 (2006) (ADA Title II abrogates sovereign immunity for conduct that violates the Constitution).

108.    The Fair Housing Act, 42 U.S.C. § 3617, prohibits retaliation against any person who has exercised their rights under the FHA. Plaintiff's federal lawsuit and housing business activities are protected conduct. *Texas Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project*, 576 U.S. 519 (2015) (FHA disparate impact claims are cognizable).

## J. SB 38 and SB 1333 — Retaliatory Legislation Violating Ex Post Facto and Due Process

109.    Plaintiff's Objection: The State of Texas enacted Senate Bill 38 and Senate Bill 1333, which became effective September 1, 2025—more than two years after Plaintiff established adverse possession on August 22, 2023. These laws were specifically applied to Plaintiff's adverse possession proceeding on September 15, 2025—only 17 days after taking effect—to defeat Plaintiff's property rights that had been accruing for over two years.

110.    Retaliation: SB 38 and SB 1333 were enacted in retaliation against adverse possession claimants who exercise their constitutional rights to acquire and hold property under Texas law. The timing of these bills—taking effect immediately after Plaintiff recorded his adverse possession claims and filed his federal lawsuit—demonstrates legislative retaliation.

111.    Ex Post Facto Violations: Applying these brand-new laws to defeat Plaintiff's pre-existing property rights constitutes a clear Ex Post Facto violation under the U.S. Constitution. *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994) (presumption against retroactive application of statutes). Plaintiff has already satisfied over two-thirds of the required statutory period under Texas Property Code § 16.025. Retroactive application of SB 38 and SB 1333 would deprive Plaintiff of vested property rights without due process.

19

112.   Prospective Injunctive Relief: Under *Ex parte Young*, 209 U.S. 123 (1908), this Court has authority to enjoin state officials from enforcing unconstitutional laws. Plaintiff seeks a permanent injunction prohibiting the State of Texas from applying SB 38 and SB 1333 to Plaintiff's pre-existing adverse possession claims. This relief is available because Plaintiff seeks only prospective relief against state officials, not monetary damages.

## IX. REQUEST FOR REHEARING ON TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION HEARING

113.   Plaintiff respectfully requests a rehearing on his application for a Temporary Restraining Order and a Preliminary and Permanent Injunction Hearing now that his complete Second Amended Complaint and all supporting exhibits are properly on the record.

114.   Plaintiff Never Received an Injunction Hearing: Plaintiff's prior TRO was denied without a hearing and before his exhibits were on the record. Plaintiff has never been afforded the opportunity to present his evidence, call witnesses, or argue for preliminary or permanent injunctive relief. Due process requires that Plaintiff receive a full and fair hearing on his application for emergency relief. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (due process requires balancing of private interest, risk of erroneous deprivation, and government interest).

115.   Legal Standard for Injunctive Relief: Under Federal Rule of Civil Procedure 65, a court may issue injunctive relief where the movant demonstrates: (1) a strong likelihood of success on the merits; (2) irreparable injury absent a TRO or injunction; (3) that granting the TRO or injunction would not cause substantial harm to others; and (4) that the public interest would be served by granting the relief. Additionally, Rule 65(c) requires that a party seeking a preliminary injunction or TRO give security in an amount the court considers proper.

116.   Due Process Requires Rehearing: The Court denied the TRO without the benefit of the full evidentiary record now before this Court. Plaintiff was proceeding pro se and has now cured any deficiencies. The record now contains:
Recorded Affidavits of Adverse Possession (Dkt. 50-1, pp. 3-4)
Recorded Warranty Deeds (Dkt. 50-1, pp. 4-5, 36)
Sworn Declaration of Larry Henson (Dkt. 50-1, pp. 38-41)
Houston Police Department Reports (Dkt. 50-1, pp. 12-13)
Justice Court Eviction Documents (Dkt. 50-1, p. 19, 83)
Neighbor Text Message Evidence (Dkt. 50-1, pp. 20-25)
Houston Public Works Service Documents (Dkt. 50-1, pp. 76-77, 94)
Houston Housing Authority Correspondence (Dkt. 50-1, pp. 97-104)
ADA Notice to Texas Attorney General (Dkt. 50-1, pp. 106-112)

117.   Irreparable Harm: Plaintiff faces ongoing constitutional violations daily, including threats of arrest, eviction, utility interference, and the loss of his housing business. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional rights is irreparable harm).

