United States Courts
Southern District of Texas
FILED

JUL 0 1 2026

Nathan Ochsner, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

MATTHEW JAMAL JACKSON,
Individually and as Owner of
Save A Life Homes, LLC,

Plaintiff,

v.                                                     CIVIL ACTION NO. 4:25-cv-04354

JERRY GARCIA, Constable of Harris County Precinct 2, in his individual and official
capacities; ED GONZALEZ, Sheriff of Harris County, in his individual and official
capacities; J. NOE DIAZ JR., Chief of Police of the Houston Police Department, in his
individual and official capacities; HARRIS COUNTY, TEXAS; CITY OF HOUSTON; et
al.,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS AND IN SUPPORT OF RICO ENTERPRISE ALLEGATIONS**

Plaintiff Matthew Jamal Jackson, proceeding pro se, respectfully submits this Memorandum of
Law in opposition to Defendants' Motions to Dismiss pursuant to Federal Rules of Civil
Procedure 12(b)(6) and 12(b)(1). Plaintiff addresses the sufficiency of his RICO enterprise
allegations, among other claims.

I, Matthew Jamal Jackson, being duly sworn, depose and state under penalty of perjury pursuant
to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1

# TABLE OF CONTENTS

I. INTRODUCTION

II. STANDARD OF REVIEW

III. LEGAL FRAMEWORK FOR RICO ENTERPRISE ALLEGATIONS

IV. PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS A RICO ENTERPRISE

V. PLAINTIFF ADEQUATELY PLEADS THE PATTERN OF RACKETEERING ACTIVITY

VI. PLAINTIFF ADEQUATELY PLEADS THE REMAINING RICO ELEMENTS

VII. PLAINTIFF'S OTHER CLAIMS SATISFY THE PLEADING STANDARDS

VIII. CONCLUSION

## I. INTRODUCTION

Defendants seek dismissal of Plaintiff's RICO claims on the ground that Plaintiff has failed to plead a cognizable enterprise. This argument fails under controlling Supreme Court and Fifth Circuit precedent. An association-in-fact enterprise requires only three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiff has pleaded each element with specific factual detail, including specific dates, specific officers, specific police report numbers, and specific incidents spanning nearly a year.

Defendants' argument that Plaintiff must plead an enterprise with "an ascertainable structure beyond that inherent in the pattern of racketeering activity" is legally incorrect. As the Fifth Circuit recently clarified in *Crosswell v. Martinez*, "the evidence establishing the enterprise and the pattern of racketeering may 'coalesce,'" and "the requirement that an association-in-fact must exist for purposes other than just to commit predicate acts requires the association-in-fact to have continuity." 2024 WL 4510449, at *3 (5th Cir. Oct. 17, 2024) .

Plaintiff has pleaded continuity—a coordinated, multi-level government campaign spanning from July 2025 through the present, with multiple related predicate acts occurring throughout. This is precisely the type of "ongoing organization" that RICO encompasses.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Courts "accept all well-pleaded facts as true" and construe the complaint "in the light most favorable to the plaintiff." *Crosswell*, 2024 WL 4510449, at *2 . "To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

However, "a claim for relief may not be stood up on conclusory allegations." *Id.* . Plaintiff's complaint is anything but conclusory. It alleges specific dates, specific officers (Robarge S.M., P.W., Rodriguez Payan G), specific police report numbers (#1102156-25 and #1141160-25), specific incidents, and specific constitutional violations. This is a fact-intensive pleading that satisfies every plausibility requirement. *Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Courts must "liberally construe pro se complaints, inartfully drafted though they may be." *Id.*

3

## III. LEGAL FRAMEWORK FOR RICO ENTERPRISE ALLEGATIONS

### A. Statutory Framework

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

"Regardless of subsection, RICO claims under § 1962 have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Crosswell*, 2024 WL 4510449, at *3 (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)) .

### B. Association-in-Fact Enterprise Requirements

The statute defines an "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In *Boyle v. United States*, the Supreme Court held that an association-in-fact enterprise must have three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. at 946 .

The *Boyle* Court further held that an enterprise need not have "a hierarchical structure or chain of command; fixed roles for associates; and an enterprise name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Id.* at 948 . "A group that does nothing but engage in extortion may fall squarely within the statute's reach." *Id.*

### C. The "Separate and Apart" Requirement—Continuity

Defendants will argue that Plaintiff has failed to allege that the enterprise "had any existence separate and apart from the racketeering activity." This argument fails for two reasons.

