UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW JAMAL JACKSON, | § | |
| *Plaintiff,* | § | |
| *v.* | § | Civil Action No. 4:25-cv-04354 |
| MAYRA AMEZQUITA, et. al., | § | |
| *Defendants.* | § | |

**DEFENDANT THE STATE OF TEXAS'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff, Matthew Jamal Jackson, filed his response to the State's Motion to Dismiss on August 25, 2026, despite being ordered by the Court to do so by August 24. (Dkt. No. 74). In addition to Jackson's response being untimely, it demonstrates a total lack of understanding of the law and of his own claims. Jackson's entire lawsuit revolves around property in Harris County in which Jackson has no legal interest. On one hand, Jackson claims to have "vested rights" in the various properties he is illegally occupying (Dkt. No. 82 at ¶ 21), but on the other hand he admits the statutory period on his claims has yet to run. *Id*. Moreover, Jackson's response does not do anything to either clarify or cure his Eleventh Amendment problem or the deficiencies in his claim of *ex post facto* violations. Jackson's claims against the State should be dismissed with prejudice.

## II. ARGUMENT AND AUTHORITIES

### A. Plaintiff's Response brief is time-barred.

On July 20, 2026, the Court issued an Order that, among other things, granted the State's request for leave to file a Motion to Dismiss. (Dkt. No. 74). That Order set out a briefing scheduling consistent with both the Local Rules of the Southern District of Texas as well as the Local Procedures of this Court. *Id;* L.P. 6(C)(4). The Order required the State to submit its Motion to Dismiss by Monday, August 3, 2026, and required Jackson to submit a response by Monday, August 24, 2026. *Id.* Having had twenty-one days to file a response, Jackson chose to file his response on August 25, and he did so without first requesting leave from the Court or bothering to explain why his response was untimely. (Dkt. No. 82).

The Local Rules of the Southern District of Texas, Local Procedure 6(C)(4) of this Court, and the Court's July 20 Order are all straightforward and unambiguous. And mere inadvertence, ignorance, or misinterpretation of those applicable rules and the Court's Order does not constitute excusable neglect. *See Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 885 (5th Cir. 1998) (explaining that "[a]lthough . . . some misinterpretations of the federal rules may qualify as excusable neglect, such is the rare case indeed. Where, as here, the rule at issue is unambiguous, a district court's determination that the neglect was inexcusable is virtually unassailable. Were it otherwise, almost every . . . [litigant] would plead his own inability to understand the law when he fails to comply with a deadline.'") (citation modified). For this reason alone, Jackson's response should not be considered by the Court, and the State's Motion to Dismiss should be granted.

**B. Jackson does not allege a concrete and particularized injury.**

Jackson's response asserts that the enactment of S.B. 38 and S.B. 1333 were specifically applied to his adverse possession claims "to defeat Plaintiff's property rights that had been accruing for over two years." (Dkt. No. 82 ¶ 7). On Jackson's telling, he had already satisfied over two-thirds of the required statutory period for adverse possession when S.B. 38 and S.B. 1333 went into effect, and this somehow constitutes a concrete and particularized injury because these laws were used by local officials to evict him from various properties. *Id.* There are several problems with this claim.

The enforcement of these laws did not cause an injury to Jackson because he had no legal right to be in these properties to begin with. In Texas, gaining title to real property through adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" for at least three years. TEX. CIV. PRAC. & REM. CODE §§ 16.021, 16.024. Putting aside the other problems with Jackson's adverse possession claims, he admits he did not reside on the property at issue for at least three years before he was evicted, so he could not have acquired title to the property through adverse possession. (Dkt. No. 82 ¶¶ 7, 27, 29). Taking Jackson's own allegations as true, his adverse possession claim did not begin until August 22, 2023, and he was evicted two years later on September 15, 2025. *Id.*

Put another way, Jackson's injury is not real because there is no legal right being violated. *Lin v. United States*, No. 4:22-cv-55-SDJ, 2026 WL 819602, at *4 (E.D. Tex. Mar. 25, 2026), *reconsideration denied*, No. 4:22-CV-55-SDJ, 2026 WL 1493416 (E.D.