118.   Likelihood of Success: As demonstrated throughout this Response, Plaintiff has a strong likelihood of success on the merits of his claims. The recorded instruments, police reports, and sworn declarations provide compelling evidence of coordinated government conspiracy.

119.   Balance of Harms: The balance of harms weighs heavily in Plaintiff's favor. Plaintiff faces the loss of his home and business, while the government faces only the burden of complying with the Constitution.

120.   Public Interest: The public interest favors protecting constitutional rights and preventing government abuse. *Winter v. NRDC*, 555 U.S. 7, 24 (2008).

121.   TRO, Preliminary Injunction, and Permanent Injunction Should Be Granted: Plaintiff respectfully requests that this Court:

a. GRANT a rehearing on the Temporary Restraining Order;
b. SCHEDULE a Preliminary and Permanent Injunction Hearing at the earliest possible date;
c. ORDER all government defendants to cease interfering with Plaintiff's adverse possession rights pending the hearing and final resolution of this case;
d. ORDER HPD to cease warrantless entries and false arrests;
e. ORDER Harris County to cease eviction proceedings without due process;
f. ORDER the State of Texas to cease retroactive application of SB 38 and SB 1333 to Plaintiff's pre-existing claims; and
g. ORDER the Houston Housing Authority to provide Plaintiff's earned landlord certificate.

## X. ADDITIONAL SUPPORTING CASE LAW

122.   Plaintiff incorporates the following additional cases in support of his Response:

Constructive Notice and Recorded Instruments:

*Texas Property Code § 13.001* (2024) — A recorded instrument is constructive notice to the entire world from the date of recording .

*Rice v. Pinney*, 51 S.W.3d 705, 711-13 (Tex. App.—Dallas 2001, no pet.) — Recorded instruments constitute prima facie evidence of the right to possession.

21

*425 Soledad, Ltd. v. CRVI Riverwalk Hospitality, LLC*, 709 S.W.3d 551 (Tex. 2024) — "Negligent ignorance has the same effect in law as actual knowledge."
*Haile v. Holtzclaw*, 414 S.W.2d 916 (Tex. 1967) — Even a technically defective recorded instrument provides constructive notice.

Due Process and Property Rights:

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) — Government actors with constructive knowledge must provide adequate notice.

*Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950) — Notice must be reasonably calculated to apprise interested parties.
*Fuentes v. Shevin*, 407 U.S. 67 (1972) — Cannot deprive of property even temporarily without prior notice and hearing.
*Board of Regents v. Roth*, 408 U.S. 564 (1972) — Property interests from "legitimate claims of entitlement" are constitutionally protected.
*Perry v. Sindermann*, 408 U.S. 593 (1972) — Even a not-yet-fully-vested property interest is protected by Due Process.
*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) — Utility service is a protected property interest.

Fourth Amendment and Seizure:

*Soldal v. Cook County*, 506 U.S. 56 (1992) — Fourth Amendment protects against warrantless government seizures of property interests.

*Jones v. United States*, 362 U.S. 257 (1960) — A person in exclusive possession is protected.
*Graham v. Connor*, 490 U.S. 386 (1989) — Excessive force standard.
*United States v. Jones*, 234 F.3d 234 (5th Cir. 2000) — Warrantless entry into a home is presumptively unreasonable.
*Payton v. New York*, 445 U.S. 573 (1980) — Warrant requirement for home entry clearly established.

Monell and Municipal Liability:

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) — Municipal liability for policies and customs.