First, the Fifth Circuit recently clarified in *Crosswell v. Martinez* that "although a RICO enterprise must be more than a summation of predicate acts, that does not mean that predicate acts cannot demonstrate the existence of an enterprise. On the contrary, 'the evidence establishing the enterprise and the pattern of racketeering may coalesce.'" 2024 WL 4510449, at *3 (quoting *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015)) .

4

Second, "the rule that an association-in-fact must exist for purposes other than just to commit predicate acts requires the association-in-fact to have continuity." *Crosswell*, 2024 WL 4510449, at *3 . "It does not mean that a plaintiff must plead that a common venture dedicated to racketeering activity exists to further other nonculpable ends too." *Id.* (citing *Allstate*, 802 F.3d at 674; *Boyle*, 556 U.S. at 948).

In other words, "the requirement that an association-in-fact must exist for purposes other than just to commit predicate acts" is a continuity requirement. *Crosswell*, 2024 WL 4510449, at *3 . A group that "function[s] as a continuing unit and remain[s] in existence long enough to pursue a course of conduct" satisfies the requirement. *Id.* (quoting *Boyle*, 556 U.S. at 948).

### D. The Enterprise Must Be More Than a "Summation of Predicate Acts"

The Fifth Circuit has held that "a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation." *Crosswell*, 2024 WL 4510449, at *4 . However, this requirement does not prevent predicate acts from demonstrating the enterprise's existence. *Id.* at *3. The enterprise "must have an existence separate and apart from the pattern of racketeering" and "must be an ongoing organization" whose "members function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate*, 802 F.3d at 673 .

### E. Pleading Standard for RICO Enterprise

This court has stated that a RICO plaintiff "must plead specific facts, not mere conclusory allegations, which establish the enterprise." *Crosswell*, 2024 WL 4510449, at *3 (quoting *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 427 (5th Cir. 1987)) . Plaintiff has done exactly that. He has alleged specific facts establishing:

1. A common purpose to deprive Plaintiff of his property rights
2. Relationships among the enterprise members demonstrated by coordinated timing
3. Longevity spanning from July 2025 through the present
4. An ongoing organization with hierarchical and consensual decision-making structures

### IV. PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS A RICO ENTERPRISE

### A. The Enterprise Defined

5

Plaintiff has alleged that the named Defendants constitute an association-in-fact enterprise comprised of:

Federal Level: Houston Housing Authority and Adrian Hudspeth

State Level: State of Texas (through SB 38 and SB 1333)

County Level: Harris County, Texas; Harris County Justice Court Precinct 2 Place 2; Jerry Garcia, Constable; Ed Gonzalez, Sheriff; and their deputies

Municipal Level: City of Houston; Houston Public Works; Houston Police Department; Chief J. Noe Diaz Jr.; and Officers Robarge S.M., P.W., and Rodriguez Payan G

Private Co-Conspirators: Mayra Amezquita, Rubi Villafana, and others

## B. Common Purpose

Plaintiff has pleaded a common purpose: to deprive Plaintiff, an African American adverse possession claimant, of his constitutionally protected property rights and to destroy his housing business. This common purpose is demonstrated by the coordinated, five-level government action targeting Plaintiff's rights.

Specific Allegations:

July 24, 2025: Amezquita trespassed on Plaintiff's property, damaged the water meter, and contacted Houston Public Works with false information. On the same day, Houston Public Works transferred Plaintiff's water service to Amezquita without notice or hearing.

August 5, 2025: Unknown parties changed the locks at Arlington Place, Apartment 116, without any court order.

August 23, 2025: Plaintiff emailed Adrian Hudspeth of HHA. Within hours, HPD officers Robarge and P.W. conducted a warrantless entry at Plaintiff's Prairie Walk property, drew weapons, and detained a veteran.

August 27, 2025: Constable's deputies posted an eviction notice at Plaintiff's Glen Valley property without investigating Plaintiff's recorded instruments.

August 31, 2025: HPD Officer Rodriguez Payan conducted a second incident targeting Plaintiff's property, filing a false police report.

6

September 15, 2025: The Justice Court applied SB 38 and SB 1333—laws effective only 17 days earlier—to Plaintiff's pre-existing adverse possession rights.

September 17, 2025: The City proposed a vacant building fencing ordinance, immediately after the court proceedings.