Tex. Apr. 21, 2026) (holding plaintiffs had no legal right to possess counterfeit coins that had been seized by the Government, so they had no standing to seek their return); *Schwartzott v. Etheridge Prop. Mgmt.*, 403 S.W.3d 488, 499 (Tex. App. 2013) (holding that plaintiffs lacked standing to sue for damaged property that they did not own); *Develo-cepts, Inc. v. City of Galveston*, 668 S.W.2d 790, 794 (Tex. App. 1984) ("Without an interest in the property, appellant had no legal right to be breached, and therefore, had no standing to challenge zoning decisions concerning the property.")

Jackson does not allege a concrete and particularized injury that is actual or imminent, and the Court lacks subject matter jurisdiction over his claims. Thus, dismissal of Jackson's claims under Federal Rule of Civil Procedure 12(b)(1) is appropriate.

**C. The Eleventh Amendment bars Jackson's claims**

Jackson asserts that his claims against the State are not barred because of the exception under *Ex Parte Young*. (Dkt. No. 82 ¶ 11). *Ex Parte Young* "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities." *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 320-21 (5th Cir. 2008). The Fifth Circuit has provided guideposts to help lower courts "ensure that a defendant has some connection with the enforcement of the challenged act, in the absence of which the State becomes the real party, in violation of the Eleventh Amendment." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024) (citation modified).

In *Mi Familia Vota v. Ogg*, the Fifth Circuit elaborated on the guideposts, which are "(1) the state official has more than the general duty to see that the laws of the state are

implemented, i.e., a particular duty to enforce the statute in question; (2) the state official has a demonstrated willingness to exercise that duty; and (3) the state official, through her conduct, compels or constrains persons to obey the challenged law." *Id.* at 325 (citation modified).

As an initial matter, Jackson has named the State of Texas as a Defendant in his lawsuit, not Attorney General Paxton. Jackson, however, claims he has named the State "through the Office of Attorney General—the very office charged with enforcing the challenged law." (Dkt. No. 82 ¶). But that still does not do anything to cure Jackson's Eleventh Amendment problem. It has been established that "[t]he Office of the Attorney General is an arm of the state entitled to sovereign immunity." *Walker v. Texas, Office of Atty. Gen.*, 217 F. Supp. 2d 776, 779 (E.D. Tex. 2002); *See* TEX. CONST., ART. IV, § 22. Moreover, the Attorney General is not the state official charged with enforcing S.B. 38 and S.B. 1333. As the Fifth Circuit said, the state official must have more than "the general duty to see that the laws of the state are implemented." *Ogg*, 105 F.4th at 325. Indeed, he must have a "particular duty to enforce the statute in question." *Id.*

Here, the statutes in question, S.B. 38 and S.B. 1333, amended the Texas Property Code to streamline the eviction process of certain persons not entitled to enter, occupy, or remain in possession of real property. *See* TEX. PROP. CODE §§ 24.005, 24B.001. Jackson admits those statutes were enforced against him by "local officials" in Harris County who evicted him from the properties at issue. (Dkt. No. 82 ¶ 7). And, of course, it could only be local officials charged with enforcing these statutes. In fact, S.B. 1333 created Chapter 24B of the Texas Property Code, which is titled "Removal of Certain Unauthorized Occupants

of Real Property." TEX. PROP. CODE Ch. 24B. And the first section of Chapter 24B vests the county sheriff or constable with the authority to carry out enforcement of the law. TEX. PROP. CODE § 24B.001.

Even if the Court were to construe Jackson's Amended Complaint as having properly named Attorney General Paxton in his individual capacity, he only has a "general duty to see that the laws of the state are implemented," which is not enough to make him a proper *Ex Parte Young* defendant in this case. *Ogg*, 105 F.4th at 325. Accordingly, Jackson's claims against the State and the Office of Attorney General are barred by the Eleventh Amendment, and the *Ex Parte Young* exception does not apply; his claims must be dismissed.