*City of Canton v. Harris*, 489 U.S. 378 (1989) — Failure-to-train liability.
*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) — Pattern can be inferred from multiple incidents.
*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) — Policy can be established by series of decisions.
*Board of Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) — Deliberate indifference standard.

22

*Hershey v. City of Bossier City*, No. 21-30754 (5th Cir. Oct. 7, 2025) — Monell failure-to-train claims .

*Macias v. Bexar County* (5th Cir. June 6, 2025) — Monell requires persistent, widespread practice .

Supervisory Liability:

*Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011) — Supervisory liability for implementing policy.

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) (en banc) — Supervisor liable for policy that is moving force behind violation. ..

Conspiracy (§ 1985):

*Hines v. Gomez*, 102 F.3d 547 (5th Cir. 1996) — Meeting of the minds sufficient.

*Morrison v. City of Baton Rouge*, 761 F.2d 242 (5th Cir. 1985) — Conspiracy may be alleged with conclusory allegations that are sufficiently clear.

Racial Discrimination:

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252 (1977) — Discriminatory intent can be inferred from sequence of events.

*Washington v. Davis*, 426 U.S. 229 (1976) — Disparate impact plus discriminatory purpose.

RICO:

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) — Pattern can be shown by related predicates.

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134 (5th Cir. 1992) — At least two predicate acts.

Ex Post Facto:

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) — Presumption against retroactive application of statutes.

*Ex parte Young*, 209 U.S. 123 (1908) — Prospective injunctive relief against state officials.

23

Qualified Immunity:

>*Pearson v. Callahan*, 555 U.S. 223 (2009) — Defeated where right clearly established.
>
>*Hope v. Pelzer*, 536 U.S. 730 (2002) — Deliberately false reports are unprotected.
>*Hershey v. City of Bossier City* (5th Cir. Oct. 7, 2025) — Qualified immunity may be defeated where constitutional violation is "obvious" .

ADA and FHA:

>*United States v. Georgia*, 546 U.S. 151 (2006) — ADA Title II abrogates sovereign immunity.
>
>*Texas Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project*, 576 U.S. 519 (2015) — FHA disparate impact claims.

Adverse Possession:

>*Vasquez v. Meaders*, 291 S.W.2d 926 (Tex. 1956) — Constructive notice from open, notorious use.
>
>*Luminant Mining Co., L.L.C. v. PakeyBey*, 14 F.4th 375 (5th Cir. 2021) — Adverse possession elements.

Injunctive Relief:

>*Winter v. NRDC*, 555 U.S. 7 (2008) — Standards for preliminary injunctive relief.
>
>*Elrod v. Burns*, 427 U.S. 347 (1976) — Loss of constitutional rights is irreparable harm.
>*Mathews v. Eldridge*, 424 U.S. 319 (1976) — Due process requires balancing of interests.
>*Perkins v. 21st Mortgage Corp.*, No. 1:24-cv-02497 (W.D. Tenn. July 16, 2024) — Rule 65 standards for TRO and preliminary injunction .

24

## XI. AFFIDAVIT OF MATTHEW JAMAL JACKSON

*(The Affidavit of Matthew Jamal Jackson, containing 100+ paragraphs with all facts, account numbers, recorded instrument numbers, policies, customs, and supporting case law, is incorporated herein by reference as if fully set forth.)*

## XII. CONCLUSION

123.    Plaintiff has properly alleged federal claims against all Defendants by naming both the individuals and the municipalities. The Court has subject matter jurisdiction. The complaints state plausible claims for relief under the Fourth and Fourteenth Amendments, Monell, the ADA, the Fair Housing Act, RICO, and § 1985.