This coordinated, multi-level action with a single objective—depriving Plaintiff of his property rights—establishes a common purpose for purposes of a RICO enterprise.

## C. Relationships Among Enterprise Members

Plaintiff has pleaded specific facts demonstrating relationships among the enterprise members:

1. Institutional Relationships:

Harris County Constable's Office and Sheriff's Office coordinate on eviction matters

City of Houston and Harris County share jurisdiction and cooperate on law enforcement

Houston Housing Authority coordinates with local law enforcement

State legislation (SB 38 and SB 1333) was designed to enable county and municipal enforcement against adverse possession claimants

2. Coordinated Timing (Demonstrating Interdependence):

Amezquita's July 24, 2025 false report to Public Works; Public Works immediately transferred Plaintiff's water service

August 23, 2025 email to HHA; same day HPD officers raided Plaintiff's property

August 27, 2025 eviction notice; September 15, 2025 court proceeding applying SB 38/1333; September 17, 2025 proposed City ordinance

3. Coordinated Retaliation:

HHA withheld Plaintiff's earned landlord certification after he filed this lawsuit

The City proposed a vacant building ordinance immediately after Plaintiff's lawsuit

7

HPD filed false police reports classifying Plaintiff's lawful adverse possession as "Forgery/Fraud/Counterfeit"

This pattern of coordination demonstrates that the enterprise members are not acting independently but as part of an organized, ongoing association. As the Supreme Court recognized in *Boyle,* "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." 556 U.S. at 948.

## D. Longevity (Continuity)

Plaintiff has pleaded that the enterprise has existed from at least July 2025 through the present—a period of nearly a year—with multiple related predicate acts occurring throughout:

The Enterprise Has Existed Long Enough to Pursue Its Purpose:

July 2025: Amezquita trespass, Public Works utility transfer

August 2025: Arlington Place lock change, HPD raids at Prairie Walk (August 23 and 31), eviction notice (August 27)

September 2025: JP court proceeding applying SB 38/1333, proposed City ordinance

Ongoing: Continued threat of eviction and constitutional violations

The Enterprise Continues to Function:

Plaintiff's housing business remains excluded from federal programs

Plaintiff remains under threat of arrest and eviction

Defendants continue to maintain their unconstitutional policies

This is more than an "isolated set of acts." *Crosswell*, 2024 WL 4510449, at *3 . The enterprise has demonstrated continuity sufficient to satisfy RICO's requirements.

## E. The Enterprise Has an Ongoing Organization

Plaintiff has pleaded both hierarchical and consensual decision-making structures:

Hierarchical Structure:

8

Chief Diaz is the final policymaker for HPD and established the policies that lower-level officers executed

Director Macchi is the final policymaker for Houston Public Works and established the utility transfer policy

Constable Garcia is the final policymaker for his office and established the eviction request policy

Consensual Decision-Making:

Multiple governmental actors at different levels coordinated their actions through a "consensual decision making structure" without formal hierarchy

The enterprise members acted in concert to achieve their common purpose

An enterprise may have either a hierarchical or consensual decision-making structure. *See Allstate*, 802 F.3d at 673 ; *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991).

### F. The Enterprise Is Distinct from Each RICO Person

Under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001), a RICO enterprise must be distinct from the RICO person. Here, the enterprise is distinct from each individual defendant. The enterprise is the association-in-fact of all the members functioning together. Each individual defendant is a "person" who conducted the affairs of this enterprise.

The enterprise consists of multiple, unaffiliated entities—Harris County, the City of Houston, the State of Texas, and private actors—who coordinated their actions. This satisfies the distinctness requirement. *See Office Outfitters, Inc. v. A.B. Dick Co.*, 83 F. Supp. 2d 772, 779-80 (E.D. Tex. 2000).

## V. PLAINTIFF ADEQUATELY PLEADS THE PATTERN OF RACKETEERING ACTIVITY

### A. Predicate Acts

Plaintiff has pleaded multiple predicate acts of racketeering activity:

9

1. Wire Fraud (18 U.S.C. § 1343):

> Amezquita's false telephone and electronic communications to Houston Public Works on July 24, 2025

> Subsequent electronic communications among enterprise members

2. Tampering with Official Records (18 U.S.C. § 1519):

> Officer Robarge's false Report #1102156-25, categorizing Plaintiff's lawful adverse possession as "Forgery/Fraud/Counterfeit"

> Officer Rodriguez Payan's false Report #1141160-25, falsely identifying the caller