**D. Jackson misunderstands the Ex Post Facto Clause.**

Jackson maintains the enactment of S.B. 38 and S.B. 1333 violated the *Ex Post Facto* Clause of the United States Constitution. (Dkt. No. 82 ¶ 18). But a statute can only violate the *Ex Post Facto* Clause if the statute is punitive. *Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (per curiam) (citing *Smith v. Doe*, 538 U.S. 84, 92-93, 96-97 (2003)). Whether a statute is considered punitive is subject to the Fifth Circuit's "intent-effects test," which asks "whether (1) the legislature intended the sanction to be punitive, and (2) the sanction is so punitive in effect as to prevent courts from legitimately viewing it as regulatory or civil in nature." *Id*; *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001). If the Legislature's stated intent was not to impose a punishment, "only the clearest of proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S.

93, 100 (1997).

Jackson fails to allege a punitive purpose on the part of the Texas Legislature. And a cursory examination of the Texas Property Code, which S.B. 38 and S.B. 1333 amended, demonstrates that the intent of the law is neither overtly nor implicitly punitive. The Supreme Court has explained that in analyzing a law for its possible punitive effect, a court should look to the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). *Smith*, 538 U.S. at 97. Those seven factors are: whether in its necessary operation, the law under challenge "has been regarded in our history and traditions as punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose;" *id.*, "whether it comes into play on a finding of scienter," and "whether the behavior to which it applies is already a crime." *Mendoza-Martinez*, 372 U.S. at 168.

When these factors are considered, none support the conclusion that the amendments to the Texas Property Code are punitive in nature. The legislative history of S.B. 38 emphasizes that the statute was drafted to "alleviate the strain the eviction process can place on property owners by providing a more efficient and expedited process to restore a property owner's legal right to possession." SENATE COMMITTEE ON JURISPRUDENCE, BILL ANALYSIS, S.B. 38, 89th Leg., R.S. (2025). And the legislative history of S.B. 1333 similarly shows that the amendment was meant to "strengthen property owner rights by providing an initial step for property owners to recover their homes from squatters through a speedy resolution" by allowing for county sheriffs or constables to evict the squatter from the property, "instead of lengthy and costly

court proceedings being their only recourse." SENATE COMMITTEE ON STATE AFFAIRS, BILL ANALYSIS, S.B. 1333, 89th Leg., R.S. (2025).

The statutes that Jackson claims have violated the *Ex Post Facto* Clause are civil in nature that serve nonpunitive goals. And a law serving nonpunitive goals "is not punishment, even though it may bear harshly on one affected." *Moore*, 253 F.3d at 873 (citation modified). Jackson's claim that the enforcement of the Texas Property Code violates the *Ex Post Facto* Clause fails at every step, and his claim must be dismissed.[1]

## III. CONCLUSION

For the reasons stated above, the State respectfully requests the Court grant its Motion and dismiss Jackson's claims with prejudice. The State further requests all other relief to which it is entitled, both at law and in equity.

[1] Plaintiff also claims in his untimely response that the State did not address his Due Process claim or Legislative Retaliation claim. (Dkt. No. 82 ¶¶ 26, 31). But that is untrue. Both of those claims, to the extent he even properly alleged them, are tied to his claim that the enactment and enforcement of SB 38 and SB 1333 was unconstitutional and violated some "protected property interest." The State argues that Jackson never had a legally protected interest to claim property that does not belong to him; he does not have Article III standing to bring these claims; and they are barred by the Eleventh Amendment. (Dkt. No. 76 at 2).

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ Justin Sassaman
JUSTIN SASSAMAN
Assistant Attorney General
Texas Bar No. 24143383
Ph.: (737) 231-6206 Fax: (512) 320-0667
Email: Justin.Sassaman@oag.texas.gov
Office of the Attorney General
General Litigation Division
P.O. Box 12548, MC-019
Austin, Texas 78711-2548
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been served electronically through the Court's CM/ECF system on August 26, 2026, to pro se Plaintiff, Matthew Jamal Jackson.

/s/ Justin Sassaman
JUSTIN SASSAMAN
Assistant Attorney General