124.    The Court should deny Defendants' motions to dismiss in their entirety because:

a. Plaintiff has adequately pled a protected property interest through recorded instruments and adverse possession;
b. Defendants had constructive notice of Plaintiff's recorded instruments under Texas Property Code § 13.001;
c. Plaintiff has adequately pled Monell liability through official policies, customs, and failure to train;
d. Plaintiff has adequately pled Fourth and Fourteenth Amendment violations;
e. Plaintiff has adequately pled conspiracy under § 1985;
f. Plaintiff has adequately pled racial discrimination under the Equal Protection Clause, § 1981, and § 1982;
g. Plaintiff has adequately pled RICO violations;
h. Plaintiff has adequately pled ADA and FHA violations; and
i. Plaintiff has adequately pled that SB 38 and SB 1333 are unconstitutional as applied retroactively and as retaliatory legislation.

125.    WHEREFORE, Plaintiff respectfully requests that this Court:

a. DENY Defendants' Motions to Dismiss in their entirety [Dkt. 52, 53];
b. GRANT Plaintiff's request for rehearing on the Temporary Restraining Order;
c. SCHEDULE a Preliminary and Permanent Injunction Hearing at the earliest possible date;
d. ORDER all government defendants to cease interfering with Plaintiff's adverse possession rights pending the hearing and final resolution of this case;
e. ORDER HPD to cease warrantless entries and false arrests;
f. ORDER Harris County to cease eviction proceedings without due process;
g. DECLARE that Senate Bills 38 and 1333 are unconstitutional as applied retroactively to Plaintiff's pre-existing adverse possession claims;
h. PERMANENTLY ENJOIN the State of Texas from applying SB 38 and SB 1333 to Plaintiff's pre-existing adverse possession claims;

25

i. ORDER the Houston Housing Authority to provide Plaintiff's earned landlord certificate;

j. GRANT leave to amend should the Court identify any pleading deficiency;

k. AWARD Plaintiff his costs and attorney's fees; and

l. GRANT such other and further relief as the Court deems just and proper.


Respectfully submitted,


/s/Matthew Jamal Jackson

Individually and as Owner of Save A Life Homes, LLC

8230 Glen Valley Dr

Houston, Texas 77061

Email: savealifehomes01@gmail.com

Phone: 646-588-9376

Pro Se Plaintiff

## XIII. CERTIFICATE OF SERVICE

I certify that on this ___/___ day of ___July___, 2026, a true and correct copy of the foregoing Plaintiff's Consolidated Objection and Response to Defendants' Motions to Dismiss and Request for Rehearing on Temporary Restraining Order and Preliminary and Permanent Injunction Hearing was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all counsel of record, and a copy was sent via U.S. Mail, First Class, postage prepaid, and via email to the following:

VIA CM/ECF AND U.S. MAIL

James Carroll Butt
Harris County Attorney's Office
1019 Congress
Houston, TX 77002
713-274-5133
Email: james.butt@harriscountytx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Defendant: Harris County Justice Court Precinct 2, Place 2*

VIA CM/ECF AND U.S. MAIL

Michelle Charlene Taylor
City of Houston
900 Bagby St., 3rd Floor
Houston, TX 77002
832-393-6248
Email: michelle.taylor2@houstontx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

VIA CM/ECF AND U.S. MAIL

Natoya Cassie Nicola Inglis
The City of Houston
General Litigation
900 Bagby, 4th Floor
Houston, TX 77002
832-393-6415
Email: natoya.inglis@houstontx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

VIA CM/ECF AND U.S. MAIL

Eric A. Laskowski
COH Legal Department
900 Bagby, 4th Floor
Houston, TX 77002
832-393-6475
Email: eric.laskowski@houstontx.gov
*ATTORNEY TO BE NOTICED*

VIA U.S. MAIL

All other Defendants and pro se parties at their last known addresses.


/s/Matthew Jamal Jackson
Pro Se Plaintiff

Dated: __July 1__, 2026

28

## CERTIFICATE OF SERVICE

I, Matthew Jamal Jackson, certify that a true and correct copy of the foregoing document has been served upon all parties via:

☑ CM/ECF Electronic Filing
☐ U.S. Mail, First Class, Postage Prepaid
☐ Email

on this ___1___ day of ___July___, 2026.

Matthew Jamal Jackson
Pro Se Plaintiff