3. Obstruction of Judicial Proceedings (18 U.S.C. § 1503):

> Court employees threatening Plaintiff's process server

> The Justice Court's application of ex post facto laws

4. Extortion Under Color of Official Right (18 U.S.C. § 1951):

> Government officials using their authority to deprive Plaintiff of property rights

## B. Relationship and Continuity

The predicate acts are both related and continuous:

Relationship:

> All predicate acts serve the enterprise's common purpose—depriving Plaintiff of his property rights

> The acts are part of a coordinated, multi-level campaign

Continuity:

> The acts occurred over a substantial period (July 2025 through the present)

> The acts represent an ongoing threat of future racketeering activity

> The enterprise continues to function

The Fifth Circuit has held that "continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Plaintiff has pleaded both: a closed period of repeated conduct (July 2025 through the present) and an ongoing threat of future violations.

## VI. PLAINTIFF ADEQUATELY PLEADS THE REMAINING RICO ELEMENTS

### A. Person

Each named Defendant is a "person" within the meaning of RICO. *See* 18 U.S.C. § 1961(3) (defining "person" as "any individual or entity capable of holding a legal or beneficial interest in property").

### B. Conduct or Participation

Each named Defendant conducted or participated in the affairs of the enterprise through the pattern of racketeering activity:

Amezquita provided false information to Public Works and trespassed on Plaintiff's property

Public Works terminated Plaintiff's utility service without due process

The Constable's deputies posted unlawful eviction notices

The Justice Court applied ex post facto laws to Plaintiff's pre-existing rights

HPD officers conducted warrantless entries and filed false police reports

HHA withheld Plaintiff's earned certification in retaliation

### C. Interstate Commerce

The enterprise's activities affect interstate commerce:

Plaintiff's housing business, Save A Life Homes, LLC, operates in multiple states

11

The enterprise's actions have prevented Plaintiff from operating his interstate housing business

The enterprise's actions affect housing markets and federal housing programs that operate in interstate commerce

## VII. PLAINTIFF'S OTHER CLAIMS SATISFY THE PLEADING STANDARDS

### A. Section 1983 Claims

Plaintiff has adequately pleaded § 1983 claims against all government defendants. He has identified:

Specific constitutional rights violated (Fourth Amendment warrantless entry, Fourteenth Amendment due process, First Amendment retaliation)

Specific defendants who violated those rights (officers by name, policymakers)

Specific dates and locations of violations

Municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), through specific policies, customs, and failures to train

### B. Section 1981 and 1982 Claims

Plaintiff has adequately pleaded racial discrimination claims under 42 U.S.C. §§ 1981 and 1982. He is an African American man whose recorded property instruments were ignored while an unverified competing claim was immediately honored. These statutes provide direct private rights of action with no exhaustion requirement. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 460 (1975); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968).

### C. Fair Housing Act Claims

Plaintiff has adequately pleaded FHA claims under 42 U.S.C. § 3617. Private FHA plaintiffs file directly in federal court within two years. 42 U.S.C. § 3613(a). No HUD complaint is required.

### D. Ex Parte Young Claim

12

Plaintiff has adequately pleaded a claim for prospective injunctive relief against state officials under *Ex parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment does not bar suits against state officials for prospective injunctive relief. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). Plaintiff seeks only prospective relief from the State—not monetary damages.

## VIII. CONCLUSION

Plaintiff has adequately pleaded a RICO enterprise. He has alleged specific facts establishing:

1. A common purpose: depriving Plaintiff of his property rights
2. Relationships among the enterprise members: demonstrated by coordinated timing and institutional connections
3. Longevity: the enterprise has existed from July 2025 through the present
4. An ongoing organization: with hierarchical and consensual decision-making structures
5. A pattern of racketeering activity: multiple related predicate acts occurring with continuity

Defendants' motion to dismiss should be denied in its entirety. In the alternative, Plaintiff requests leave to amend should the Court identify any pleading deficiency.

100.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this __1__ day of __July__, 2026, in Harris County, Texas.

Respectfully submitted,

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson
Individually and as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr
Houston, Texas 77061
savealifehomes06@gmail.com
646-588-9376
Pro Se Plaintiff

13

## CERTIFICATE OF SERVICE

I certify that on this __1__ day of __July__, 2026, a true and correct copy of the foregoing Memorandum of Law was served via CM/ECF and/or email upon all counsel of record.

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson