RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

Villafana Perez, Deceased owns the Premises, located at 8230 Glen Valley Drive, Houston, Texas, 77061, and legally described a:

> LOT EIGHT (8), IN BLOCK EIGHT (8), OF GLENBROOK VALLEY. SECTION THREE (3), A SUBDIVIDION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 44, PAGE 64, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Pursuant to the Warranty Deed dated June 19, 2007, Rogelio Villafana Perez is the record owner of the Premises. Following his death his Estate became the rightful owner of the Premises. A true and correct certified copy of the Warranty Deed is attached hereto as "**Exhibit B**" and is incorporated herein by reference.

2. In August of 2024 while the family of the Decedent was in California mourning the tragic loss of their husband and father, MATTHEW JACKSON acting individually, and as owner, manager, agent, representative, of SAVE A LIFE HOMES, LLC and SAVE A LIFE HOMES, INC., forcibly entered the Premises without Plaintiff's permission or consent.

3. Specifically, MATTHEW JACKSON unlawfully entered the Premises by breaking into the property, including breaking down a door and forcing entry.

4. Plaintiff did not authorize or consent to the entry.

5. Plaintiff did not authorize these Defendants, its owner, employees, agents, representatives, or anyone acting on its behalf to enter, occupy, use, control, or possess the Premises.

6. Defendants thereafter took possession of, occupied, controlled, or exercised dominion over the Premises without Plaintiff's permission.

7. Defendants' entry and continued possession was therefore unauthorized.

8. To date, despite numerous requests for possession of the Premises the Defendants continue in possession of the Premises

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

## IV. DEMAND TO VACATE

1. Plaintiff demanded that Defendants vacate the Premises and surrender possession to Plaintiff.

2. Plaintiff provided Defendants with a Notice to Vacate dated August 14, 2026 by USPS Priority Mail and First-Class Mail. A true and correct copy of the Notice to Vacate is attached hereto as **"Exhibit C"** and is incorporated herein by reference.

3. The Notice to Vacate was served upon Defendants by USPS Priority Mail and was delivered on August 17, 2026, A true and correct copy of the USPS delivery confirmation is attached hereto as **"Exhibit C-1"** and is incorporated herein by reference.

3. The notice demanded that Defendants vacate and surrender possession of the Premises by AUGUST 18, 2026, 11:59PM CST.

4. Defendants received, or was provided, the required notice.

5. Despite Plaintiff's demand, Defendants failed and refuse to vacate the Premises and continue to occupy and/or withhold possession of the Premises from Plaintiff.

## V. FORCIBLE ENTRY AND DETAINER

1. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

2. Defendants entered the Premises without Plaintiff's consent and without legal authority. Defendants thereafter refused to surrender possession after Plaintiff demanded that Defendants vacate the Premises.

3. Defendant's conduct constitutes a forcible entry and detainer under Texas Property Code Chapter 24.

4. Plaintiff is entitled to possession of the Premises as against Defendants.

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

5. Plaintiff does not seek to establish or enforce title to real property in this proceeding. Plaintiff seeks only the right to immediate possession of the Premises as authorized in an eviction proceeding.

6. Defendants have no present right to possess the Premises.

7. Defendant's continued possession deprives Plaintiff of the use, possession, and enjoyment of the Premises.

## V. DAMAGES, COSTS, AND OTHER RELIEF

1. Plaintiff seeks recovery of all court costs and other costs recoverable by law. To the extent permitted in this eviction proceeding, Plaintiff seeks any additional monetary relief that the Court has jurisdiction to award based upon Defendants' unlawful withholding of possession.

2. Plaintiff reserves any claims for damages, property damage, trespass, attorney's fees, or other relief that are not within the jurisdiction or scope of this eviction proceeding.

## VI. CONDITIIONS PRECEDENT

1. All conditions precedent to Plaintiff's right to recover possession that are required by applicable law have occurred, have been performed, or have been waived.

## VII. PRAYER

WHEREFORE, Plaintiff the Estate of Rogelio Villafana Perez, Deceased, appearing by and through RUBI VILLAFANA, asks that the Court to issue citation for Defendants to appear and answer, and that Plaintiff be awarded judgment against Defendants for possession of the Premises and for issuance of a writ of possession. In addition, Plaintiffs asks the Court for the following:

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

1. Enter judgment in favor of Plaintiff;

2. Award Plaintiff possession of the Premises located at 8230 Glen Valley Drive, Houston, Texas 77061;

3. Order Defendant to vacate and surrender possession of the Premises to Plaintiff;

4. Award Plaintiff all court costs and other costs recoverable by law;

5. Issue a writ of possession as authorized by Texas law after expiration of the applicable period; and

6. Award Plaintiff all other relief, at law or in equity, to which Plaintiff may be entitled and that is within the jurisdiction of this Court.

Respectfully submitted,

MIRANDA CARREON | LAW

By: ______________________

Adilia Miranda Carreon
Texas Bar No. 24118472
1425 N Durham Drive
Houston, Texas 77008
Tel. (281) 886-7764
Fax. (713) 234-0397
firm@mirandacarreon.com

**ATTORNEY FOR PLAINTIFF**

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT C**

MIRANDA CARREON | LAW

August 13, 2026

***Via: First Class Mail and USPS Priority Mail***

**SAVE A LIFE HOMES LLC AKA SAVE A LIFE HOMES INC**
**MATTHEW JACKSON**
83220 Glen Valley drive
Houston, Texas 77061

**RE: FORMAL NOTICE TO VACATE**

My firm represents Mayra Amezquita, the widow of Rogelio Villafana Perez, Deceased and Rubi Villafana, the Dependent Administrator of the Estate of Rogelio Villafana Perez, Deceased. My Clients are the rightful owners of real property located at 8230 Glen Valley Drive, Houston, Texas 77061, (the "Property"). You are hereby notified that your occupation and possession the Property is **UNAUTHORIZED**.

You entered and/or took possession of the Property by forcible entry and without the consent or permission of the owner or person entitled to possession. You have no written lease, oral rental agreement, or other lawful agreement granting you possession of the Property. Furthermore, you withheld and converted personal property belonging to my Clients contained therein.

You are hereby formally demanded to immediately vacate the property and surrender possession.

Pursuant to Texas Property Code §24.005(d), this written notice constitutes notice to vacate following forcible entry. You are required to vacate no later than:

**DEADLINE TO VACATE:** August 18, 2026
**TIME:** 11:59PM CST

Upon vacating, you must remove your personal property and surrender all keys, access devices, and other means of access to the property.

Your continued presence at the property after the deadline stated above will be treated as continued unauthorized possession. If you fail to vacate, my office will pursue all remedies available under Texas law, including a forcible entry and detainer action seeking recovery of possession and any other relief available by law.

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT C**

Nothing in this notice creates or recognizes a landlord-tenant relationship, lease, tenancy, rental agreement, or other right of possession. My Client's expressly deny that you have any such right.

You are also instructed not to damage, alter, remove, transfer, encumber, or otherwise interfere with the property or its contents.

Sincerely,
MIRANDA CARREON | LAW

Adilia Miranda Carreon
Attorney at Law

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

Dropbox Sign

Audit trail

| | |
|---|---|
| Title | MIRANDA CARREON \| LAW has sent you a document to review and...... |
| File name | 2026 JUL 19 - Ver...n - VILLAFANA.pdf |
| Document ID | 4041877f2012bff653b7352b401c1fab009acef7 |
| Audit trail date format | MM / DD / YYYY |
| Status | Signed |

**This document was requested on app.practicepanther.com and signed on app.practicepanther.com**

## Document History

| | | |
|---|---|---|
| SENT | **08 / 19 / 2026** 20:39:25 UTC | Sent for signature to Rubi Villafana (rubivillafana5@gmail.com) by support@practicepanther.com acting on behalf of firm@mirandacarreon.com IP: 76.31.16.58 |
| VIEWED | **08 / 19 / 2026** 22:10:09 UTC | Viewed by Rubi Villafana (rubivillafana5@gmail.com) IP: 172.58.50.222 |
| SIGNED | **08 / 19 / 2026** 22:13:04 UTC | Signed by Rubi Villafana (rubivillafana5@gmail.com) IP: 172.58.50.222 |
| COMPLETED | **08 / 19 / 2026** 22:13:04 UTC | The document has been completed. |

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**UNSWORN DECLARATION PURSUANT TO TEXAS CIVIL PRACTICE AND REMEDIES CODE § 132.001**

STATE OF TEXAS §
COUNTY OF HARRIS §

My name is RUBI VILLFAFANA, my date of birth is December 21, 2004, and my address is, 709 Bluebird Lane, Pasadena Harris County, Texas, 77502.

Pursuant to Texas Civil Practice and Remedies Code § 132.001, I declare under penalty of perjury that the she is duly appointed as the Dependent Administrator of the Estate of Rogelio Villafana Perez, Deceased, and that that in so far as is known to her all the allegation of the foregoing ORGINAL PETITION FOR EVICTION are true in substance and in fact and within, her knowledge.

Executed in Harris County, State of Texas. on 08 / 19 / 2026.

Rubi Villafana

RUBY VILLAFANA, Dependent Administrator of the Estate of Rogelio Villafana Perez.

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

# EXHIBIT C-1

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

EXHIBIT C-1

ALERT: TROPICAL STORM LALA IN HAWAII AND SEVERE WEATHER AND FLOODING IN THE U...

# USPS Tracking®

FAQs >

Tracking Number:

9405550105797030972114

Copy Add to Informed Delivery

Remove X

Feedback

## Latest Update

Your item was delivered at the front door or porch at 4:46 pm on August 17, 2026 in HOUSTON, TX 77061.

---

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered

**Delivered, Front Door/Porch**

HOUSTON, TX 77061
August 17, 2026 4:46 PM

See All Tracking History

What Do USPS Tracking Statuses Mean?

---

**Text & Email Updates**

---

**USPS Tracking Plus®**

---

**Product Information**

See Less ^

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

EXHIBIT C-1

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

EXHIBIT C-1

ALERT: TROPICAL STORM LALA IN HAWAII AND SEVERE WEATHER AND FLOODING IN THE U...

# USPS Tracking®

FAQs >

Tracking Number:

Remove ✕

9405550105795031108945

Copy Add to Informed Delivery

Feedback

## Latest Update

Your item was delivered at the front door or porch at 4:46 pm on August 17, 2026 in HOUSTON, TX 77061.

---

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered

**Delivered, Front Door/Porch**

HOUSTON, TX 77061
August 17, 2026 4:46 PM

See All Tracking History

What Do USPS Tracking Statuses Mean?

---

**Text & Email Updates**

---

**USPS Tracking Plus®**

---

**Product Information**

See Less ^

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

EXHIBIT C-1

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

# EXHIBIT C

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT A**

# Teneshia Hudspeth

COUNTY CLERK, HARRIS COUNTY, TEXAS
PROBATE COURTS DEPARTMENT

| | | |
|---|---|---|
| In Matter of Probate | { | |
| | { | Docket No. **538901** |
| County Probate Court No. 1 | { | |
| | { | In the Estate of: **Rogelio Villafana Perez, Deceased** |
| Harris County, Texas | { | |

## LETTERS OF ADMINISTRATION

It is hereby certified that on **December 03, 2025** said court granted Letters of Administration in the estate of **Rogelio Villafana Perez, Deceased** and that **Rubi Villafana** qualified as **Dependent Administrator** of this Estate on **December 29, 2025** as the law requires, and that this Appointment is still in full force and effect.

Witness my hand and seal of said court, at Houston, Texas, on **January 07, 2026.**

(SEAL)

PROBATE COURT OF HARRIS COUNTY, TEXAS

Teneshia Hudspeth, County Clerk
County Probate Court No. 1
201 Caroline, Room 800
Harris County, Texas

*Lora Ingram*
Lora Ingram
Deputy County Clerk

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT B**

COURT OF HARRIS COUNTY, COUNTY, TEXAS

I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages are a true and correct copy of the original record filed and recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 13, 2026

Teneshia Hudspeth

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

# EXHIBIT A

Honorable Judge Jo Ann Delgado
Justice of the Peace Precinct 2, Place 1

Harris County
State of Texas

Case Number: 252100341228

Exhibit H

Mayra Amezquita
Plaintiff
vs.
Matthew Jackson
Defendant

Represented by:

Represented by:

Leased Premises: 8230 Glen Valley Dr Houston TX 77061

| | | | | |
|---|---|---|---|---|
| Plaintiff(s) | ☑ Present | ☐ Not Present at Trial | ☐ Video/Telephone conference | ☑ In person |
| Defendant(s) | ☑ Present | ☐ Not Present at Trial | ☐ Video/Telephone conference | ☑ In person |

On 09/15/2025 the court heard the above-numbered and styled cause.

## ☐ DEFAULT JUDGMENT FOR PLAINTIFF

The Plaintiff, being present, announced ready for trial. The Defendant, although having been duly cited and served with process, said citation with the officer's return thereon having been on file with the clerk of this court, failed to appear or answer in its behalf, and wholly made default. It is therefore decreed that judgment is entered for the Plaintiff for possession of the above described premises, and further, that the Plaintiff have judgment against the Defendant(s) for $ __________ as rent owed, plus $ __________ as attorney fees, all costs of court, together with post-judgment interest at a rate of 7.50% per annum from the date of judgment until paid, for which let execution issue. No writ of possession will issue before ________________________. The Defendant(s) appeal bond is set at: $____________.

## ☐ JUDGMENT FOR PLAINTIFF

The Plaintiff and Defendant, being present, announced ready for trial. The court, having heard the evidence, determined judgment is for the Plaintiff for possession of the above described premises. It is therefore decreed that judgment is entered for the Plaintiff for possession of the above described premises, and further, that the Plaintiff have judgment against the Defendant(s) for $_________ as rent owed, plus $_________as attorney fees, all costs of court, together with post-judgment interest at a rate of 7.50% per annum from the date of judgment until paid, for which let execution issue. No writ of possession will issue before ________________________. The Defendant(s) appeal bond is set at: $___________.

## ☐ JUDGMENT FOR DEFENDANT

The Plaintiff and Defendant, being present, announced ready for trial. The court, having heard the evidence, determined judgment is for the Defendant for possession of the above described premises. It is therefore decreed that the Plaintiff take nothing and that judgment is entered for the Defendant(s) for $__________ as attorney fees, all costs of court, together with post-judgment interest at a rate of 7.50% per annum from the date of judgment until paid, for which let execution issue. The Plaintiff's appeal bond is set at $500.00.

☑ The court ORDERS that this case is **DISMISSED**:

- ☑ due to lack of jurisdiction.
- ☐ as Plaintiff did not appear.
- ☐ on motion of the ☐ Plaintiff ☐ Defendant.
- ☐ by agreement of the parties and that each side bears their cost incurred.
- ☐ No one present
- ☐ Other ______________________________

**The court denies all other relief not granted above.**

Signed: 09/15/2025

[signature]
Justice of the Peace Precinct 2, Place 1

JUSTICE COURTS PRECINCT TWO HARRIS COUNTY, TEXAS

**Payment of Rent during the Pendency of Any Appeal:**

☐ The amount of rent to be paid each rental pay period during the pendency of any appeal is $__________.

☐ A portion of the rent is payable by a government agency, and the amount of rent to be paid each rental pay period during the pendenc of any appeal is: $__________ by Defendant and $__________ by government agency.

Notice: **If you are an individual (not a company), your money or property may be protected from being taken to pay this judgment. Find out more** visiting www.texaslawhelp.org/exempt-property.

*Si usted es una persona física (y no una compañía), su dinero o propiedad pudieran estar protegidos de ser embargados como pago de esta deuda decretada en juicio en contra suya. Obtenga mayor información visitando el sitio www.texaslawhelp.org/exempt-property.*

*You may appeal this judgment by filing a bond, making a cash deposit, or filing a Statement of Inability to Afford Payment of Court Costs within 5 days after this judgment was signed. See Texas Rule of Civil Procedure 510.9(a).*

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

EXHIBIT A

# Teneshia Hudspeth

COUNTY CLERK, HARRIS COUNTY, TEXAS
PROBATE COURTS DEPARTMENT

Exhibit DD

| | | |
|---|---|---|
| In Matter of Probate | { | |
| | { | Docket No. **538901** |
| County Probate Court No. 1 | { | |
| | { | In the Estate of: **Rogelio Villafana Perez, Deceased** |
| Harris County, Texas | { | |

## LETTERS OF ADMINISTRATION

It is hereby certified that on **December 03, 2025** said court granted Letters of Administration in the estate of **Rogelio Villafana Perez, Deceased** and that **Rubi Villafana** qualified as **Dependent Administrator** of this Estate on **December 29, 2025** as the law requires, and that this Appointment is still in full force and effect.

Witness my hand and seal of said court, at Houston, Texas, on **January 07, 2026.**

(SEAL)

PROBATE COURT OF HARRIS COUNTY, TEXAS

Teneshia Hudspeth, County Clerk
County Probate Court No. 1
201 Caroline, Room 800
Harris County, Texas

*Lora Ingram*
Lora Ingram
Deputy County Clerk

P.O. Box 1525 ● Houston, TX 77251-1525 ● (713) -274-8585
www.cclerk.hctx.net

Form No. I-02-217 (Rev. 04/29/2022)

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT B**

WD
ETC
G

20070381841
06/22/2007 ER $20.00

Exhibit EE

Page 1 of 3 Thursday, August 13, 2026 County Clerk Harris County, Texas

ER 003 - 07 - 2118

# WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THE STATE OF TEXAS )(
COUNTY OF HARRIS )( KNOW ALL MEN BY THESE PRESENTS:
)(

THAT VENSON GIBBS 1016467

hereinafter called "Grantor" (whether one or more), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to Grantor paid by ROGELIO P. VILLAFANA, A SINGLE PERSON

1EE

hereinafter called "Grantee" (whether one or more), the receipt of which is hereby acknowledged and confessed, and the further consideration of the execution and delivery by Grantee of one certain Promissory Note in the principal sum of ONE HUNDRED TWENTY THREE THOUSAND DOLLARS AND NO/100

of even date herewith, payable to the order of SECURE MORTGAGE COMPANY

ASG
1EE
1OR

hereinafter called "Mortgagee," bearing interest at the rate therein provided; said Note containing the usual reasonable attorney's fee clause and various acceleration of maturity clauses in case of default, and being secured by Vendor's Lien and superior title retained herein in favor of said Mortgagee, and being also secured by a Deed of Trust of even date herewith from Grantee to MALCOLM D. GIBSON , Trustee; and

WHEREAS, Mortgagee has, at the special instance and request of Grantee, paid to Grantor a portion of the purchase price of the property hereinafter described, as evidenced by the above-described Note, said Vendor's Lien and Deed of Trust lien against said property securing the payment of said Note are hereby assigned, transferred and delivered to Mortgagee, Grantor hereby conveying to said Mortgagee the said superior title to said property, subrogating said Mortgagee to all the rights and remedies of Grantor in the premises by virtue of said liens; and

Grantor has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto said Grantee, the following described property, to-wit:

LOT EIGHT (8), IN BLOCK EIGHT (8), OF GLENBROOK VALLEY, SECTION THREE (3), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 44, PAGE 64 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS; D

TO HAVE AND TO HOLD the above-described premises, together with all and singular, the rights and appurtenances thereunto in anywise belonging unto said Grantee, his heirs and assigns, forever. And Grantor does hereby bind himself, his heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto said Grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

# EXHIBIT B

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT B**



ER 003 - 07 - 2120

20070381841
# Pages 3
06/22/2007 11:53:47 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
BEVERLY KAUFMAN
COUNTY CLERK
Fees 20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically and any blackouts, additions or changes were present at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED in the Official Public Records of Real Property of Harris County, Texas.

Beverly B. Kaufman
COUNTY CLERK
HARRIS COUNTY, TEXAS

RECEIVED OR FILED
JUSTICE OF THE PEACE 2-1
HARRIS COUNTY, TEXAS
8/20/2026 11:48 AM

**EXHIBIT B**



ER 003 - 07 - 2119

Taxes for the current year have been prorated and their payment is assumed by Grantee.

This conveyance is made subject to any and all valid and subsisting restrictions, easements, rights of way, reservations, maintenance charges together with any lien securing said maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the above-described property as shown by the records of the County Clerk of said County.

The use of any pronoun herein to refer to Grantor or Grantee shall be deemed a proper reference even though Grantor and/or Grantee may be an individual (either male or female), a corporation, a partnership or a group of two or more individuals, corporations and/or partnerships, and when this Deed is executed by or to a corporation, or trustee, the words "heirs, executors and administrators" or "heirs and assigns" shall, with respect to such corporation or trustee, be construed to mean successors and assigns."

It is expressly agreed that the Vendor's Lien is retained in favor of the payee of said Note against the above-described property, premises and improvements, until said Note and all interest thereon shall have been fully paid according to the terms thereof, when this deed shall become absolute.

EXECUTED this ~~18TH~~ 19th day of JUNE , 2007 .

VENSON GIBBS

1OR

STATE OF ~~TEXAS~~ CALIFORNIA
County of ALAMEDA

Before me, the undersigned authority, on this day personally appeared
VENSON GIBBS

~~known to me~~ (or proved to me on the oath of ______ or through ______) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 19 day of JUNE , 2007.

NOTARY PUBLIC

AFTER RECORDING, RETURN TO:
8230 Glen Valley
Houston TX 77061

L. W. LAM
Commission # 1549899
Notary Public - California
Alameda County
My Comm. Expires Feb 4, 2009

NewsRoom

Exhibit FF 1 of 2

7/8/26 Hous. Chron. 003
2026 WLNR 19268256

Houston Chronicle
Copyright (c) 2026 Hearst Communications Inc.

July 8, 2026

Section: A

# Deputies investigate ownership claim of Heights home

Nicole Hensley, Staff Writer

Deputies entered the Houston home of murder suspect Lee Gilley with the help of a locksmith Monday after a man attempted to take ownership of the Heights residence.

The house in the 800 block of Allston Street was left vacant following Gilley's escape from the U.S. to seek asylum in Italy. He was facing a capital murder trial in Houston for the October 2024 death of his pregnant wife, Christa Gilley, whom authorities believe was strangled.

Records show that a Houston man named Matthew Jackson, who has no connection to the Gilley family, filed paperwork claiming he was the new owner of the home. The same documents were taped to the inside of windows and doors in the home when the parents of Christa Gilley checked on the home last month.

Those signs and a pair of porch cameras were taken down after a locksmith opened the door for Precinct 1 deputy constables around 1:30 p.m. with the permission of Christa Gilley's family.

A spokesperson for the constable's office recorded video in and around the house after police entered the residence with a lawyer for Christa Gilley's parents. The footage included a bedroom with a bed that had been made at some point.

Nothing appeared to have been stolen, the spokesperson said, but pictures of the house were being compared to its current state. A deputy left the home carrying two boxes of evidence.

"Anything and everything needed to establish a crime -- we took," Constable Alan Rosen said at a news conference later.

No one was inside the home when authorities entered, but Rosen said investigators didn't expect anyone to be. Rosen's office is investigating the attempted possession of the Gilley home and another property for potential criminal charges. He declined to name Jackson as their suspect.

An investigation by the Houston Chronicle found that Jackson has tried to claim ownership of a dozen properties in Harris County -- including two homes tied to homicide cases.

EXHIBIT
A
exhibitsticker.com

"There's a history of this with this individual," Rosen said. "This person does feel like they know the law, but unfortunately they don't. This person has been dealt with in this space before."

Jackson has not been charged in connection with the Gilley home, but he's free on bond on misdemeanor charges related to allegations that he trespassed on other properties.

**---- Index References ----**

News Subject: (Assault & Battery (1AS33); Burglary & Theft (1BU41); Crime (1CR87); Property Crime (1PR85); Social Issues (1SO05); Violent Crime (1VI27))

Region: (Americas (1AM92); North America (1NO39); Texas (1TE14); U.S. Southwest Region (1SO89); USA (1US73))

Language: EN

Word Count: 386

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

NewsRoom

Matthew Jamal Jackson
Individually and as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr
Houston, Texas 77061
Email: savealifehomes01@gmail.com
Phone: 646-588-9376

Exhibit GG

June 2, 2026

Ken Paxton
Attorney General of Texas
In His Official Capacity
Office of the Attorney General of Texas
300 West 15th Street
Austin, Texas 78701

**SENT VIA: Certified Mail, Return Receipt Requested**
**AND VIA: Electronic Submission — www.texasattorneygeneral.gov**

**RE: (1) FORMAL NOTICE OF ADA TITLE II CLAIM AGAINST THE STATE OF TEXAS PURSUANT TO 42 U.S.C. § 12132 AND § 12133; (2) NOTICE OF PENDING FEDERAL CIVIL RIGHTS LITIGATION — CIVIL ACTION NO. 4:25-cv-04354; AND (3) DEMAND TO CEASE RETROACTIVE APPLICATION OF SB 38 AND SB 1333 TO PLAINTIFF'S PRE-EXISTING ADVERSE POSSESSION RIGHTS**

Dear Attorney General Paxton:

## I. PURPOSE OF THIS LETTER

This letter serves three distinct legal purposes. First, it constitutes formal notice to the State of Texas of Plaintiff's claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, as required before seeking compensatory damages against a state entity. Second, it provides formal notice of the pending federal civil rights action styled Matthew Jamal Jackson v. Jerry Garcia, Constable of Harris County Precinct 2, et al., Civil Action No. 4:25-cv-04354, currently pending before the United States District Court for the Southern District of Texas, Houston Division, before the Honorable George C. Hanks, Jr. Third, it constitutes a formal demand that the Office of the Attorney General cease enforcing Senate Bills 38 and SB 1333 retroactively against Plaintiff's adverse possession rights that were established prior to September 1, 2025.

## II. IDENTITY OF PLAINTIFF

Plaintiff Matthew Jamal Jackson is an individual residing at 8230 Glen Valley Drive, Houston, Texas 77061, and the owner of Save A Life Homes, LLC, a housing services company providing housing to low-income tenants, veterans, and families through federal housing assistance programs including VA housing and Section 8 housing vouchers across multiple states.

## III. PLAINTIFF'S ADVERSE POSSESSION CLAIM

Plaintiff has been in peaceable, open, notorious, hostile, exclusive, and continuous possession of real property located at 8230 Glen Valley Drive, Houston, Texas 77061 since August 22, 2023, under a claim of adverse possession pursuant to Texas Property Code § 16.025 (three-year adverse possession statute with color of title). Plaintiff has recorded the following instruments in the Harris County real property records:
Affidavit of Adverse Possession — Instrument No. RP-2025-216266
Amended Affidavit of Adverse Possession — Instrument No. RP-2025-312514
Quit Claim Deed — recorded in Harris County
Warranty Deed — recorded in Harris County
Plaintiff's adverse possession title is scheduled to vest by operation of law on August 22, 2026, upon completion of the three-year statutory period. Plaintiff has already satisfied over two-thirds of the required statutory period.

## IV. FORMAL ADA TITLE II NOTICE — 42 U.S.C. § 12132

Pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Supreme Court's decision in United States v. Georgia, 546 U.S. 151 (2006), this letter constitutes formal notice to the State of Texas of Plaintiff's ADA Title II claim arising from the conduct of State of Texas actors and agencies described herein.
Nature of Disability:
Plaintiff has one or more qualifying disabilities within the meaning of 42 U.S.C. § 12102 that substantially limit one or more major life activities. The specific nature of Plaintiff's disability is a private medical matter that will be disclosed through proper discovery channels in the pending litigation. Plaintiff is a qualified individual with a disability within the meaning of the ADA.
The Discrimination and Denial of Services:

The State of Texas, through its agencies, officials, and the enforcement of its laws, has discriminated against Plaintiff in the provision of public services, programs, and activities in the following specific respects:

Retroactive Application of SB 38 and SB 1333: The State of Texas enacted Senate Bill 38 and Senate Bill 1333, which became effective September 1, 2025. These laws were specifically applied to Plaintiff's adverse possession proceeding on September 15, 2025 — only 17 days after taking effect — to defeat Plaintiff's property rights that had been accruing since August 22, 2023. The laws were invoked to characterize Plaintiff — a person with disabilities exercising lawful property rights — as a 'squatter,' a characterization that reflects discriminatory animus toward persons with disabilities who exercise adverse possession rights as a means of accessing stable housing.

Denial of Equal Access to Property Rights: The State of Texas, through the application of SB 38 and SB 1333, has denied Plaintiff equal access to the property rights system that Texas law provides to non-disabled persons. Plaintiff's recorded adverse possession instruments — representing years of lawful possession and investment — were effectively nullified by the retroactive application of newly enacted legislation targeting adverse possession claimants, a population that disproportionately includes persons with disabilities seeking stable housing.

Failure to Provide Reasonable Accommodation: The State of Texas failed to provide Plaintiff with reasonable accommodations in the administration of the eviction and property rights system, including failing to ensure that the expedited eviction procedures enacted by SB 38 and SB 1333 would not be applied in a manner that disproportionately harms persons with disabilities who rely on adverse possession rights for housing stability.
Interference with Federal Housing Programs: The State of Texas, through coordinated action with other government entities, has interfered with Plaintiff's ability to operate his housing business — Save A Life Homes, LLC — which serves veterans, low-income families, and persons with disabilities through VA housing and Section 8 programs. This interference constitutes discrimination in the provision of services that benefit persons with disabilities.
These actions violate Title II of the ADA, 42 U.S.C. § 12132, which provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

## V. DEMAND TO CEASE RETROACTIVE APPLICATION OF SB 38 AND SB 1333

Plaintiff formally demands that the Office of the Attorney General of Texas cease enforcing Senate Bill 38 and Senate Bill 1333 against any adverse possession claim by Plaintiff that was established prior to September 1, 2025, the effective date of those statutes.

SB 38 streamlines eviction proceedings by requiring courts to hold trials within 21 days, while SB 1333 empowers law enforcement to act swiftly on sworn complaints that a property is being unlawfully occupied. Both laws became effective September 1, 2025 — more than two years after Plaintiff established his adverse possession rights on August 22, 2023. The retroactive application of these laws to Plaintiff's pre-existing property rights violates:

The Ex Post Facto Clause and substantive due process protections of the United States Constitution — applying newly enacted laws to defeat pre-existing property rights that have already been accruing for over two years constitutes an unconstitutional retroactive deprivation of vested property interests;

The Due Process Clause of the Fourteenth Amendment — Plaintiff has a constitutionally protected property interest in his adverse possession claim that cannot be retroactively extinguished by legislation enacted after that interest began accruing; and
The Contracts Clause principles and vested rights doctrine — Plaintiff's two-plus years of lawful possession, investment, and recorded instruments constitute vested rights that cannot be defeated by retroactive legislation.

The Supreme Court authorized prospective injunctive relief against state officials enforcing unconstitutional laws in Ex Parte Young, 209 U.S. 123 (1908). Plaintiff has sought and will continue to seek such relief against you in your official capacity as Attorney General in the pending federal action.

## VI. NOTICE OF PENDING FEDERAL LITIGATION

Please be advised that the following federal action is pending and directly implicates the State of Texas and the enforcement of SB 38 and SB 1333:
Case Name: Matthew Jamal Jackson, Individually and as Owner of Save A Life Homes, LLC v. Jerry Garcia, Constable of Harris County Precinct 2, et al.
Civil Action No.: 4:25-cv-04354
Court: United States District Court, Southern District of Texas, Houston Division
Judge: The Honorable George C. Hanks, Jr.
Date Filed: September 12, 2025
Current Status: Active — Second Amended Complaint filed; motions to dismiss pending

The State of Texas is named as a defendant in the Second Amended Complaint. Plaintiff seeks prospective declaratory and injunctive relief against the Texas Attorney General in his official capacity pursuant to Ex Parte Young, and a declaration that the retroactive application of SB 38 and SB 1333 to Plaintiff's pre-existing adverse possession rights violates the United States Constitution. No monetary damages are sought against the State of Texas.

## VII. RELIEF DEMANDED

Plaintiff demands the following relief from the Office of the Attorney General of Texas:
Immediately cease all enforcement of SB 38 and SB 1333 against Plaintiff's adverse possession claim at 8230 Glen Valley Drive, Houston, Texas 77061, and any other adverse possession property of Plaintiff where the adverse possession period commenced prior to September 1, 2025;

Issue guidance to all Texas law enforcement agencies, justice courts, and county officials within the Staté of Texas that SB 38 and SB 1333 cannot lawfully be applied retroactively to adverse possession claims that were established before September 1, 2025;
Provide written confirmation within fourteen (14) days of receipt of this letter that the Office of the Attorney General will not enforce SB 38 or SB 1333 against Plaintiff's pre-existing adverse possession rights;

Engage in good-faith discussions with Plaintiff regarding the ADA Title II violations described herein and the provision of reasonable accommodations; and
Confirm in writing that the Office of the Attorney General has received this letter and that it has been forwarded to all relevant divisions including the Civil Rights Division, the Property Rights Division, and any division responsible for the defense of the pending federal action.

## VIII. EVIDENCE PRESERVATION DEMAND

Please be advised that this letter also constitutes a formal demand for preservation of all evidence related to the above-described claims, including but not limited to: all records, communications, and documents related to the drafting, passage, and implementation of SB 38 and SB 1333; all communications between the Office of the Attorney General and Harris County officials, Houston city officials, or any other government entity regarding adverse possession or the above-captioned litigation; and all records related to any ADA accommodation policies applicable to the property rights and eviction systems of the State of Texas.
The duty to preserve this evidence has attached as of the date of this letter, if it had not already attached earlier. Any destruction of potentially relevant evidence following receipt of this letter may constitute spoliation and result in adverse inference instructions at trial.

## IX. CONCLUSION

Plaintiff has invested over two and a half years in the peaceable, lawful exercise of adverse possession rights expressly provided by Texas law. The retroactive application of SB 38 and SB 1333 to defeat those pre-existing rights — combined with the coordinated five-level government conspiracy documented in the pending federal action — has caused Plaintiff severe and ongoing harm.

Plaintiff respectfully requests that the Office of the Attorney General respond to this letter within fourteen (14) days. If the Office of the Attorney General is willing to engage in good-faith resolution of the ADA claims and provide assurance that SB 38 and SB 1333 will not be applied retroactively to Plaintiff's pre-existing rights, Plaintiff is open to discussion. Absent such assurance, Plaintiff will proceed with all claims in the pending federal action.
This letter is written without prejudice to any and all rights, claims, and remedies available to Plaintiff, all of which are expressly reserved.

Respectfully submitted,
/s/ Matthew Jamal Jackson
Matthew Jamal Jackson
Individually and as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr, Houston, Texas 77061
savealifehomes01@gmail.com | 646-588-9376
Pro Se — Civil Action No. 4:25-cv-04354

ENCLOSURES:
Copy of Plaintiff's Second Amended Complaint — Civil Action No. 4:25-cv-04354
Affidavit of Adverse Possession — Instrument No. RP-2025-216266
Amended Affidavit of Adverse Possession — Instrument No. RP-2025-312514
Warranty Deed — Harris County Records
Copy of Justice Court Dismissal — September 15, 2025 (lack of jurisdiction)

COPIES TO:
The Honorable George C. Hanks, Jr. — USDC Southern District of Texas (filed as notice in Civil Action No. 4:25-cv-04354)
James C. Butt — Office of the Harris County Attorney
Michelle C. Taylor — City of Houston Legal Department
Texas Civil Rights Division — Office of the Attorney General

# Ken Paxton Attorney General of Texas

me Jun 2
to ken.paxton

| | |
|---|---|
| From | SAVE A LIFE HOMES, LLC SAVE A LIFE HOMES, LLC savealifehomes01@gmail.com |
| To | ken.paxton@oag.texas.gov |
| Date | Jun 2, 2026 at 12:57 PM |

---------- Forwarded message ---------
From: **SAVE A LIFE HOMES, LLC SAVE A LIFE HOMES, LLC** <savealifehomes01@gmail.com>
Date: Tue, Jun 2, 2026 at 10:32 AM
Subject: Ken Paxton Attorney General of Texas (1)
To: SAVE A LIFE HOMES, LLC SAVE A LIFE HOMES, LLC <savealifehomes01@gmail.com>

Ken Paxton Attorney Gener...
PDF

Reply Forward

4' afft 2

Exhibit HH

RP-2026-363802
09/04/2026 RP2 $37.00

# NOTICE OF VESTED TITLE

STATE OF TEXAS §
COUNTY OF HARRIS §

TO WHOM IT MAY CONCERN:

COMES NOW Matthew Jamal Jackson, Individually and as Owner of Save A Life Homes, LLC, and files this Notice of Vested Title pursuant to Texas Civil Practice & Remedies Code § 16.030(a). This Notice is recorded to provide constructive notice to all persons of Matthew Jamal Jackson's vested title to the Property described below. *See* Tex. Prop. Code Ann. § 13.001 (West 2025) (providing that a recorded instrument is binding on all parties and provides constructive notice to subsequent purchasers); *Rice v. Pinney*, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.) (holding that recorded instruments affecting title to real property constitute prima facie evidence of the right to possession and that courts must give effect to recorded title instruments in determining property rights).

RP-2026-363802

## I. PROPERTY DESCRIPTION

Parcel Number: 082-564-000-0008

Legal Description: LOT EIGHT (8), BLOCK EIGHT (8), GLENBROOK VALLEY, SECTION THREE (3), HARRIS COUNTY, TEXAS

Common Address: 8230 Glen Valley Dr, Houston, TX 77061

## II. VESTING OF TITLE

On August 22, 2026, Matthew Jamal Jackson's adverse possession title to the Property became FULLY VESTED under Texas Civil Practice & Remedies Code § 16.030(a), which provides:

"If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims. "

Page 1 of 4

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy - Page 1 of 5
Attest: 9/8/2026
**Teneshia Hudspeth, County Clerk**
Harris County, Texas

elizabeth carrington
Elizabeth Anne Carrington Deputy

CON:2654679|RP-2026-363802

COUNTY COURT OF HARRIS COUNTY, TEXAS

"Not only are suits for the recovery of possession barred after the specified time period elapses, but the title vests in the adverse possessor." *Estes v. Leifeste*, No. 03-24-00085-CV, 2025 Tex. App. LEXIS 422, at *9-10 (Tex. App.—Austin Jan. 29, 2025, no pet.). *See also* Tex. Civ. Prac. & Rem. Code Ann. § 16.030(a) (West 2025).

Under § 16.030(a), the estate's claim is now forever barred, and Jackson holds full title precluding all claims by all parties.

**III. COLOR OF TITLE — RECORDED DEED IS PRIMA FACIE EVIDENCE OF TITLE**

Matthew Jamal Jackson holds a recorded Warranty Deed in the Harris County Real Property Records. Under Texas Property Code § 13.001, a recorded instrument such as the Warranty Deed constitutes prima facie evidence of title and provides constructive notice to all parties. *See* Tex. Prop. Code Ann. § 13.001 (West 2025) .

The Dallas Court of Appeals in Rice v. Pinney, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.), recognized that recorded instruments affecting title to real property constitute prima facie evidence of the right to possession and that courts must give effect to recorded title instruments in determining property rights .

The Warranty Deed, even if defective as to the underlying chain of title, constitutes valid color of title for adverse possession purposes. The United States Supreme Court in Wright v. Mattison, 59 U.S. (18 How.) 50, 57-58 (1855), held that even a void or defective deed constitutes valid color of title for adverse possession purposes when the grantee receives it in good faith and without knowledge of any defect. *See also* Tex. Civ. Prac. & Rem. Code Ann. § 16.021 (West 2025) (defining "color of title").

Matthew Jamal Jackson received his deed instruments in good faith, recorded them in the official county property records, and had no knowledge of any defect. *Wright v. Mattison*, 59 U.S. (18 How.) 50, 57-58 (1855).

Good faith is "measured by his intent at the time" the interest is acquired. *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The Warranty Deed is part of the chain of title and charges all subsequent purchasers with constructive notice of Jackson's claim. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) (holding that a purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims); *Hahn v. Love*, 321 S.W.3d at 527 (subsequent purchaser charged with knowledge of facts appearing in the chain of title).

Texas courts have consistently held that color of title refers to a deed purporting to convey title to the possessor, even if that deed does not actually convey any title. *See Phelps v. Pecos Valley Southern Ry. Co.*, 182 S.W. 1156, 1158 (Tex. App. 1916); *Porter v. Wilson*, 371 S.W.2d 611, 613 (Tex. Civ. App.—Beaumont 1963, writ ref'd n.r.e.); *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037 (Tex. 1916).

Page 2 of 4

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy - Page 2 of 5
Attest: 9/8/2026
**Teneshia Hudspeth, County Clerk**
Harris County, Texas

elizabeth carrington
Deputy
Elizabeth Anne Carrington

CON:2654679|RP-2026-363802

COUNTY COURT OF HARRIS COUNTY, TEXAS

RP-2026-363802

RP-2026-363802

## IV. BASIS FOR VESTING

Matthew Jamal Jackson has been in peaceable, open, notorious, hostile, exclusive, and continuous possession of the Property since August 22, 2023, under color of title, as evidenced by the following recorded instruments in the Harris County Real Property Records:

1. Affidavit of Adverse Possession, Instrument No. RP-2025-216266 (Exhibit A);
2. Amended Affidavit of Adverse Possession, Instrument No. RP-2025-312514 (Exhibit B);
3. Warranty Deed (Exhibit C).

The three-year limitations period under Texas Civil Practice & Remedies Code § 16.024 expired on August 22, 2026, and the estate's claim is barred. *See Estes v. Leifeste*, No. 03-24-00085-CV, 2025 Tex. App. LEXIS 422, at *9-10 (Tex. App.—Austin Jan. 29, 2025, no pet.) ("Not only are suits for the recovery of possession barred after the specified time period elapses, but the title vests in the adverse possessor").

## V. EFFECT OF VESTING

Under § 16.030(a), Matthew Jamal Jackson now holds full title to the Property, precluding all claims by all parties, including:

The Estate of Rogelio Villafana Perez;

Its heirs and assigns;

Mayra Amezquita;

Rubi Villafana Perez;

And any other person claiming an interest in the Property.

## VI. NOTICE TO ALL PARTIES

All persons claiming any interest in the Property are hereby notified that:

1. Title to the Property has vested in Matthew Jamal Jackson;
2. The recorded Warranty Deed is prima facie evidence of title under Texas Property Code §13.001 and *Rice v. Pinney*, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.);
3. All claims to the Property are precluded by § 16.030(a);
4. Any attempt to evict or dispossess Matthew Jamal Jackson is unlawful;
5. Any further proceedings challenging title to the Property are barred by limitations.



Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy - Page 3 of 5
Attest: 9/8/2026
**Teneshia Hudspeth, County Clerk**
Harris County, Texas

elizabeth carrington Deputy
Elizabeth Anne Carrington

CON:2654679|RP-2026-363802

COUNTY COURT OF HARRIS COUNTY, TEXAS

### VII. CONCLUSION

Matthew Jamal Jackson has satisfied all elements of adverse possession under Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030. His title became fully vested on August 22, 2026, and precludes all claims by all parties. This Notice is recorded to provide constructive notice to the entire world of Jackson's vested title.

FURTHER AFFIANT SAYETH NOT.

Executed on this 3 day of SeptembeR, 2026.

/s/ Matthew Jamal Jackson
MATTHEW JAMAL JACKSON

AFTER RECORDING MAIL BACK
SAVE A LIFE HOMES, LLC
8230 Glen Valley Dr
Houston, Texas 77061
(646) 588-9376
savealifehomes06@gmail.com

RP-2026-363802

### ACKNOWLEDGMENT

STATE OF TEXAS
COUNTY OF HARRIS

This instrument was acknowledged before me on this 3 day of SeptembeR, 2026, by MATTHEW JAMAL JACKSON, known to me to be the person whose name is subscribed to the foregoing instrument and who acknowledged that he executed the same for the purposes and consideration therein expressed.

NOTARY PUBLIC, STATE OF TEXAS

My Commission Expires: 05-03-2028

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

SYED M. SAJJAD
Notary Public, State of Texas
Comm. Expires 05-03-2028
Notary ID 134884607

Page 4 of 4

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy - Page 4 of 5
Attest: 9/8/2026
**Teneshia Hudspeth, County Clerk**
Harris County, Texas

Elizabeth Anne Carrington Deputy

CON:2654679|RP-2026-363802

COUNTY COURT OF HARRIS COUNTY, TEXAS

FILED FOR RECORD

2:43:07 PM

Friday, September 4, 2026

Teneshia Hudspeth

COUNTY CLERK, HARRIS COUNTY, TEXAS

RP-2026-363802

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris County Texas

Friday, September 4, 2026

Teneshia Hudspeth

COUNTY CLERK
HARRIS COUNTY, TEXAS

COUNTY COURT OF HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy - Page 5 of 5
Attest: 9/8/2026
**Teneshia Hudspeth, County Clerk**
Harris County, Texas

elizabeth carrington ______ Deputy
Elizabeth Anne Carrington

CON:2654679|RP-2026-363802

COUNTY COURT OF HARRIS COUNTY, TEXAS

4
LP
8.00
2

Exhibit II

RP-2026-363799
09/04/2026 RP2 $45.00

RP-2026-363799

**NOTICE OF LIS PENDENS**

THE STATE OF TEXAS
COUNTY OF HARRIS

**Cause No.: 4:25-cv-04354**

NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

TO ALL PERSONS:

Notice is hereby given that there is now pending in the United States District Court for the Southern District of Texas, Houston Division, a civil action styled:

MATTHEW JAMAL JACKSON, Individually and Owner of Save A Life Homes, LLC 20R

Plaintiff

V.

JERRY GARCIA, Constable of Harris County Precinct 2, in his individual and official capacities; JOHN DOE DEPUTY CONSTABLES 1-5, Harris County Precinct 2, in their individual and official capacities; ED GONZALEZ, Sheriff of Harris County, in his individual and official capacities; JOHN DOE DEPUTY SHERIFFS 1-5, Harris County Sheriff's Office, in their individual and official capacities; HARRIS COUNTY, TEXAS; HARRIS COUNTY JUSTICE COURT PRECINCT 2 PLACE 2; MAYRA AMEZQUITA (also known as Mayra Amezquita Villafana), address: 8311 Cayton St, Houston, Texas 77061 and 709 Bluebird Lane, Pasadena, TX 77502; RUBI VILLAFANA PEREZ (also known as Rubi Villafana), address: 8311 Cayton St, Houston, Texas 77061 and 709 Bluebird Lane, Pasadena, TX 77502; MALCOLM D. GIBSON; M.D. GIBSON & ASSOCIATES; JPMORGAN CHASE BANK, NA; SECURE MORTGAGE COMPANY; SECUNDINO VAZQUEZ; CARMEN VILLARREAL; FIDELITY NATIONAL TITLE INSURANCE COMPANY; ROGELIO P. VILLAFANA (DECEASED); VENSON GIBBS; HOUSTON POLICE DEPARTMENT; OFFICER ROBARGE S.M.; OFFICER P.W.; OFFICER RODRIGUEZ PAYAN G; CITY OF HOUSTON; HOUSTON PUBLIC WORKS; RANDY MACCHI, Director of Houston Public Works, in his individual and official capacities; HOUSTON HOUSING AUTHORITY; JAMIE BRYANT, President and CEO of Houston Housing Authority, in her individual and official capacities; ADRIAN HUDSPETH, in his individual and official capacities; J. NOE DIAZ JR., Chief of Police of the Houston Police Department, in his individual and official capacities; STATE OF TEXAS; KEN PAXTON, Attorney General of the State of Texas, in his official capacity only; and ALL UNKNOWN HEIRS 35ee

Defendants

**Cause No.: 4:25-cv-04354**



**Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.**

**A Certified Copy - Page 1 of 5**
**Attest: 9/8/2026**
**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

elizabeth carrington
Elizabeth Anne Carrington **Deputy**

CON:2654679|RP-2026-363799

COUNTY COURT OF HARRIS COUNTY, TEXAS

RP-2026-363799

## PROPERTY SUBJECT TO THE NOTICE

The real property affected by said suit is situated in Harris County, Texas, and is more particularly described as follows

Legal Description: Lot 8, Block 8, Glenbrook Valley Section 3, Harris County, Texas

D

ACCORDING TO THE MAP OR PLAT THEREOF RECORDED

UNDER FILM CODE NO. RP-2025-312514

OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Parcel Number: 0825640000008

Commonly Known as:

8230 Glen Valley Dr, Houston, Texas 77061

## NOTICE TO ALL PARTIES

**Warranty Deed and Affidavit of Adverse Possession recorded under Clerk's File No. RP-2025-216266 and RP-2025-312514,** Official Public Records of Harris County, Texas. The Recording Warranty Deed is prima facie evidence of Title under Texas Property Code 13.001 and Rice v. Pinney, 51 S.W. 3d 705, 713 (Tex. App.-Dallas 2001, no pet.)

The Warranty Deed, even if defective as to the underlying chain of title, constitutes valid color of title for adverse possession purposes. The United States Supreme Court in Wright v. Mattison, 59 U.S.(18 How.) 50, 57-58 (1855), held that even a void or defective deed constitutes valid color of title for adverse possession purposes when the grantee receives it in good faith and without knowledge of any defect. See also Tex.Civ.Prac. & Rem.Code Ann 16.021 (West 2025) (defining "color of title").

Matthew Jamal Jackson received his deed instruments in good faith, recorded them in the official county property records, and had no knowledge of any defect. Wright v. Mattison, 59 U.S (18 How.) 50, 57-58 (1855). **Good Faith is "measured by his intent at the time "the interest is acquired. Hahn v. Love, 321 S.W. 3d 517, 527 (Tex.App.--Houston [1st Dist.]2009, pet.denied).**

Plaintiff's Title fully vested on August 22, 2026. The three-year limitations period under Texas Civil Practice & Remedies Code 16.024 expired on August 22, 2026, and the estate's claim is barred. See Estes v. Leifeste, No. 03-24-00085-CV, 2025 Tex. App. LEXIS 422, at 9-10(Tex.App.-Austin Jan 29, 2025, no pet.)("Not only are suits for the recovery of possession barred after the specified time period elapses, but the title vests in the adverse possessor").



**Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.**

**A Certified Copy - Page 2 of 5**
**Attest: 9/8/2026**
**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

elizabeth carrington Deputy
Elizabeth Anne Carrington

COUNTY COURT OF HARRIS COUNTY, TEXAS

CON:2654679|RP-2026-363799

RP-2026-363799

The Warranty Deed is part of the chain of title and charges all subsequent purchasers with constructive notice of Jackson's claim. See Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982). Texas Courts have consistently held that the color of title refers to a deed purporting to convey title to the possessor, even if that deed does not actually convey any title. See Phelps v. Pecos Valley Southern Ry. Co., 182 S.W. 1156, 1158(Tex.App.1916);Porter v.Wilson, 371 S.W.2d 611,613 (Tex.Civ. App.—Beaumont 1963,writ ref'd n.r.e.);Gilmore v. Waples, 108 Tex.167, 188 S.W. 1037(Tex.1916).

**ALL CLAIMS TO THE PROPERTY ARE PRECLUDED BY TEXAS CIVIL PRACTICE & REMEDIES CODE 16.030(A). Any attempt to evict or dispossess MATTHEW JAMAL JACKSON OR SAVE A LIFE HOMES, LLC is unlawful;**

Any further proceedings challenging title to the Property are barred by limitations.

## PURPOSE OF NOTICE

A subsequent purchaser who enters under a deed purporting to convey absolute title, and who is unaware of a prior vendor's lien, can hold the land adversely because their possession is hostile. This is a form of repudiation by a third party. See Smith v. Pate 91 Tex. 596 (1898)

**Matthew Jamal Jackson has satisfied all elements of adverse possession under Texas Civil Practice & Remedies Code 16.021, 16.024, and 16.030. His title became fully vested on August 22, 2026, and precludes all claims by all parties. This Notice is recorded to provide constructive notice to the entire world of Jackson's vested Title.**

## SUPPORTING LEGAL AUTHORITY

Once a third-party adverse possessor satisfies the statutory elements under Texas Civil Practice & Remedies Code §§ 16.021–16.030, their title becomes vested and paramount, precluding all claims by the original owner, lienholders, and heirs. As established by the Texas Supreme Court in *Smith v. Pate*, 91 Tex. 596, 45 S.W. 6 (Tex. 1898), a third party who enters under a deed purporting to convey absolute title—and who is unaware of a prior vendor's lien—holds possession hostile to the original vendor and their heirs. The court held that "Walker did not receive the title as trustee for Holliday or his estate, but under a claim of title independent of and free from any right of the estate in the land or to a lien upon it for the payment of the purchase money" .

Consequently, when Walker "held the possession and claimed the land in hostility to the claim of the heirs of Holliday, Dulany, who purchased from Walker, never was placed in any relation of trust to the estate of Holliday or his heirs" *Id.* This principle was further reaffirmed in *Gilbough v. Runge*, 99 Tex. 539, 91 S.W. 566 (1906), where the Texas Supreme Court distinguished between a vendee's permissive possession and the hostile possession of a subsequent purchaser who is a stranger to the original vendor's title . Moreover, under § 16.030(a) of the Texas Civil Practice and Remedies Code, once title by adverse possession vests, it operates to "preclude[] all claims," barring even those who hold through a vendor's lien or inheritance . Therefore, Matthew Jamal Jackson's title, having fully vested on August 22, 2026, is paramount and extinguishes all prior claims, including any alleged vendor's lien.



Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy - Page 3 of 5
Attest: 9/8/2026
Teneshia Hudspeth, County Clerk
Harris County, Texas

elizabeth carrington
Elizabeth Anne Carrington Deputy

CON:2654679|RP-2026-363799

COUNTY COURT OF HARRIS COUNTY, TEXAS

This Notice of Lis Pendens is filed pursuant to Texas Property Code 12.007 to provide public notice that the above-described property is the subject of pending litigation affecting title and possession.

All persons are hereby notified that they acquire any interest in said property subject to the outcome of this litigation.

SIGNATURE

Respectfully Submitted,

MATTHEW JAMAL JACKSON

Individually and as Owner of SAVE A LIFE HOMES, LLC

Mailing Address 8230 GLEN VALLEY DR Phone 6465889376

Email: SaveALifeHomes@gmail.com Date: 9/3/2026

**NOTARY ACKNOWLEDGMENT**

**STATE OF TEXAS**
**COUNTY OF HARRIS**

**BEFORE ME, the undersigned authority, on this day personally appeared**

**MATTHEW JAMAL JACKSON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.**

**GIVEN UNDER MY HAND AND SEAL OF OFFICE on this 3 day of September, 2026**

**Notary Public, State of Texas**

**My Commission Expires** 05-03-2028

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

SYED M. SAJJAD
Notary Public, State of Texas
Comm. Expires 05-03-2028
Notary ID 134884507

RP-2026-363799



**Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.**

**A Certified Copy - Page 4 of 5**
**Attest: 9/8/2026**
**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

elizabeth carrington **Deputy**
Elizabeth Anne Carrington

CON:2654679|RP-2026-363799

COUNTY COURT OF HARRIS COUNTY, TEXAS

FILED FOR RECORD

2:43:07 PM

Friday, September 4, 2026

Teneshia Hudspeth

COUNTY CLERK, HARRIS COUNTY, TEXAS

RP-2026-363799

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris County Texas

Friday, September 4, 2026

Teneshia Hudspeth

COUNTY CLERK
HARRIS COUNTY, TEXAS

COUNTY COURT OF HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

**A Certified Copy - Page 5 of 5**
**Attest: 9/8/2026**
**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

elizabeth carrington **Deputy**
Elizabeth Anne Carrington

CON:2654679|RP-2026-363799

COUNTY COURT OF HARRIS COUNTY, TEXAS

MEMORANDUM OF LAW Exhibit JJ

Civil Action No. 4:25-cv-04354

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
TEXAS HOUSTON DIVISION

MATTHEW JAMAL JACKSON, Individually and as Owner of Save A Life Homes, LLC,

Plaintiff,

v.

JERRY GARCIA, Constable of Harris County Precinct 2, in his individual and official capacities; JOHN DOE DEPUTY CONSTABLES 1-5, Harris County Precinct 2, in their individual and official capacities; ED GONZALEZ, Sheriff of Harris County, in his individual and official capacities; JOHN DOE DEPUTY SHERIFFS 1-5, Harris County Sheriff's Office, in their individual and official capacities; HARRIS COUNTY, TEXAS; HARRIS COUNTY JUSTICE COURT PRECINCT 2 PLACE 2; MAYRA AMEZQUITA; RUBI VILLAFANA PEREZ; MALCOLM D. GIBSON; M.D. GIBSON & ASSOCIATES; JPMORGAN CHASE BANK, NA; SECURE MORTGAGE COMPANY; SECUNDINO VAZQUEZ; CARMEN VILLARREAL; FIDELITY NATIONAL TITLE INSURANCE COMPANY; ROGELIO P. VILLAFANA (DECEASED); VENSON GIBBS; HOUSTON POLICE DEPARTMENT; OFFICER ROBARGE S.M.; OFFICER P.W.; OFFICER RODRIGUEZ PAYAN G; CITY OF HOUSTON; HOUSTON PUBLIC WORKS; RANDY MACCHI, Director of Houston Public Works, in his individual and official capacities; HOUSTON HOUSING AUTHORITY; JAMIE BRYANT, President and CEO of Houston Housing Authority, in her individual and official capacities; ADRIAN HUDSPETH, in his individual and official capacities; J. NOE DIAZ JR., Chief of Police of the Houston Police Department, in his individual and official capacities; STATE OF TEXAS; KEN PAXTON, Attorney General of the State of Texas, in his official capacity only; ALAN ROSEN, Constable of Harris County Precinct 1, in his individual and official capacities; ADILIA MIRANDA CARREON, Attorney at Law; MIRANDA CARREON | LAW; and ALL UNKNOWN HEIRS,

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR QUIET TITLE, DECLARATORY JUDGMENT, TRESPASS TO TRY TITLE, TRESPASS, INTERFERENCE WITH PROPERTY, OFFICIAL OPPRESSION, DAMAGES, AND INJUNCTIVE RELIEF

Declaration under penalty of perjury of Mr.Matthew Jamal Jackson, Mr.Matthew Jamal Jackson, being competent to make this declaration and having personal knowledge of the matters stated herein, declares pursuant to 28 U.S.C 1746

## I. INTRODUCTION

Plaintiff Matthew Jamal Jackson, proceeding pro se, respectfully submits this Memorandum of Law in support of his Fourth Amended Complaint. This Memorandum addresses the legal standards governing Plaintiff's claims, the applicable law, and the legal sufficiency of each cause of action. As demonstrated below, Plaintiff has stated facially plausible claims for relief under federal and Texas law, and the documentary record—now before the Court through Exhibits A through Z—satisfies every pleading requirement.

The Fourth Amended Complaint alleges a systematic, multi-level government conspiracy to deprive Plaintiff of his constitutionally protected property rights, utilizing unlawful eviction proceedings, warrantless police entries, utility termination without due process, a retaliatory criminal investigation, and public defamation. Plaintiff's adverse possession rights vested on August 22, 2026, under Texas Civil Practice & Remedies Code § 16.030(a), and Defendants' coordinated efforts to defeat those vested rights constitute violations of the First, Fourth, Fifth, and Fourteenth Amendments, the Ex Post Facto Clause, the Equal Protection Clause, the Fair Housing Act, and the Americans with Disabilities Act.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when it contains sufficient factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). The pleading standard is not a "probability requirement," but requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-57. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (citing *Twombly*, 550 U.S. at 557).

Where a plaintiff proceeds pro se, courts must construe the plaintiff's complaint "liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). This means that the court must interpret a pro se complaint "to raise the strongest arguments that [it] suggest[s]." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, to survive a motion to dismiss, a pro se complaint "must contain sufficient factual allegations to meet the plausibility standard." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) (citing *Harris*, 572 F.3d at 72). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Pleading Requirements for Amended Complaints

A plaintiff may amend a complaint once as a matter of course within twenty-one days after service or within twenty-one days after service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, a plaintiff may amend only with the opposing

party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires. *Id.*

An amended complaint supersedes any prior complaints. *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted). Once a plaintiff files an amended complaint, any previous complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. *See generally* Fed. R. Civ. P. 8. The federal rules contemplate brevity; claims must be set forth in short and plain terms, simply, concisely, and directly. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); Fed. R. Civ. P. 8.

Plaintiff has been granted leave to file this Fourth Amended Complaint pursuant to the Court's May 27, 2026 Hearing Minutes and Order [Doc. #44], which granted Plaintiff leave to file an amended complaint by June 4, 2026. Plaintiff now formally places documentary exhibits before the Court to correct the deficiency identified at the May 27, 2026 conference.

**C. Special Pleading Considerations**

Qualified Immunity Defense: Qualified immunity protects only officials who do not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The warrant requirement, due process requirements, the prohibition on false arrest, and the prohibition on retaliatory prosecution were all clearly established decades before these incidents. The warrant requirement has been clearly established since *Payton v. New York*, 445 U.S. 573 (1980). The right not to be falsely arrested without probable cause is equally well established. The deliberate filing of false police reports is not protected by qualified immunity. *Hope v. Pelzer*, 536 U.S. 730 (2002).

Eleventh Amendment - Ex Parte Young Exception: The State of Texas will assert Eleventh Amendment immunity. That defense does not bar this action because Plaintiff seeks only PROSPECTIVE INJUNCTIVE RELIEF against the Texas Attorney General in his OFFICIAL CAPACITY—not monetary damages from the State. This is precisely the relief authorized by *Ex parte Young*, 209 U.S. 123, 155-56 (1908). The Eleventh Amendment is not a bar to prospective injunctive relief against state officials enforcing unconstitutional laws. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Statute of Limitations - Continuing Violation Doctrine: Section 1983's statute of limitations in Texas is TWO YEARS from the date of the constitutional violation. Every violation alleged occurred in 2025 and continues to the present day—within two years of this filing. The 1981 and 1982 claims carry a FOUR-YEAR statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The Fair Housing Act provides TWO YEARS from the discriminatory practice. 42 U.S.C. § 3613(a). RICO provides FOUR YEARS. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143 (1987). Defendants' ongoing violations constitute a continuing wrong, and the statute of limitations does not bar claims for continuing violations that are still occurring. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002).

Standing: Plaintiff has Article III standing. He has suffered (1) CONCRETE AND PARTICULARIZED INJURY—warrantless entries into his properties, 56-day utility deprivation, unlawful eviction proceedings, criminal dispossession from Arlington Place, denial of housing certification, mental anguish, unconstitutional criminal investigation and prosecution, defamatory public statements, and a second unlawful eviction proceeding; (2) CAUSATION—each injury is directly traceable to specific actions by specific named defendants; and (3) REDRESSABILITY—each injury can be remedied by injunctive relief, compensatory damages, and the other relief requested. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Texas Tort Claims Act Inapplicability: State immunity statutes cannot bar federal civil rights claims. *Howlett v. Rose*, 496 U.S. 356, 383 (1990); *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991); *Martinez v. California*, 444 U.S. 277 (1980). Congress enacted § 1983 specifically to override state immunity.

## III. STATEMENT OF FACTS

### A. Plaintiff's Adverse Possession Claims

Plaintiff Matthew Jamal Jackson is an African-American man with disabilities. On August 22, 2023, Plaintiff entered peaceable possession of the property located at 8230 Glen Valley Dr, Houston, Texas 77061 (Parcel #: 082-564-000-0008). Plaintiff has filed an Affidavit of Adverse Possession RP-2025-216266 (Exhibit A), Amended Affidavit of

Adverse Possession RP-2025-312514 (Exhibit B), and a Warranty Deed (Exhibit C) in the real property records of Harris County, Texas, reflecting a claim of right. The Warranty Deed, even if defective as to the underlying chain of title, constitutes valid color of title for adverse possession purposes. *See Wright v. Mattison*, 59 U.S. (18 How.) 50, 57-58 (1855).

Plaintiff maintains adverse possession of additional properties: Arlington Place Apartment Complex, 116 East Edgebrook Drive, Houston, Texas 77034 (Exhibits N, O), and Prairie Walk, 11415 Prairie Walk Dr, Houston, Texas (Exhibits L, M).

Plaintiff's adverse possession claims at all properties satisfy every element of Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030: (1) OPEN—Plaintiff's possession has been visible and unconcealed; (2) NOTORIOUS—neighbors, police, utility companies, and the Justice Court all have knowledge of Plaintiff's possession; (3) HOSTILE—Plaintiff's possession is without permission from and adverse to the interests of any prior owner; (4) EXCLUSIVE—Plaintiff has maintained exclusive control; (5) CONTINUOUS—Plaintiff has maintained uninterrupted possession since August 22, 2023; (6) COLOR OF TITLE—Plaintiff holds recorded Warranty Deeds and Affidavits of Adverse Possession for each property; and (7) ABANDONED AND FORECLOSED PROPERTIES—the Glen Valley property was abandoned for over six years and the Arlington Place complex was foreclosed and abandoned before Plaintiff established possession.

Plaintiff's title vested on August 22, 2026, under Texas Civil Practice & Remedies Code § 16.030(a).

**B. Private Defendants' Interference**

On July 24, 2025, Defendant Mayra Amezquita unlawfully trespassed onto the Property, broke the water meter, and contacted Houston Public Works to falsely claim ownership. (Exhibit I.) On multiple occasions, Defendants broke windows, changed locks, and entered the property without any court order or legal process. Plaintiff has filed police reports documenting Defendants' criminal conduct. (Exhibits G, I.)

**C. Government Utility Conspiracy - Houston Public Works**

Based on Defendant Amezquita's misrepresentations, Houston Public Works unlawfully transferred water service from Plaintiff's name to Defendant Amezquita's name effective July 24, 2025, depriving Plaintiff of essential utilities for approximately 56 days without due process. Houston Public Works failed to verify Amezquita's claimed ownership, provide Plaintiff with notice and an opportunity to be heard, and conduct a proper investigation despite Plaintiff's recorded property documents. Service was restored on September 18, 2025. (Exhibits S, X.)

**D. First Unlawful Eviction Proceeding (Dismissed)**

On or about August 27, 2025, deputies from the Sheriff's Office and/or Constable's Office posted an eviction notice on Plaintiff's door without proper due process or investigation. The eviction proceeding (Case No. 252100341228, *Mayra Amezquita v. Matthew Jackson*) was DISMISSED on September 15, 2025, for LACK OF JURISDICTION. The Justice Court found it had NO JURISDICTION over the eviction proceeding. (Exhibit H.)

**E. Second Unlawful Eviction Proceeding - Fraud Upon the Court**

On August 20, 2026, Defendants Rubi Villafana (as Dependent Administrator of the Estate of Rogelio Villafana Perez) and her attorney Adilia Miranda Carreon filed a SECOND eviction proceeding against Plaintiff in Harris County Justice Court Precinct 2 Place 2, Case No. 262100368880. The Original Petition for Eviction contains false allegations that Plaintiff "forcibly entered" and "broke into" the property, when in fact Plaintiff lawfully entered and holds recorded adverse possession instruments. (Exhibits BB, CC.)

This second proceeding is barred by res judicata and collateral estoppel. A dismissal for lack of jurisdiction is a final judgment on the merits for res judicata purposes. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986).

**F. Police Misconduct - Prairie Walk**

On August 23, 2025, HPD Officers Robarge S.M. and Officer P.W. unlawfully entered Plaintiff's adverse possession property at 11415 Prairie Walk Dr without warrant, probable cause, or exigent circumstances. The officers drew firearms on Larry Henson, a

US military veteran lawfully present, detained him for approximately two hours, told him Plaintiff was "committing a scam" and "adverse possession is not a law," and filed a false police report categorizing the incident as "Investigation Forgery/Fraud/Counterfeit." (Exhibit E, Q.)

On August 31, 2025, Officer Rodriguez Payan G responded to a call Plaintiff made regarding criminal trespassing. Officer Rodriguez placed veteran Larry Henson in handcuffs for lawful presence on Plaintiff's property, detained him, and released him without charges. Officer Rodriguez filed a false police report falsely stating "Ashlee Alexius Holmes made the call" when Plaintiff made the call. (Exhibit F.)

**G. Defamatory Public Statements - Constable Alan Rosen**

On July 8, 2026, Constable Alan Rosen gave a public press conference in which he made defamatory statements about Plaintiff, including: "There's a history of this with this individual"; "This person does feel like they know the law, but unfortunately they don't"; "This person has been dealt with in this space before"; statements implying Plaintiff is a criminal and has committed crimes; and statements linking Plaintiff to "high profile homicide cases." These statements were published in the Houston Chronicle. (Exhibit FF.)

**H. Unconstitutional Criminal Investigation**

The City of Houston's August 18, 2026 Supplemental Notice of Parallel Criminal Investigation (Doc. 80-1) confirms that Plaintiff "is currently the subject of a criminal investigation" and "the conduct under criminal investigation is alleged to be substantially similar to the conduct at issue in this civil action." This is direct evidence of unconstitutional retaliation for filing this lawsuit. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

**I. Houston Housing Authority Retaliation**

After Plaintiff attended the required Houston Housing Authority Landlord Orientation meeting and completed all requirements, HHA official Adrian Hudspeth refused to provide Plaintiff's completion certificate despite multiple requests via email and text. (Exhibits Y, 160-164.)

**IV. LEGAL ARGUMENT**

**COUNT 1: QUIET TITLE**

(Tex. Civ. Prac. & Rem. Code §§ 16.021, 16.024, 16.030)

A suit to quiet title "is an equitable action to remove a cloud from the title to property." *See generally* Tex. Jur. Pl. & Pr. Forms § 14:9 (2d ed.) (November 2025 Update). To prevail, a plaintiff must prove "superior title" to the property at issue.

Plaintiff has superior title to the Property through adverse possession. Under Texas Civil Practice & Remedies Code § 16.024, a person who holds "a registered deed or other memorandum of title" that appears to convey title to the property may acquire title by adverse possession after three years. The statute does not require that the deed be free from defects. A deed that appears regular on its face and purports to convey title satisfies the color of title requirement even if underlying title is clouded.

Under § 16.030(a), "If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims." Plaintiff's title vested on August 22, 2026.

Texas courts have consistently held that color of title refers to a deed purporting to convey title to the possessor, even if that deed does not actually convey any title. *See Phelps v. Pecos Valley Southern Ry. Co.*, 182 S.W. 1156, 1158 (Tex. App. 1916); *Porter v. Wilson*, 371 S.W.2d 611, 613 (Tex. Civ. App.—Beaumont 1963, writ ref'd n.r.e.); *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037 (Tex. 1916).

A recorded interest provides constructive notice; negligent ignorance has the same effect as actual knowledge. *425 Soledad, Ltd. v. CRVI Riverwalk Hospitality, LLC*, 709 S.W.3d

551 (Tex. 2024). Recording an instrument in the deed records provides constructive notice to all subsequent parties. *Davis v. Howe*, 213 S.W. 609, 610 (Tex. Comm'n App. 1919).

Plaintiff has satisfied every element of adverse possession. The Court should quiet title in Plaintiff's favor.

**COUNT 2: TRESPASS TO TRY TITLE**

(Tex. Prop. Code § 22.001)

A trespass to try title action is the "method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001. Plaintiff asserts superior right to possession and title under adverse possession, color of title, peaceable possession, and fully vested title against all claiming Defendants. Plaintiff is entitled to judgment awarding possession and title.

*See also Couch v. The Bank of New York Mellon*, No. 4:24-cv-00085, 2024 WL 2307935 (N.D. Tex. Feb. 27, 2024) (denying motion to dismiss adverse possession claim and granting TRO). In *Couch*, the court held that plaintiffs stated a facially plausible claim to quiet title where they were sole, visible, peaceable, and continuous possessors of property for more than two decades. The court found plaintiffs were substantially likely to prevail on their adverse possession claim.

**COUNT 3: DECLARATORY JUDGMENT**

(Tex. Civ. Prac. & Rem. Code § 37.004; 28 U.S.C. § 2201)

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

Plaintiff seeks a declaration of rights regarding the Property, including recognition of Plaintiff's peaceable possession and right to exclude others, and a declaration that SB 38 and SB 1333 are unconstitutional as applied to Plaintiff. An actual controversy exists between Plaintiff and Defendants regarding title and possession. A declaratory judgment will resolve these disputed rights and remove the cloud on Plaintiff's title. *See* Tex. Civ. Prac. & Rem. Code § 37.004.

**COUNT 4: TRESPASS & INTERFERENCE WITH PROPERTY**

Defendants' unlawful entry, vandalism, lock tampering, and threats constitute trespass and interference with Plaintiff's property rights. Under Texas law, a trespass occurs when a person enters another's property without consent. *See, e.g.,* Tex. Prop. Code § 75.001. Plaintiff is entitled to damages and injunctive relief for Defendants' ongoing trespass and interference.

**COUNT 5: FEDERAL CIVIL RIGHTS VIOLATIONS**

(42 U.S.C. §§ 1983 & 1985)

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove: (1) the defendant was a person acting under color of state law; and (2) the conduct deprived plaintiff of a federally protected right. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1985(3) provides a cause of action for conspiracy to deprive any person of the equal protection of the laws. 42 U.S.C. § 1985(3). To establish a § 1985(3) claim, a plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving any person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) injury to

person or property or deprivation of a right. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).

The evidence demonstrates that all Government Defendants acted under color of state law and deprived Plaintiff of clearly established constitutional rights. Plaintiff's Fourth Amended Complaint alleges specific dates, specific officer names, specific police report numbers, specific incidents, and specific constitutional violations.

Individual Liability: The individual defendants—Officer Robarge S.M., Officer P.W., Officer Rodriguez Payan G, Jerry Garcia, Ed Gonzalez, Randy Macchi, Jamie Bryant, Adrian Hudspeth, J. Noe Diaz Jr., and Alan Rosen—are each specifically identified and alleged to have directly participated in constitutional violations. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (establishing municipal liability); *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991) (individual capacity suits).

Municipal Liability (Monell): Harris County, the City of Houston, and the State of Texas are named as *Monell* defendants. Under *Monell*, a municipality may be liable under § 1983 for constitutional violations resulting from a policy, custom, or practice. 436 U.S. at 694. Plaintiff has alleged that Harris County and the City of Houston maintained policies, customs, and practices that caused the constitutional violations, including failure to train law enforcement on adverse possession law, failure to investigate recorded property claims, and retaliatory criminal investigations.

Supervisory Liability: Supervisors may be liable under § 1983 when their "failure to train" or "deliberate indifference" causes constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 385-88 (1989). Plaintiff has alleged that Constable Garcia, Sheriff Gonzalez, Chief Diaz, Director Macchi, and CEO Bryant were aware of and ratified the constitutional violations, and that their failures to train subordinates caused the violations.

**COUNT 6: CONSTITUTIONAL VIOLATIONS**

First Amendment: Plaintiff's right to petition the government for redress of grievances was violated when Defendants retaliated against him for filing this lawsuit. The criminal investigation, eviction proceedings, and HHA retaliation all constitute First Amendment retaliation. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Fourth Amendment: Plaintiff's right to be free from unreasonable searches and seizures was violated by warrantless entries into his homes and false arrests without probable

cause. *Payton v. New York*, 445 U.S. 573, 585-86 (1980); *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).

Fifth Amendment: Plaintiff's property rights were deprived without due process. The Ex Post Facto Clause prohibits application of SB 38 and SB 1333 to Plaintiff's pre-existing rights. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994); *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998).

Fourteenth Amendment: Plaintiff's due process and equal protection rights were violated. Plaintiff's reputation was damaged without due process. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); *Paul v. Davis*, 424 U.S. 693 (1976). Racial discrimination violates the Equal Protection Clause. *Washington v. Davis*, 426 U.S. 229, 238-42 (1976); *Village of Arlington Heights*, 429 U.S. 252 (1977). Commerce Clause: Interference with Plaintiff's interstate housing business operations violates the Commerce Clause.

## COUNT 7: PERMANENT INJUNCTIVE RELIEF

Plaintiff seeks PERMANENT injunctions IN PERPETUITY prohibiting all Government Defendants from interfering with Plaintiff's adverse possession rights nationwide, binding all current officials and successors.

To obtain a permanent injunction, a plaintiff must show: (1) success on the merits; (2) irreparable injury; (3) inadequacy of legal remedies; (4) balance of hardships favors plaintiff; and (5) public interest favors injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Winter v. NRDC*, 555 U.S. 7, 22 (2008).

Plaintiff has met all elements. His constitutional rights were violated. Irreparable harm exists. Legal remedies are inadequate because state actors are themselves participants in constitutional violations. The balance of hardships favors Plaintiff because Defendants suffer no cognizable hardship from being required to comply with the Constitution. The public interest favors protecting constitutional rights.

## COUNT 8: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Government Defendants' coordinated conspiracy constitutes extreme and outrageous conduct causing severe emotional distress. Under Texas law, intentional infliction of emotional distress requires: (1) extreme and outrageous conduct; (2) intent to cause

distress; (3) causation; and (4) severe distress. *See, e.g., Brawner v. Regents of Univ. of Texas*, No. 4:21-cv-00736, 2022 WL 1906962 (N.D. Tex. May 2, 2022).

Plaintiff has suffered severe mental anguish and emotional distress, including constant fear of arrest, anxiety, stress, sleep deprivation, depression, fear of retaliation, physical manifestations, and humiliation. These are compensable damages under § 1983. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986).

**COUNT 9: POLICY AND PROCEDURE VIOLATIONS UNDER COLOR OF LAW**

All Government Defendants violated their own policies while acting under color of law, demonstrating systemic failures requiring injunctive relief. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "Only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

**COUNT 10: ADA VIOLATIONS**

(42 U.S.C. § 12101 et seq.)

Plaintiff is an individual with disabilities as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff suffers from multiple physical and mental impairments that substantially limit one or more major life activities, including ptosis of the bilateral eyelids, prior ankle fracture, herniated disc, diabetes mellitus, hypertension, major depressive disorder, PTSD, and anxiety disorder. (Fourth Am. Compl. ¶¶ O-1 to O-8.)

Title II of the ADA prohibits public entities from discriminating against qualified individuals with disabilities. 42 U.S.C. § 12132. Government Defendants discriminated against Plaintiff based on disability in the provision of public services. Plaintiff is entitled to reasonable accommodations and equal access to government services. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004); *Olmstead v. L.C.*, 527 U.S. 581, 597 (1999); *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

**COUNT 11: FAIR HOUSING ACT VIOLATIONS**

(42 U.S.C. § 3601 et seq.)

The Fair Housing Act ("FHA") prohibits discrimination in housing on the basis of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604. Section 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by the FHA. 42 U.S.C. § 3617.

Plaintiff has been subjected to discriminatory housing practices and interference with his housing business. Plaintiff's race was a motivating factor in Defendants' conduct. *See Texas Dep't of Housing v. Inclusive Communities Project*, 576 U.S. 519, 540-41 (2015) (FHA disparate impact). The coordinated government action denied Plaintiff the equal right to hold his adverse possession property on the same terms extended to white property owners with the same recorded instruments.

**COUNT 12: RICO VIOLATIONS**

(18 U.S.C. § 1961 et seq.)

The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides a private civil action for treble damages. 18 U.S.C. § 1964(c). To establish a civil RICO claim, a plaintiff must prove: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Government Defendants constitute a racketeering enterprise engaged in a pattern of racketeering activity. The coordinated conspiracy across five levels of government—federal, state, county, municipal, and criminal investigation—demonstrates a pattern of racketeering activity. Plaintiff is entitled to treble damages under 18 U.S.C. § 1964(c).

**COUNT 13: CIVIL RIGHTS ACT VIOLATIONS**

Defendants violated Plaintiff's civil rights through discrimination in public accommodations and services.

**COUNT 14: CONSUMER PROTECTION ACT VIOLATIONS**

Defendants engaged in deceptive trade practices including false advertising and unfair competition.

**COUNT 15: THIRTEENTH AMENDMENT VIOLATIONS**

The government conspiracy forced Plaintiff into economic servitude, violating the Thirteenth Amendment.

**COUNT 16: INTERSTATE COMMERCE CLAUSE VIOLATIONS**

Defendants interfered with Plaintiff's interstate housing business operations, violating the Commerce Clause.

**COUNT 17: RETALIATION**

(42 U.S.C. § 1983; First and Fourteenth Amendments; FHA § 3617; ADA § 12203)

All Government Defendants retaliated against Plaintiff for exercising constitutional rights, including filing federal lawsuits, recording adverse possession claims, participating in federal housing programs, petitioning government for redress, and filing this federal civil rights action—which directly resulted in the unconstitutional criminal investigation. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

## COUNT 18: EQUAL PROTECTION / § 1983 - RACIAL DISCRIMINATION

Government Defendants applied Texas property law, utility service policies, police protocols, and housing program administration in a racially discriminatory manner. But for Plaintiff's race, Defendants would not have bypassed warrant requirements, notice requirements, and ownership verification; classified lawful adverse possession as criminal fraud; or coordinated across five government levels to deprive him of property rights Texas law grants equally to all citizens. *Washington v. Davis*, 426 U.S. 229, 238-42 (1976); *Village of Arlington Heights*, 429 U.S. 252 (1977).

## COUNT 19: 42 U.S.C. § 1981 - EQUAL RIGHT TO ENFORCE CONTRACTS

Section 1981 provides a direct private right of action. No EEOC complaint, exhaustion, or pre-suit letter is required. *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975). Plaintiff has been denied the same right to make and enforce his recorded property instruments enjoyed by white citizens. His Warranty Deed and Affidavits were ignored by government actors who honored an unverified competing claim instead. *Comcast Corp. v. NAACP*, 589 U.S. 327 (2020).

## COUNT 20: 42 U.S.C. § 1982 - EQUAL RIGHT TO HOLD PROPERTY

Section 1982 provides a direct private right of action. No exhaustion is required. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413-14 (1968). All citizens have the same right as white citizens to hold and convey real property. The coordinated government action denied Plaintiff the equal right to hold his adverse possession property on the same terms extended to white property owners with the same recorded instruments.

## COUNT 21: FAIR HOUSING ACT § 3604 - RACIAL HOUSING DISCRIMINATION

Private FHA plaintiffs file directly in federal court within two years. No HUD complaint is required. 42 U.S.C. § 3613(a). Defendants discriminated against Plaintiff in the terms and conditions of his dwelling at 8230 Glen Valley Drive because of his race. SB 38 and

SB 1333's expedited eviction procedures also have a racially disparate impact on Black adverse possession claimants. *Texas Dep't of Housing v. Inclusive Communities Project*, 576 U.S. 519, 540-41 (2015).

**COUNT 22: 42 U.S.C. § 1985(3) - RACIALLY MOTIVATED CONSPIRACY**

Direct private right of action. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). The five-level coordinated government conspiracy, combined with racial discriminatory intent evidenced by the *Arlington Heights* factors, constitutes a § 1985(3) racially motivated conspiracy to deprive Plaintiff of equal protection of the laws.

**COUNT 23: OFFICIAL OPPRESSION UNDER COLOR OF LAW**

(Texas Penal Code § 39.03; 42 U.S.C. § 1983)

Texas Penal Code § 39.03 defines official oppression as a public servant acting under color of office who: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; or (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful. Tex. Penal Code § 39.03(a).

A public servant acts under color of office if he "acts or purports to act in an official capacity or takes advantage of such actual or purported capacity." Tex. Penal Code § 39.03(b). Official oppression constitutes a Class A misdemeanor, or a felony of the third degree if the public servant acted with intent to impair the accuracy of data reported to the Texas Education Agency. Tex. Penal Code § 39.03(d). *See also* S.B. No. 1774 (89th Leg., eff. Sept. 1, 2025) (increasing criminal penalties for official oppression).

All Government Defendants committed official oppression against Plaintiff. Official oppression independently supports civil liability under 42 U.S.C. § 1983. *See Ratliff v. State*, No. PD-0545-20 (Tex. Crim. App. 2022) (official oppression requires that defendant "know" the conduct is unlawful).

**COUNT 24: UNCONSTITUTIONAL CRIMINAL INVESTIGATION AND RETALIATORY PROSECUTION**

(First Amendment; Fourteenth Amendment; 42 U.S.C. § 1983)

The City of Houston's August 18, 2026 Supplemental Notice of Parallel Criminal Investigation (Doc. 80-1) confirms that Plaintiff is being subjected to a criminal investigation for the same conduct at issue in this civil action, in retaliation for exercising his constitutional rights.

To establish a claim for retaliatory prosecution, Plaintiff must show: (1) he engaged in constitutionally protected conduct; (2) the City's actions were motivated by and substantially caused by that conduct; and (3) the City's actions caused injury to Plaintiff. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). The evidence demonstrates all elements.

This Court has the inherent authority and obligation to protect its proceedings from abuse and to prevent the criminal justice system from being used as a weapon against civil rights litigants. *Dombrowski v. Pfister*, 380 U.S. 479, 485-86 (1965). *Younger* abstention does not apply because the investigation is not a pending state prosecution, was initiated in bad faith, and violates the Ex Post Facto Clause. *Younger v. Harris*, 401 U.S. 37, 46-47 (1971).

**COUNT 25: DEFAMATION AND DEFAMATION PER SE**

(Texas Common Law; 42 U.S.C. § 1983)

On July 8, 2026, Constable Alan Rosen made false and defamatory statements about Plaintiff in a public press conference, as reported by the Houston Chronicle and widely published. (Exhibit FF.)

Defamation per se includes statements that impute criminal conduct or lack of integrity in business or profession. *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). Public officials can be liable for defamation if they make false statements with malice. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Government officials are not immune from defamation claims for false statements made with malice. *Brownving v. Steed*, No. 05-14-00150-CV, 2015 WL 4999902 (Tex. App.—Dallas Aug. 20, 2015).

Constable Rosen made the statements with knowledge of their falsity or reckless disregard for the truth. The statements were published to the media and widely disseminated. Plaintiff has suffered damage to reputation, prejudice in the community, interference with his housing business, emotional distress and mental anguish, economic damages, and loss of business opportunities.

**COUNT 26: FRAUD UPON THE COURT AND ABUSE OF PROCESS**

(42 U.S.C. § 1983; Texas Common Law)

Fraud upon the court occurs when an officer of the court "intentionally misleads the court" and "the misrepresentation or fraud is central to the claim." *Mitchell v. Occidental Fire & Cas. Co.*, 570 F. App'x 788, 792 (10th Cir. 2014). Courts have inherent power to sanction fraud upon the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Fraud upon the court is a wrong against the judicial system itself. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

Defendants Rubi Villafana and her attorney Adilia Miranda Carreon committed fraud upon the court by filing a false Original Petition for Eviction containing false allegations that Plaintiff "forcibly entered" and "broke into" the property. The Defendants knew or should have known the allegations were false because Plaintiff holds recorded adverse possession instruments and the first eviction proceeding was dismissed for lack of jurisdiction. This conduct also constitutes abuse of process. *TEXACO v. Pennzoil*, 784 S.W.2d 483, 488-89 (Tex. App.—Houston [1st Dist.] 1989).

**COUNT 27: CONTINUING VIOLATIONS**

Defendants' actions constitute a continuing wrong and continuing violations of Plaintiff's constitutional and statutory rights. The violations are ongoing and have not ceased. The statute of limitations does not bar claims for continuing violations that are still occurring. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002); *Heckler v. Mathews*, 465 U.S. 728, 738-39 (1984).

## V. INJUNCTIVE RELIEF

### A. Legal Standard for Injunctive Relief

Courts consider: (1) likelihood of success on the merits; (2) irreparable harm if injunction not granted; (3) balance of harms; and (4) public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Plaintiff is entitled to both temporary and permanent injunctive relief.

### B. Likelihood of Success on the Merits

Plaintiff meets all elements of adverse possession under Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030 and has now obtained FULL VESTED TITLE under Texas Civil Practice & Remedies Code § 16.030(a). Clear constitutional violations by multiple government entities across all five levels are documented in the evidence now before the Court (Exhibits A-Z). *See Couch v. The Bank of New York Mellon*, No. 4:24-cv-00085, 2024 WL 2307935 (N.D. Tex. Feb. 27, 2024) (plaintiffs substantially likely to prevail on adverse possession claim; TRO granted).

### C. Irreparable Harm

Plaintiff faces ongoing constitutional violations including further arrests, evictions, utility interference, warrantless searches, systematic targeting for exercising constitutional property rights, ongoing criminal investigation and potential prosecution, defamation continuing to damage his reputation, and an ongoing second eviction proceeding. State remedies are inadequate because state actors are themselves participants in constitutional violations. Only federal court intervention can protect constitutional rights from this systematic, multi-jurisdictional conspiracy.

Property rights vested on August 22, 2026, under Texas Civil Practice & Remedies Code § 16.030(a). Any eviction after vesting permanently extinguishes property rights that have been accruing for over three years. Once possession is lost, the title cannot be restored. This harm is per se irreparable.

Constitutional violations are ongoing: The deprivation of constitutional rights constitutes irreparable harm per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The ongoing criminal investigation, defamatory statements, and second eviction proceeding also constitute irreparable harm because they chill Plaintiff's exercise of constitutional rights, damage his reputation, threaten his liberty, and interfere with his property rights.

**D. Balance of Harms Favors Plaintiff**

Defendants suffer no cognizable hardship from being required to comply with the Constitution. Requiring the Constable to investigate recorded instruments before posting eviction notices, requiring HPD to obtain warrants before entering property, requiring Public Works to provide notice before terminating utilities, requiring the City of Houston to cease its unconstitutional criminal investigation, requiring Constable Alan Rosen to cease making defamatory statements, and enjoining the second eviction proceeding—these are constitutional requirements that already bind every government defendant. No new burden is imposed. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012).

**E. Public Interest Favors Injunction**

The public interest favors protecting constitutional rights, ensuring equal protection, and preventing abuse of the criminal justice system and court process. *See Dombrowski v. Pfister*, 380 U.S. 479, 485-86 (1965) (federal courts may enjoin state criminal prosecutions brought in bad faith for purposes of harassment).

## VI. CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Quiet title and award clear, marketable title to the Property to Plaintiff based on full vesting of title under Texas Civil Practice & Remedies Code § 16.030(a).
2. Award possession of the Property to Plaintiff with exclusive right of occupancy.
3. Cancel and remove as clouds on title all adverse claims.
4. Award damages, costs, and attorney's fees as allowed by law.
5. Issue PERMANENT INJUNCTIONS IN PERPETUITY prohibiting all Government Defendants and law enforcement agencies nationwide from:

Arresting, detaining, or prosecuting Plaintiff for adverse possession activities on any US property

Evicting Plaintiff from adverse possession properties without constitutional due process

Interfering with utilities, mail, or services on adverse possession properties

Applying SB 38/SB 1333 or similar laws to any of Plaintiff's adverse possession claims

Retaliating against Plaintiff for exercising constitutional rights

Coordinating with private parties to circumvent constitutional due process

Excluding Plaintiff from federal housing programs

Changing locks or preventing access to adverse possession properties

Filing false police reports regarding Plaintiff's adverse possession activities

Initiating or pursuing criminal investigations or prosecutions against Plaintiff for his lawful adverse possession activities

Filing eviction proceedings against Plaintiff after prior dismissal for lack of jurisdiction

Said injunctions shall remain in effect permanently and bind all successors in office, future legislation, and any government entities created hereafter.

6. ORDER IMMEDIATE RESTORATION to Arlington Place, Apartment 116, with lock replacement and return of all personal property.

7. Award compensatory and punitive damages against Government Defendants under 42 U.S.C. § 1983.
8. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988.
9. Issue declaratory judgment that application of SB 38/SB 1333 to pre-existing claims violates the Ex Post Facto Clause.
10. Issue Nationwide Declaratory Judgment that:

    Plaintiff has a constitutional right to exercise adverse possession on any US property under Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030

    Law enforcement cannot arrest/prosecute solely for lawful adverse possession

    Government cannot apply expedited eviction procedures without due process

    Federal agencies cannot exclude from programs in retaliation

    Plaintiff's adverse possession activities constitute protected constitutional conduct

    The City of Houston's criminal investigation of Plaintiff constitutes unconstitutional retaliation and violates the First and Fourteenth Amendments

    The second eviction proceeding (Case No. 262100368880) constitutes fraud upon the court and abuse of process

11. Evidence Preservation: Order Harris County Justice Court to preserve all recordings, transcripts, and notes from September 15, 2025, and August 20, 2026, proceedings and order immediate production to Plaintiff. Order HPD to preserve body camera footage from August 23 and 31, 2025. Order the City of Houston to preserve all documents, communications, and records relating to the criminal investigation of Plaintiff. Order the Harris County Justice Court to preserve all records relating to Case Nos. 252100341228 and 262100368880.
12. Award substantial compensatory damages for mental anguish, lost business income, economic damages, and interference with interstate commerce.
13. Award punitive damages for willful, malicious, coordinated constitutional violations.
14. Award treble damages for unprecedented five-level government conspiracy under 18 U.S.C. § 1964(c).
15. Award racial discrimination damages under 42 U.S.C. §§ 1981 and 1982; Fair Housing Act damages; and full restoration and compensation for Arlington Place.
16. Award Plaintiff damages in an amount to be determined by the jury at trial, which Plaintiff believes will exceed $5,000,000 based on the nature, duration, and severity of the constitutional violations, racial discrimination, RICO enterprise activity, and property deprivations alleged herein.
17. ORDER that the City of Houston immediately cease and desist the unconstitutional criminal investigation of Plaintiff, and enjoin the City from initiating any criminal prosecution against Plaintiff for his lawful adverse possession activities.
18. ORDER that the Defendants (Rubi Villafana and Adilia Miranda Carreon) shall immediately dismiss the second eviction proceeding (Case No. 262100368880) with prejudice.
19. ORDER that the Harris County Justice Court Precinct 2 Place 2 shall not accept any further eviction filings against Plaintiff based on the same claims.
20. ORDER that Constable Alan Rosen shall cease and desist from making further defamatory statements about Plaintiff.
21. ORDER that Constable Alan Rosen shall issue a public retraction of his defamatory statements.
22. ORDER sanctions against Attorney Adilia Miranda Carreon and Miranda Carreon | Law for fraud upon the court.

23. ORDER that Attorney Adilia Miranda Carreon and Miranda Carreon | Law shall pay Plaintiff's costs and fees incurred in defending against the second eviction proceeding.
24. Grant such other legal or equitable relief the Court deems proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/2/2026

Respectfully submitted,

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson
Individually & as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr
Houston, TX 77061
Email: savealifemones06@gmail.com / infosupport@savealifemones.com
Phone: 1-800-985-9144 / Cell 646-588-9376
*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Memorandum of Law in Support of Plaintiff's Fourth Amended Complaint has been served upon all Defendants in accordance with the Federal Rules of Civil Procedure on this 31st day of August, 2026.

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson

**Jonathan Jay Cunningham**
Fidelity National Law Group
6900 Dallas Parkway Suite 610 Plano, TX 75024
972-812-6545 Fax: 972-812-9408 Email: jonathan.cunningham@fnf.com
*LEAD ATTORNEY ATTORNEY TO BE NOTICED*

**Emily Harding Owen**
Carrington, Coleman, Sloman, & Blumenthal, L.L.P.
2200 Ross Ave.
Suite 1800
Dallas, TX 75201
214-855-3033
Email: eowen@ccsb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Garrett Sassaman**
Jackson Lewis P.C.
500 N. Akard Street
Suite 2500
Dallas, TX 75201
972-728-3276
Email: justin.sassaman@oag.texas.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Carroll Butt**
Harris County Attorney's Office
1019 Congress

Houston, TX 77002
713-274-5133
Email: james.butt@harriscountytx.gov
*LEAD ATTORNEY ATTORNEY TO BE NOTICED*
**Michelle Charlene Taylor**
City of Houston
900 Bagby St.
3rd Floor
Houston, TX 77002
832-393-6248
Email: michelle.taylor2@houstontx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natoya Cassie Nicola Inglis**
The City of Houston
General Litigation
900 Bagby
4th Floor
Houston, TX 77002
832-393-6415
Email: natoya.inglis@houstontx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric A Laskowski**
COH Legal Department
900 Bagby, 4th Floor
Houston, TX 77002
832-393-6475
Email: eric.laskowski@houstontx.gov
*ATTORNEY TO BE NOTICED*

Exhibit KK

AFFIDAVIT OF MATTHEW JACKSON

Civil Action No. 4:25-cv-04354

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
TEXAS HOUSTON DIVISION

MATTHEW JAMAL JACKSON, Individually and as Owner of Save A Life Homes, LLC,

Plaintiff,

v.

JERRY GARCIA, Constable of Harris County Precinct 2, in his individual and official capacities; JOHN DOE DEPUTY CONSTABLES 1-5, Harris County Precinct 2, in their individual and official capacities; ED GONZALEZ, Sheriff of Harris County, in his individual and official capacities; JOHN DOE DEPUTY SHERIFFS 1-5, Harris County Sheriff's Office, in their individual and official capacities; HARRIS COUNTY, TEXAS; HARRIS COUNTY JUSTICE COURT PRECINCT 2 PLACE 2; MAYRA AMEZQUITA; RUBI VILLAFANA PEREZ; MALCOLM D. GIBSON; M.D. GIBSON & ASSOCIATES; JPMORGAN CHASE BANK, NA; SECURE MORTGAGE COMPANY; SECUNDINO VAZQUEZ; CARMEN VILLARREAL; FIDELITY NATIONAL TITLE INSURANCE COMPANY; ROGELIO P. VILLAFANA (DECEASED); VENSON GIBBS; HOUSTON POLICE DEPARTMENT; OFFICER ROBARGE S.M.; OFFICER P.W.; OFFICER RODRIGUEZ PAYAN G; CITY OF HOUSTON; HOUSTON PUBLIC WORKS; RANDY MACCHI, Director of Houston Public Works, in his individual and official capacities; HOUSTON HOUSING AUTHORITY; JAMIE BRYANT, President and CEO of Houston Housing Authority, in her individual and official capacities; ADRIAN HUDSPETH, in his individual and official capacities; J. NOE DIAZ JR., Chief of Police of the Houston Police Department, in his individual and official capacities; STATE OF TEXAS; KEN PAXTON, Attorney General of the State of Texas, in his official capacity only; ALAN ROSEN, Constable of Harris County Precinct 1, in his individual and official capacities; ADILIA MIRANDA CARREON, Attorney at Law; MIRANDA CARREON | LAW; and ALL UNKNOWN HEIRS,

Defendants.

**AFFIDAVIT OF MATTHEW JACKSON IN SUPPORT OF PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR QUIET TITLE, DECLARATORY JUDGMENT, TRESPASS TO TRY TITLE, TRESPASS, INTERFERENCE WITH PROPERTY, OFFICIAL OPPRESSION, DAMAGES, AND INJUNCTIVE RELIEF**

Declaration under penalty of perjury of Mr.Matthew Jamal Jackson, Mr.Matthew Jamal Jackson, being competent to make this declaration and having personal knowledge of the matters stated herein, declares pursuant to 28 U.S.C 1746

## I. INTRODUCTION

Plaintiff Matthew Jamal Jackson, proceeding pro se, respectfully submits this Memorandum of Law in support of his Fourth Amended Complaint. This Memorandum addresses the legal standards governing Plaintiff's claims, the applicable law, and the legal sufficiency of each cause of action. As demonstrated below, Plaintiff has stated facially plausible claims for relief under federal and Texas law, and the documentary record—now before the Court through Exhibits A through Z—satisfies every pleading requirement.

The Fourth Amended Complaint alleges a systematic, multi-level government conspiracy to deprive Plaintiff of his constitutionally protected property rights, utilizing unlawful eviction proceedings, warrantless police entries, utility termination without due process, a retaliatory criminal investigation, and public defamation. Plaintiff's adverse possession rights vested on August 22, 2026, under Texas Civil Practice & Remedies Code § 16.030(a), and Defendants' coordinated efforts to defeat those vested rights constitute violations of the First, Fourth, Fifth, and Fourteenth Amendments, the Ex Post Facto Clause, the Equal Protection Clause, the Fair Housing Act, and the Americans with Disabilities Act.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when it contains sufficient factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). The pleading standard is not a "probability requirement," but requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-57. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (citing *Twombly*, 550 U.S. at 557).

Where a plaintiff proceeds pro se, courts must construe the plaintiff's complaint "liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). This means that the court must interpret a pro se complaint "to raise the strongest arguments that [it] suggest[s]." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, to survive a motion to dismiss, a pro se complaint "must contain sufficient factual allegations to meet the plausibility standard." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) (citing *Harris*, 572 F.3d at 72). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Pleading Requirements for Amended Complaints

A plaintiff may amend a complaint once as a matter of course within twenty-one days after service or within twenty-one days after service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, a plaintiff may amend only with the opposing

party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires. *Id.*

An amended complaint supersedes any prior complaints. *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted). Once a plaintiff files an amended complaint, any previous complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. *See generally* Fed. R. Civ. P. 8. The federal rules contemplate brevity; claims must be set forth in short and plain terms, simply, concisely, and directly. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); Fed. R. Civ. P. 8.

Plaintiff has been granted leave to file this Fourth Amended Complaint pursuant to the Court's May 27, 2026 Hearing Minutes and Order [Doc. #44], which granted Plaintiff leave to file an amended complaint by June 4, 2026. Plaintiff now formally places documentary exhibits before the Court to correct the deficiency identified at the May 27, 2026 conference.

**C. Special Pleading Considerations**

Qualified Immunity Defense: Qualified immunity protects only officials who do not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The warrant requirement, due process requirements, the prohibition on false arrest, and the prohibition on retaliatory prosecution were all clearly established decades before these incidents. The warrant requirement has been clearly established since *Payton v. New York*, 445 U.S. 573 (1980). The right not to be falsely arrested without probable cause is equally well established. The deliberate filing of false police reports is not protected by qualified immunity. *Hope v. Pelzer*, 536 U.S. 730 (2002).

Eleventh Amendment - Ex Parte Young Exception: The State of Texas will assert Eleventh Amendment immunity. That defense does not bar this action because Plaintiff seeks only PROSPECTIVE INJUNCTIVE RELIEF against the Texas Attorney General in his OFFICIAL CAPACITY—not monetary damages from the State. This is precisely the relief authorized by *Ex parte Young*, 209 U.S. 123, 155-56 (1908). The Eleventh Amendment is not a bar to prospective injunctive relief against state officials enforcing unconstitutional laws. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Statute of Limitations - Continuing Violation Doctrine: Section 1983's statute of limitations in Texas is TWO YEARS from the date of the constitutional violation. Every violation alleged occurred in 2025 and continues to the present day—within two years of this filing. The 1981 and 1982 claims carry a FOUR-YEAR statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The Fair Housing Act provides TWO YEARS from the discriminatory practice. 42 U.S.C. § 3613(a). RICO provides FOUR YEARS. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143 (1987). Defendants' ongoing violations constitute a continuing wrong, and the statute of limitations does not bar claims for continuing violations that are still occurring. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002).

Standing: Plaintiff has Article III standing. He has suffered (1) CONCRETE AND PARTICULARIZED INJURY—warrantless entries into his properties, 56-day utility deprivation, unlawful eviction proceedings, criminal dispossession from Arlington Place, denial of housing certification, mental anguish, unconstitutional criminal investigation and prosecution, defamatory public statements, and a second unlawful eviction proceeding; (2) CAUSATION—each injury is directly traceable to specific actions by specific named defendants; and (3) REDRESSABILITY—each injury can be remedied by injunctive relief, compensatory damages, and the other relief requested. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Texas Tort Claims Act Inapplicability: State immunity statutes cannot bar federal civil rights claims. *Howlett v. Rose*, 496 U.S. 356, 383 (1990); *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991); *Martinez v. California*, 444 U.S. 277 (1980). Congress enacted § 1983 specifically to override state immunity.

## III. STATEMENT OF FACTS

### A. Plaintiff's Adverse Possession Claims

Plaintiff Matthew Jamal Jackson is an African-American man with disabilities. On August 22, 2023, Plaintiff entered peaceable possession of the property located at 8230 Glen Valley Dr, Houston, Texas 77061 (Parcel #: 082-564-000-0008). Plaintiff has filed an Affidavit of Adverse Possession RP-2025-216266 (Exhibit A), Amended Affidavit of

Adverse Possession RP-2025-312514 (Exhibit B), and a Warranty Deed (Exhibit C) in the real property records of Harris County, Texas, reflecting a claim of right. The Warranty Deed, even if defective as to the underlying chain of title, constitutes valid color of title for adverse possession purposes. *See Wright v. Mattison*, 59 U.S. (18 How.) 50, 57-58 (1855).

Plaintiff maintains adverse possession of additional properties: Arlington Place Apartment Complex, 116 East Edgebrook Drive, Houston, Texas 77034 (Exhibits N, O), and Prairie Walk, 11415 Prairie Walk Dr, Houston, Texas (Exhibits L, M).

Plaintiff's adverse possession claims at all properties satisfy every element of Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030: (1) OPEN—Plaintiff's possession has been visible and unconcealed; (2) NOTORIOUS—neighbors, police, utility companies, and the Justice Court all have knowledge of Plaintiff's possession; (3) HOSTILE—Plaintiff's possession is without permission from and adverse to the interests of any prior owner; (4) EXCLUSIVE—Plaintiff has maintained exclusive control; (5) CONTINUOUS—Plaintiff has maintained uninterrupted possession since August 22, 2023; (6) COLOR OF TITLE—Plaintiff holds recorded Warranty Deeds and Affidavits of Adverse Possession for each property; and (7) ABANDONED AND FORECLOSED PROPERTIES—the Glen Valley property was abandoned for over six years and the Arlington Place complex was foreclosed and abandoned before Plaintiff established possession.

Plaintiff's title vested on August 22, 2026, under Texas Civil Practice & Remedies Code § 16.030(a).

**B. Private Defendants' Interference**

On July 24, 2025, Defendant Mayra Amezquita unlawfully trespassed onto the Property, broke the water meter, and contacted Houston Public Works to falsely claim ownership. (Exhibit I.) On multiple occasions, Defendants broke windows, changed locks, and entered the property without any court order or legal process. Plaintiff has filed police reports documenting Defendants' criminal conduct. (Exhibits G, I.)

**C. Government Utility Conspiracy - Houston Public Works**

Based on Defendant Amezquita's misrepresentations, Houston Public Works unlawfully transferred water service from Plaintiff's name to Defendant Amezquita's name effective July 24, 2025, depriving Plaintiff of essential utilities for approximately 56 days without due process. Houston Public Works failed to verify Amezquita's claimed ownership, provide Plaintiff with notice and an opportunity to be heard, and conduct a proper investigation despite Plaintiff's recorded property documents. Service was restored on September 18, 2025. (Exhibits S, X.)

**D. First Unlawful Eviction Proceeding (Dismissed)**

On or about August 27, 2025, deputies from the Sheriff's Office and/or Constable's Office posted an eviction notice on Plaintiff's door without proper due process or investigation. The eviction proceeding (Case No. 252100341228, *Mayra Amezquita v. Matthew Jackson*) was DISMISSED on September 15, 2025, for LACK OF JURISDICTION. The Justice Court found it had NO JURISDICTION over the eviction proceeding. (Exhibit H.)

**E. Second Unlawful Eviction Proceeding - Fraud Upon the Court**

On August 20, 2026, Defendants Rubi Villafana (as Dependent Administrator of the Estate of Rogelio Villafana Perez) and her attorney Adilia Miranda Carreon filed a SECOND eviction proceeding against Plaintiff in Harris County Justice Court Precinct 2 Place 2, Case No. 262100368880. The Original Petition for Eviction contains false allegations that Plaintiff "forcibly entered" and "broke into" the property, when in fact Plaintiff lawfully entered and holds recorded adverse possession instruments. (Exhibits BB, CC.)

This second proceeding is barred by res judicata and collateral estoppel. A dismissal for lack of jurisdiction is a final judgment on the merits for res judicata purposes. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986).

**F. Police Misconduct - Prairie Walk**

On August 23, 2025, HPD Officers Robarge S.M. and Officer P.W. unlawfully entered Plaintiff's adverse possession property at 11415 Prairie Walk Dr without warrant, probable cause, or exigent circumstances. The officers drew firearms on Larry Henson, a

US military veteran lawfully present, detained him for approximately two hours, told him Plaintiff was "committing a scam" and "adverse possession is not a law," and filed a false police report categorizing the incident as "Investigation Forgery/Fraud/Counterfeit." (Exhibit E, Q.)

On August 31, 2025, Officer Rodriguez Payan G responded to a call Plaintiff made regarding criminal trespassing. Officer Rodriguez placed veteran Larry Henson in handcuffs for lawful presence on Plaintiff's property, detained him, and released him without charges. Officer Rodriguez filed a false police report falsely stating "Ashlee Alexius Holmes made the call" when Plaintiff made the call. (Exhibit F.)

**G. Defamatory Public Statements - Constable Alan Rosen**

On July 8, 2026, Constable Alan Rosen gave a public press conference in which he made defamatory statements about Plaintiff, including: "There's a history of this with this individual"; "This person does feel like they know the law, but unfortunately they don't"; "This person has been dealt with in this space before"; statements implying Plaintiff is a criminal and has committed crimes; and statements linking Plaintiff to "high profile homicide cases." These statements were published in the Houston Chronicle. (Exhibit FF.)

**H. Unconstitutional Criminal Investigation**

The City of Houston's August 18, 2026 Supplemental Notice of Parallel Criminal Investigation (Doc. 80-1) confirms that Plaintiff "is currently the subject of a criminal investigation" and "the conduct under criminal investigation is alleged to be substantially similar to the conduct at issue in this civil action." This is direct evidence of unconstitutional retaliation for filing this lawsuit. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

**I. Houston Housing Authority Retaliation**

After Plaintiff attended the required Houston Housing Authority Landlord Orientation meeting and completed all requirements, HHA official Adrian Hudspeth refused to provide Plaintiff's completion certificate despite multiple requests via email and text. (Exhibits Y, 160-164.)

## IV. LEGAL ARGUMENT

### COUNT 1: QUIET TITLE

(Tex. Civ. Prac. & Rem. Code §§ 16.021, 16.024, 16.030)

A suit to quiet title "is an equitable action to remove a cloud from the title to property." *See generally* Tex. Jur. Pl. & Pr. Forms § 14:9 (2d ed.) (November 2025 Update). To prevail, a plaintiff must prove "superior title" to the property at issue.

Plaintiff has superior title to the Property through adverse possession. Under Texas Civil Practice & Remedies Code § 16.024, a person who holds "a registered deed or other memorandum of title" that appears to convey title to the property may acquire title by adverse possession after three years. The statute does not require that the deed be free from defects. A deed that appears regular on its face and purports to convey title satisfies the color of title requirement even if underlying title is clouded.

Under § 16.030(a), "If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims." Plaintiff's title vested on August 22, 2026.

Texas courts have consistently held that color of title refers to a deed purporting to convey title to the possessor, even if that deed does not actually convey any title. *See Phelps v. Pecos Valley Southern Ry. Co.*, 182 S.W. 1156, 1158 (Tex. App. 1916); *Porter v. Wilson*, 371 S.W.2d 611, 613 (Tex. Civ. App.—Beaumont 1963, writ ref'd n.r.e.); *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037 (Tex. 1916).

A recorded interest provides constructive notice; negligent ignorance has the same effect as actual knowledge. *425 Soledad, Ltd. v. CRVI Riverwalk Hospitality, LLC*, 709 S.W.3d

551 (Tex. 2024). Recording an instrument in the deed records provides constructive notice to all subsequent parties. *Davis v. Howe*, 213 S.W. 609, 610 (Tex. Comm'n App. 1919).

Plaintiff has satisfied every element of adverse possession. The Court should quiet title in Plaintiff's favor.

**COUNT 2: TRESPASS TO TRY TITLE**

(Tex. Prop. Code § 22.001)

A trespass to try title action is the "method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001. Plaintiff asserts superior right to possession and title under adverse possession, color of title, peaceable possession, and fully vested title against all claiming Defendants. Plaintiff is entitled to judgment awarding possession and title.

*See also Couch v. The Bank of New York Mellon*, No. 4:24-cv-00085, 2024 WL 2307935 (N.D. Tex. Feb. 27, 2024) (denying motion to dismiss adverse possession claim and granting TRO). In *Couch*, the court held that plaintiffs stated a facially plausible claim to quiet title where they were sole, visible, peaceable, and continuous possessors of property for more than two decades. The court found plaintiffs were substantially likely to prevail on their adverse possession claim.

**COUNT 3: DECLARATORY JUDGMENT**

(Tex. Civ. Prac. & Rem. Code § 37.004; 28 U.S.C. § 2201)

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

Plaintiff seeks a declaration of rights regarding the Property, including recognition of Plaintiff's peaceable possession and right to exclude others, and a declaration that SB 38 and SB 1333 are unconstitutional as applied to Plaintiff. An actual controversy exists between Plaintiff and Defendants regarding title and possession. A declaratory judgment will resolve these disputed rights and remove the cloud on Plaintiff's title. *See* Tex. Civ. Prac. & Rem. Code § 37.004.

**COUNT 4: TRESPASS & INTERFERENCE WITH PROPERTY**

Defendants' unlawful entry, vandalism, lock tampering, and threats constitute trespass and interference with Plaintiff's property rights. Under Texas law, a trespass occurs when a person enters another's property without consent. *See, e.g.,* Tex. Prop. Code § 75.001. Plaintiff is entitled to damages and injunctive relief for Defendants' ongoing trespass and interference.

**COUNT 5: FEDERAL CIVIL RIGHTS VIOLATIONS**

(42 U.S.C. §§ 1983 & 1985)

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove: (1) the defendant was a person acting under color of state law; and (2) the conduct deprived plaintiff of a federally protected right. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1985(3) provides a cause of action for conspiracy to deprive any person of the equal protection of the laws. 42 U.S.C. § 1985(3). To establish a § 1985(3) claim, a plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving any person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) injury to

person or property or deprivation of a right. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).

The evidence demonstrates that all Government Defendants acted under color of state law and deprived Plaintiff of clearly established constitutional rights. Plaintiff's Fourth Amended Complaint alleges specific dates, specific officer names, specific police report numbers, specific incidents, and specific constitutional violations.

Individual Liability: The individual defendants—Officer Robarge S.M., Officer P.W., Officer Rodriguez Payan G, Jerry Garcia, Ed Gonzalez, Randy Macchi, Jamie Bryant, Adrian Hudspeth, J. Noe Diaz Jr., and Alan Rosen—are each specifically identified and alleged to have directly participated in constitutional violations. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (establishing municipal liability); *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991) (individual capacity suits).

Municipal Liability (Monell): Harris County, the City of Houston, and the State of Texas are named as *Monell* defendants. Under *Monell*, a municipality may be liable under § 1983 for constitutional violations resulting from a policy, custom, or practice. 436 U.S. at 694. Plaintiff has alleged that Harris County and the City of Houston maintained policies, customs, and practices that caused the constitutional violations, including failure to train law enforcement on adverse possession law, failure to investigate recorded property claims, and retaliatory criminal investigations.

Supervisory Liability: Supervisors may be liable under § 1983 when their "failure to train" or "deliberate indifference" causes constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 385-88 (1989). Plaintiff has alleged that Constable Garcia, Sheriff Gonzalez, Chief Diaz, Director Macchi, and CEO Bryant were aware of and ratified the constitutional violations, and that their failures to train subordinates caused the violations.

**COUNT 6: CONSTITUTIONAL VIOLATIONS**

First Amendment: Plaintiff's right to petition the government for redress of grievances was violated when Defendants retaliated against him for filing this lawsuit. The criminal investigation, eviction proceedings, and HHA retaliation all constitute First Amendment retaliation. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Fourth Amendment: Plaintiff's right to be free from unreasonable searches and seizures was violated by warrantless entries into his homes and false arrests without probable

cause. *Payton v. New York*, 445 U.S. 573, 585-86 (1980); *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).

Fifth Amendment: Plaintiff's property rights were deprived without due process. The Ex Post Facto Clause prohibits application of SB 38 and SB 1333 to Plaintiff's pre-existing rights. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994); *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998).

Fourteenth Amendment: Plaintiff's due process and equal protection rights were violated. Plaintiff's reputation was damaged without due process. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); *Paul v. Davis*, 424 U.S. 693 (1976). Racial discrimination violates the Equal Protection Clause. *Washington v. Davis*, 426 U.S. 229, 238-42 (1976); *Village of Arlington Heights*, 429 U.S. 252 (1977). Commerce Clause: Interference with Plaintiff's interstate housing business operations violates the Commerce Clause.

**COUNT 7: PERMANENT INJUNCTIVE RELIEF**

Plaintiff seeks PERMANENT injunctions IN PERPETUITY prohibiting all Government Defendants from interfering with Plaintiff's adverse possession rights nationwide, binding all current officials and successors.

To obtain a permanent injunction, a plaintiff must show: (1) success on the merits; (2) irreparable injury; (3) inadequacy of legal remedies; (4) balance of hardships favors plaintiff; and (5) public interest favors injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Winter v. NRDC*, 555 U.S. 7, 22 (2008).

Plaintiff has met all elements. His constitutional rights were violated. Irreparable harm exists. Legal remedies are inadequate because state actors are themselves participants in constitutional violations. The balance of hardships favors Plaintiff because Defendants suffer no cognizable hardship from being required to comply with the Constitution. The public interest favors protecting constitutional rights.

**COUNT 8: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Government Defendants' coordinated conspiracy constitutes extreme and outrageous conduct causing severe emotional distress. Under Texas law, intentional infliction of emotional distress requires: (1) extreme and outrageous conduct; (2) intent to cause

distress; (3) causation; and (4) severe distress. *See, e.g., Brawner v. Regents of Univ. of Texas*, No. 4:21-cv-00736, 2022 WL 1906962 (N.D. Tex. May 2, 2022).

Plaintiff has suffered severe mental anguish and emotional distress, including constant fear of arrest, anxiety, stress, sleep deprivation, depression, fear of retaliation, physical manifestations, and humiliation. These are compensable damages under § 1983. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986).

## COUNT 9: POLICY AND PROCEDURE VIOLATIONS UNDER COLOR OF LAW

All Government Defendants violated their own policies while acting under color of law, demonstrating systemic failures requiring injunctive relief. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "Only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

## COUNT 10: ADA VIOLATIONS

(42 U.S.C. § 12101 et seq.)

Plaintiff is an individual with disabilities as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff suffers from multiple physical and mental impairments that substantially limit one or more major life activities, including ptosis of the bilateral eyelids, prior ankle fracture, herniated disc, diabetes mellitus, hypertension, major depressive disorder, PTSD, and anxiety disorder. (Fourth Am. Compl. ¶¶ O-1 to O-8.)

Title II of the ADA prohibits public entities from discriminating against qualified individuals with disabilities. 42 U.S.C. § 12132. Government Defendants discriminated against Plaintiff based on disability in the provision of public services. Plaintiff is entitled to reasonable accommodations and equal access to government services. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004); *Olmstead v. L.C.*, 527 U.S. 581, 597 (1999); *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

**COUNT 11: FAIR HOUSING ACT VIOLATIONS**

(42 U.S.C. § 3601 et seq.)

The Fair Housing Act ("FHA") prohibits discrimination in housing on the basis of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604. Section 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by the FHA. 42 U.S.C. § 3617.

Plaintiff has been subjected to discriminatory housing practices and interference with his housing business. Plaintiff's race was a motivating factor in Defendants' conduct. *See Texas Dep't of Housing v. Inclusive Communities Project*, 576 U.S. 519, 540-41 (2015) (FHA disparate impact). The coordinated government action denied Plaintiff the equal right to hold his adverse possession property on the same terms extended to white property owners with the same recorded instruments.

**COUNT 12: RICO VIOLATIONS**

(18 U.S.C. § 1961 et seq.)

The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides a private civil action for treble damages. 18 U.S.C. § 1964(c). To establish a civil RICO claim, a plaintiff must prove: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Government Defendants constitute a racketeering enterprise engaged in a pattern of racketeering activity. The coordinated conspiracy across five levels of government—federal, state, county, municipal, and criminal investigation—demonstrates a pattern of racketeering activity. Plaintiff is entitled to treble damages under 18 U.S.C. § 1964(c).

**COUNT 13: CIVIL RIGHTS ACT VIOLATIONS**

Defendants violated Plaintiff's civil rights through discrimination in public accommodations and services.

**COUNT 14: CONSUMER PROTECTION ACT VIOLATIONS**

Defendants engaged in deceptive trade practices including false advertising and unfair competition.

**COUNT 15: THIRTEENTH AMENDMENT VIOLATIONS**

The government conspiracy forced Plaintiff into economic servitude, violating the Thirteenth Amendment.

**COUNT 16: INTERSTATE COMMERCE CLAUSE VIOLATIONS**

Defendants interfered with Plaintiff's interstate housing business operations, violating the Commerce Clause.

**COUNT 17: RETALIATION**

(42 U.S.C. § 1983; First and Fourteenth Amendments; FHA § 3617; ADA § 12203)

All Government Defendants retaliated against Plaintiff for exercising constitutional rights, including filing federal lawsuits, recording adverse possession claims, participating in federal housing programs, petitioning government for redress, and filing this federal civil rights action—which directly resulted in the unconstitutional criminal investigation. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

**COUNT 18: EQUAL PROTECTION / § 1983 - RACIAL DISCRIMINATION**

Government Defendants applied Texas property law, utility service policies, police protocols, and housing program administration in a racially discriminatory manner. But for Plaintiff's race, Defendants would not have bypassed warrant requirements, notice requirements, and ownership verification; classified lawful adverse possession as criminal fraud; or coordinated across five government levels to deprive him of property rights Texas law grants equally to all citizens. *Washington v. Davis*, 426 U.S. 229, 238-42 (1976); *Village of Arlington Heights*, 429 U.S. 252 (1977).

**COUNT 19: 42 U.S.C. § 1981 - EQUAL RIGHT TO ENFORCE CONTRACTS**

Section 1981 provides a direct private right of action. No EEOC complaint, exhaustion, or pre-suit letter is required. *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975). Plaintiff has been denied the same right to make and enforce his recorded property instruments enjoyed by white citizens. His Warranty Deed and Affidavits were ignored by government actors who honored an unverified competing claim instead. *Comcast Corp. v. NAACP*, 589 U.S. 327 (2020).

**COUNT 20: 42 U.S.C. § 1982 - EQUAL RIGHT TO HOLD PROPERTY**

Section 1982 provides a direct private right of action. No exhaustion is required. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413-14 (1968). All citizens have the same right as white citizens to hold and convey real property. The coordinated government action denied Plaintiff the equal right to hold his adverse possession property on the same terms extended to white property owners with the same recorded instruments.

**COUNT 21: FAIR HOUSING ACT § 3604 - RACIAL HOUSING DISCRIMINATION**

Private FHA plaintiffs file directly in federal court within two years. No HUD complaint is required. 42 U.S.C. § 3613(a). Defendants discriminated against Plaintiff in the terms and conditions of his dwelling at 8230 Glen Valley Drive because of his race. SB 38 and

SB 1333's expedited eviction procedures also have a racially disparate impact on Black adverse possession claimants. *Texas Dep't of Housing v. Inclusive Communities Project*, 576 U.S. 519, 540-41 (2015).

## COUNT 22: 42 U.S.C. § 1985(3) - RACIALLY MOTIVATED CONSPIRACY

Direct private right of action. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). The five-level coordinated government conspiracy, combined with racial discriminatory intent evidenced by the *Arlington Heights* factors, constitutes a § 1985(3) racially motivated conspiracy to deprive Plaintiff of equal protection of the laws.

## COUNT 23: OFFICIAL OPPRESSION UNDER COLOR OF LAW

(Texas Penal Code § 39.03; 42 U.S.C. § 1983)

Texas Penal Code § 39.03 defines official oppression as a public servant acting under color of office who: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; or (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful. Tex. Penal Code § 39.03(a).

A public servant acts under color of office if he "acts or purports to act in an official capacity or takes advantage of such actual or purported capacity." Tex. Penal Code § 39.03(b). Official oppression constitutes a Class A misdemeanor, or a felony of the third degree if the public servant acted with intent to impair the accuracy of data reported to the Texas Education Agency. Tex. Penal Code § 39.03(d). *See also* S.B. No. 1774 (89th Leg., eff. Sept. 1, 2025) (increasing criminal penalties for official oppression).

All Government Defendants committed official oppression against Plaintiff. Official oppression independently supports civil liability under 42 U.S.C. § 1983. *See Ratliff v. State*, No. PD-0545-20 (Tex. Crim. App. 2022) (official oppression requires that defendant "know" the conduct is unlawful).

**COUNT 24: UNCONSTITUTIONAL CRIMINAL INVESTIGATION AND RETALIATORY PROSECUTION**

(First Amendment; Fourteenth Amendment; 42 U.S.C. § 1983)

The City of Houston's August 18, 2026 Supplemental Notice of Parallel Criminal Investigation (Doc. 80-1) confirms that Plaintiff is being subjected to a criminal investigation for the same conduct at issue in this civil action, in retaliation for exercising his constitutional rights.

To establish a claim for retaliatory prosecution, Plaintiff must show: (1) he engaged in constitutionally protected conduct; (2) the City's actions were motivated by and substantially caused by that conduct; and (3) the City's actions caused injury to Plaintiff. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). The evidence demonstrates all elements.

This Court has the inherent authority and obligation to protect its proceedings from abuse and to prevent the criminal justice system from being used as a weapon against civil rights litigants. *Dombrowski v. Pfister*, 380 U.S. 479, 485-86 (1965). *Younger* abstention does not apply because the investigation is not a pending state prosecution, was initiated in bad faith, and violates the Ex Post Facto Clause. *Younger v. Harris*, 401 U.S. 37, 46-47 (1971).

**COUNT 25: DEFAMATION AND DEFAMATION PER SE**

(Texas Common Law; 42 U.S.C. § 1983)

On July 8, 2026, Constable Alan Rosen made false and defamatory statements about Plaintiff in a public press conference, as reported by the Houston Chronicle and widely published. (Exhibit FF.)

Defamation per se includes statements that impute criminal conduct or lack of integrity in business or profession. *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). Public officials can be liable for defamation if they make false statements with malice. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Government officials are not immune from defamation claims for false statements made with malice. *Brownving v. Steed*, No. 05-14-00150-CV, 2015 WL 4999902 (Tex. App.—Dallas Aug. 20, 2015).

Constable Rosen made the statements with knowledge of their falsity or reckless disregard for the truth. The statements were published to the media and widely disseminated. Plaintiff has suffered damage to reputation, prejudice in the community, interference with his housing business, emotional distress and mental anguish, economic damages, and loss of business opportunities.

**COUNT 26: FRAUD UPON THE COURT AND ABUSE OF PROCESS**

(42 U.S.C. § 1983; Texas Common Law)

Fraud upon the court occurs when an officer of the court "intentionally misleads the court" and "the misrepresentation or fraud is central to the claim." *Mitchell v. Occidental Fire & Cas. Co.*, 570 F. App'x 788, 792 (10th Cir. 2014). Courts have inherent power to sanction fraud upon the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Fraud upon the court is a wrong against the judicial system itself. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

Defendants Rubi Villafana and her attorney Adilia Miranda Carreon committed fraud upon the court by filing a false Original Petition for Eviction containing false allegations that Plaintiff "forcibly entered" and "broke into" the property. The Defendants knew or should have known the allegations were false because Plaintiff holds recorded adverse possession instruments and the first eviction proceeding was dismissed for lack of jurisdiction. This conduct also constitutes abuse of process. *TEXACO v. Pennzoil*, 784 S.W.2d 483, 488-89 (Tex. App.—Houston [1st Dist.] 1989).

**COUNT 27: CONTINUING VIOLATIONS**

Defendants' actions constitute a continuing wrong and continuing violations of Plaintiff's constitutional and statutory rights. The violations are ongoing and have not ceased. The statute of limitations does not bar claims for continuing violations that are still occurring. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002); *Heckler v. Mathews*, 465 U.S. 728, 738-39 (1984).

## V. INJUNCTIVE RELIEF

### A. Legal Standard for Injunctive Relief

Courts consider: (1) likelihood of success on the merits; (2) irreparable harm if injunction not granted; (3) balance of harms; and (4) public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Plaintiff is entitled to both temporary and permanent injunctive relief.

### B. Likelihood of Success on the Merits

Plaintiff meets all elements of adverse possession under Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030 and has now obtained FULL VESTED TITLE under Texas Civil Practice & Remedies Code § 16.030(a). Clear constitutional violations by multiple government entities across all five levels are documented in the evidence now before the Court (Exhibits A-Z). *See Couch v. The Bank of New York Mellon*, No. 4:24-cv-00085, 2024 WL 2307935 (N.D. Tex. Feb. 27, 2024) (plaintiffs substantially likely to prevail on adverse possession claim; TRO granted).

### C. Irreparable Harm

Plaintiff faces ongoing constitutional violations including further arrests, evictions, utility interference, warrantless searches, systematic targeting for exercising constitutional property rights, ongoing criminal investigation and potential prosecution, defamation continuing to damage his reputation, and an ongoing second eviction proceeding. State remedies are inadequate because state actors are themselves participants in constitutional violations. Only federal court intervention can protect constitutional rights from this systematic, multi-jurisdictional conspiracy.

Property rights vested on August 22, 2026, under Texas Civil Practice & Remedies Code § 16.030(a). Any eviction after vesting permanently extinguishes property rights that have been accruing for over three years. Once possession is lost, the title cannot be restored. This harm is per se irreparable.

Constitutional violations are ongoing: The deprivation of constitutional rights constitutes irreparable harm per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The ongoing criminal investigation, defamatory statements, and second eviction proceeding also constitute irreparable harm because they chill Plaintiff's exercise of constitutional rights, damage his reputation, threaten his liberty, and interfere with his property rights.

### D. Balance of Harms Favors Plaintiff

Defendants suffer no cognizable hardship from being required to comply with the Constitution. Requiring the Constable to investigate recorded instruments before posting eviction notices, requiring HPD to obtain warrants before entering property, requiring Public Works to provide notice before terminating utilities, requiring the City of Houston to cease its unconstitutional criminal investigation, requiring Constable Alan Rosen to cease making defamatory statements, and enjoining the second eviction proceeding—these are constitutional requirements that already bind every government defendant. No new burden is imposed. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012).

### E. Public Interest Favors Injunction

The public interest favors protecting constitutional rights, ensuring equal protection, and preventing abuse of the criminal justice system and court process. *See Dombrowski v. Pfister*, 380 U.S. 479, 485-86 (1965) (federal courts may enjoin state criminal prosecutions brought in bad faith for purposes of harassment).

## VI. CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Quiet title and award clear, marketable title to the Property to Plaintiff based on full vesting of title under Texas Civil Practice & Remedies Code § 16.030(a).
2. Award possession of the Property to Plaintiff with exclusive right of occupancy.
3. Cancel and remove as clouds on title all adverse claims.
4. Award damages, costs, and attorney's fees as allowed by law.
5. Issue PERMANENT INJUNCTIONS IN PERPETUITY prohibiting all Government Defendants and law enforcement agencies nationwide from:

Arresting, detaining, or prosecuting Plaintiff for adverse possession activities on any US property

Evicting Plaintiff from adverse possession properties without constitutional due process

Interfering with utilities, mail, or services on adverse possession properties

Applying SB 38/SB 1333 or similar laws to any of Plaintiff's adverse possession claims

Retaliating against Plaintiff for exercising constitutional rights

Coordinating with private parties to circumvent constitutional due process

Excluding Plaintiff from federal housing programs

Changing locks or preventing access to adverse possession properties

Filing false police reports regarding Plaintiff's adverse possession activities

Initiating or pursuing criminal investigations or prosecutions against Plaintiff for his lawful adverse possession activities

Filing eviction proceedings against Plaintiff after prior dismissal for lack of jurisdiction

Said injunctions shall remain in effect permanently and bind all successors in office, future legislation, and any government entities created hereafter.

6. ORDER IMMEDIATE RESTORATION to Arlington Place, Apartment 116, with lock replacement and return of all personal property.

7. Award compensatory and punitive damages against Government Defendants under 42 U.S.C. § 1983.
8. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988.
9. Issue declaratory judgment that application of SB 38/SB 1333 to pre-existing claims violates the Ex Post Facto Clause.
10. Issue Nationwide Declaratory Judgment that:

    Plaintiff has a constitutional right to exercise adverse possession on any US property under Texas Civil Practice & Remedies Code §§ 16.021, 16.024, and 16.030

    Law enforcement cannot arrest/prosecute solely for lawful adverse possession

    Government cannot apply expedited eviction procedures without due process

    Federal agencies cannot exclude from programs in retaliation

    Plaintiff's adverse possession activities constitute protected constitutional conduct

    The City of Houston's criminal investigation of Plaintiff constitutes unconstitutional retaliation and violates the First and Fourteenth Amendments

    The second eviction proceeding (Case No. 262100368880) constitutes fraud upon the court and abuse of process

11. Evidence Preservation: Order Harris County Justice Court to preserve all recordings, transcripts, and notes from September 15, 2025, and August 20, 2026, proceedings and order immediate production to Plaintiff. Order HPD to preserve body camera footage from August 23 and 31, 2025. Order the City of Houston to preserve all documents, communications, and records relating to the criminal investigation of Plaintiff. Order the Harris County Justice Court to preserve all records relating to Case Nos. 252100341228 and 262100368880.
12. Award substantial compensatory damages for mental anguish, lost business income, economic damages, and interference with interstate commerce.
13. Award punitive damages for willful, malicious, coordinated constitutional violations.
14. Award treble damages for unprecedented five-level government conspiracy under 18 U.S.C. § 1964(c).
15. Award racial discrimination damages under 42 U.S.C. §§ 1981 and 1982; Fair Housing Act damages; and full restoration and compensation for Arlington Place.
16. Award Plaintiff damages in an amount to be determined by the jury at trial, which Plaintiff believes will exceed $5,000,000 based on the nature, duration, and severity of the constitutional violations, racial discrimination, RICO enterprise activity, and property deprivations alleged herein.
17. ORDER that the City of Houston immediately cease and desist the unconstitutional criminal investigation of Plaintiff, and enjoin the City from initiating any criminal prosecution against Plaintiff for his lawful adverse possession activities.
18. ORDER that the Defendants (Rubi Villafana and Adilia Miranda Carreon) shall immediately dismiss the second eviction proceeding (Case No. 262100368880) with prejudice.
19. ORDER that the Harris County Justice Court Precinct 2 Place 2 shall not accept any further eviction filings against Plaintiff based on the same claims.
20. ORDER that Constable Alan Rosen shall cease and desist from making further defamatory statements about Plaintiff.
21. ORDER that Constable Alan Rosen shall issue a public retraction of his defamatory statements.
22. ORDER sanctions against Attorney Adilia Miranda Carreon and Miranda Carreon | Law for fraud upon the court.

23. ORDER that Attorney Adilia Miranda Carreon and Miranda Carreon | Law shall pay Plaintiff's costs and fees incurred in defending against the second eviction proceeding.
24. Grant such other legal or equitable relief the Court deems proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/2/2026

Respectfully submitted,

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson
Individually & as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr
Houston, TX 77061
Email: savealifemones06@gmail.com / infosupport@savealifemones.com
Phone: 1-800-985-9144 / Cell 646-588-9376
*Pro Se Plaintiff*

Exhibit LL

**Civil Action No. 4:25-cv-04354**

**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

MATTHEW JAMAL JACKSON, Individually and as Owner of Save A Life Homes, LLC,

Plaintiff,

v.

JERRY GARCIA, Constable of Harris County Precinct 2, in his individual and official capacities; JOHN DOE DEPUTY CONSTABLES 1-5, Harris County Precinct 2, in their individual and official capacities; ED GONZALEZ, Sheriff of Harris County, in his individual and official capacities; JOHN DOE DEPUTY SHERIFFS 1-5, Harris County Sheriff's Office, in their individual and official capacities; HARRIS COUNTY, TEXAS; HARRIS COUNTY JUSTICE COURT PRECINCT 2 PLACE 2; MAYRA AMEZQUITA, address: 8311 Cayton St, Houston, Texas 77061 and 709 Bluebird Lane, Pasadena, TX 77502; RUBI VILLAFANA PEREZ, address: 8311 Cayton St, Houston, Texas 77061 and 709 Bluebird Lane, Pasadena, TX 77502; ADILIA MIRANDA CARREON; MIRANDA CARREON LAW FIRM (MC LAW PLLC); MALCOLM D. GIBSON; M.D. GIBSON & ASSOCIATES; JPMORGAN CHASE BANK, NA; SECURE MORTGAGE COMPANY; SECUNDINO VAZQUEZ; CARMEN VILLARREAL; FIDELITY NATIONAL TITLE INSURANCE COMPANY; ROGELIO P. VILLAFANA (DECEASED); VENSON GIBBS; HOUSTON POLICE DEPARTMENT; OFFICER ROBARGE S.M.; OFFICER P.W.; OFFICER RODRIGUEZ PAYAN G; CITY OF HOUSTON; HOUSTON PUBLIC WORKS; RANDY MACCHI, Director of Houston Public Works, in his individual and official capacities; HOUSTON HOUSING AUTHORITY; JAMIE BRYANT, President and CEO of Houston Housing Authority, in her individual and official capacities; ADRIAN HUDSPETH, in his individual and official capacities; J. NOE DIAZ JR., Chief of Police of the Houston Police Department, in his individual and official capacities; STATE OF TEXAS; KEN PAXTON, Attorney General of the State of Texas, in his official capacity only; HARRIS COUNTY CONSTABLE PRECINCT 1; CONSTABLE ALAN ROSEN, in his individual and official capacities; JOHN DOE DEPUTY CONSTABLES 1-5, PRECINCT 1, in their individual and official capacities; and ALL UNKNOWN HEIRS,, *et al.*,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff, Matthew Jamal Jackson, a pro se litigant, files this Memorandum of Law in support of his Renewed Motion for Temporary Restraining Order and Preliminary Injunction. As detailed in his Fourth Amended Complaint, Plaintiff is the victim of a multi-level government conspiracy designed to deprive him of his constitutionally protected property rights. This coordinated action has resulted in unlawful eviction proceedings, warrantless police raids, the deprivation of utilities without due process, and ongoing criminal retaliation for the exercise of his First Amendment rights. This Court possesses both the jurisdiction and the authority to grant the requested injunctive relief to halt these ongoing constitutional violations.

## II. LEGAL STANDARD FOR INJUNCTIVE RELIEF

A preliminary injunction is an extraordinary remedy, but it is appropriate when the movant establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction may cause the opposing party; and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

When a plaintiff seeks to engovernmental action, the "public interest" and "balance of harms" factors merge, weighing heavily in favor of the plaintiff when constitutional rights are at stake. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012). Furthermore, pro se pleadings are held to a less stringent standard and must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). This complaint, which is supported by extensive documentary evidence, more than meets this standard.

## III. ARGUMENT

### A. PLAINTIFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

Plaintiff has established a substantial likelihood of success on his claims, including his underlying property rights and his various constitutional and statutory claims.

1. Plaintiff's Title to the Property is Vested.

Plaintiff has established a prima facie case for adverse possession under Texas Civil Practice & Remedies Code 16.021, 16.024, and 16.030. Since August 22, 2023, Plaintiff has maintained open, notorious, hostile, exclusive, and continuous possession of the property at 8230 Glen Valley Drive.

He holds recorded color of title, including a Warranty Deed and Affidavits of Adverse Possession (Exhibits A, B, C), which are valid instruments for the purposes of establishing a claim. *See Wright v. Mattison*, 59 U.S. (18 How.) 50, 57-58 (1855) (holding even a defective deed constitutes valid color of title). His title vested as of August 22, 2026, under 16.030(a). Any action to evict him after this date constitutes an unlawful deprivation of property.

2. Plaintiff Has Pled Clear Violations of His Constitutional Rights.

The complaint describes numerous violations of clearly established constitutional law:

Fourth Amendment: The warrantless entry of Plaintiff's home on August 23, 2025, violates the warrant requirement established in *Payton v. New York*, 445 U.S. 573 (1980), and the subsequent false arrest/false imprisonment. The filing of false police reports (Exhibits E, F) is not protected by qualified immunity. *Hope v. Pelzer*, 536 U.S. 730 (2002).

Fourteenth Amendment (Due Process): The termination of Plaintiff's water service for 56 days without notice or hearing (Exhibits S, X) is a direct violation of due process, as utility service is a constitutionally protected property interest. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978); *Fuentes v. Shevin*, 407 U.S. 67 (1972). The Justice Court's application of newly enacted laws (SB 38, SB 1333) to Plaintiff's pre-existing rights is an ex post facto violation. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

First Amendment: The ongoing criminal investigation (as confirmed by the City's own filing, Exhibit AA) is in direct retaliation for Plaintiff filing this civil rights lawsuit and constitutes a chilling of his right to petition the government for redress of grievances. *Hartman v. Moore*, 547 U.S. 250 (2006); *Dombrowski v. Pfister*, 380 U.S. 479 (1965).

Equal Protection: The disparate treatment of Plaintiff, an African-American man, establishes a claim under 42 U.S.C. §§ 1981, 1982, and 1985, as his recorded instruments were ignored while an unverified claim was honored. *Washington v. Davis*, 426 U.S. 229 (1976); *Village of Arlington Heights*, 429 U.S. 252 (1977).

**B. PLAINTIFF FACES IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF**

The deprivation of constitutional rights, particularly the loss of a property right and the threat of liberty, constitutes irreparable harm *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff faces more than just monetary damages.

Loss of Property: His vested property rights are on the verge of being permanently extinguished through unlawful eviction, a harm that money damages cannot remedy.

Ongoing Criminal Prosecution: He is the subject of a retaliatory criminal investigation. The threat of arrest and prosecution itself creates anxiety, fear, and a chilling effect on his rights.

Defamation: The public statements made by a state official, Constable Alan Rosen, falsely labeling Plaintiff a criminal, constitute a stigma that cannot be undone without injunctive relief and a public retraction. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971). The ongoing nature of these harms confirms the need for immediate court intervention. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

## C. THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR PLAINTIFF

The balance of hardships weighs strongly in Plaintiff's favor. The Defendants will suffer no cognizable harm from being required to comply with the Constitution. The requested relief merely enjoins government officials from: (1) engaging in unconstitutional conduct (warrantless entries, deprivations of property, retaliatory prosecution); and (2) allowing fraud upon the court. Conversely, Plaintiff faces the destruction of his business, the loss of his home, and the threat of incarceration.

The public interest is always served when the government adheres to the Constitution and the law. "[T]he public has an interest in seeing that constitutional rights are protected." *Opulent Life Church*, 697 F.3d at 298. There is no public interest in allowing government officials to engage in official oppression, fraud upon the court, or unlawful retaliation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has demonstrated a substantial likelihood of success on the merits, faces irreparable harm, has shown the balance of equities tips in his favor, and that an injunction is in the public interest. Accordingly, Plaintiff respectfully requests that the Court grant his Renewed Motion for a Temporary Restraining Order and Preliminary Injunction, as more fully set forth in his prayer for relief, to halt the ongoing constitutional violations and preserve the status quo pending a final adjudication on the merits.

Respectfully submitted,

/s/ Matthew Jamal Jackson

Matthew Jamal Jackson
Individually & as Owner of Save A Life Homes, LLC
8230 Glen Valley Dr Houston, TX 77061
Email: savealifemones06@gmail.com/infosupport@savealifehomes.com
Phone: 1-800-985-9144 Cell 6465889376
*Pro Se Plaintiff*

CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Memorandum of Law was served upon all counsel of record via the Court's CM/ECF system on this 31st day of August, 2026.

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson

Jonathan Jay Cunningham
Fidelity National Law Group
6900 Dallas Parkway Suite 610
Plano, TX 75024
972-812-6545
Fax: 972-812-9408
Email: jonathan.cunningham@fnf.com

Emily Harding Owen
Carrington, Coleman, Sloman, & Blumenthal, L.L.P.
2200 Ross Ave. Suite 1800
Dallas, TX 75201
214-855-3033
Email: eowen@ccsb.com

Justin Garrett Sassaman
Jackson Lewis P.C.
500 N. Akard Street Suite 2500
Dallas, TX 75201
972-728-3276
Email: justin.sassaman@oag.texas.gov

James Carroll Butt
Harris County Attorney's Office
1019 Congress
Houston, TX 77002
713-274-5133
Email: james.butt@harriscountytx.gov

Michelle Taylor
900 Bagby St. 3rd Floor
Houston, TX 77002
832-393-6248
Email: michelle.taylor2@houstontex.gov

Natoya Cassie Nicola Inglis
The City of Houston General Litigation
900 Bagby 4th Floor
Houston, TX 77002
832-393-6415
Email: natoya.inglis@houstontex.gov

Eric A. Laskowski
COH Legal Department
900 Bagby, 4th Floor
Houston, TX 77002
832-393-6475
Email: eric.laskowski@houstontex.gov

/s/ Matthew Jamal Jackson
Matthew Jamal Jackson

Case 4:25-cv-04354 Document 53-1 Filed 06/11/26 in TXSD Page 1 of 2

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

Exhibit MM

| | | |
|---|---|---|
| **MATTHEW JAMAL JACKSON** | § | |
| *Plaintiff,* | § | |
| V. | § | **Civil Action No. 4:25-CV-4354** |
| **MAYRA AMEZQUITA. ET AL** | § | |
| *Defendant.* | § | |

**AFFIDAVIT OF ROGINA GUILLORY**

I, Rogina Guillory, am over the age of eighteen (18) years, and am employed as the Deputy Director in the City of Houston's Utility Billing Department. I am competent to make this affidavit and have personal knowledge of the facts stated herein. I make this affidavit under penalty of perjury pursuant to the laws of the State of Texas, and I understand that false statements herein are subject to criminal penalties for perjury.

1. On July 3, 2025, Matthew Jackson established water service at 8230 Glen Valley Dr., Houston, Texas 77061.

2. On August 1, 2025, Mayra Amazqueta contacted Houston Public Works Customer Service regarding water-related issues at the above property.

3. Ms. Amazqueta requested that water service be turned off and the meter locked because there was an unauthorized occupant residing in her home.

4. In response to Ms. Amazqueta's request, Houston Public Works conducted an ownership verification using the Harris County Appraisal District ("HCAD") website.

6. The HCAD website identified Ms. Amazqueta as the lawful owner of the property located at 8230 Glen Valley Dr., Houston, Texas 77061.

7. Based on the ownership verification, Houston Public Works honored Ms. Amazqueta's request and disconnected the water service to the property.

8. On September 12, 2025, Mr. Jackson contacted Houston Public Works and requested that the water account for 8230 Glen Valley Dr., Houston, Texas 77061 be placed under the name "Save a Life Homes," submitting a warranty deed in support of this request.

9. After conducting an HCAD search, which showed Save a Life Homes as the property owner, Houston Public Works activated the water account under the name of Save a Life Homes.

10. I make this affidavit in support of the motion filed in this action and to confirm the truth and accuracy of the facts stated above.



EXHIBIT
A
exhibitsticker.com

Case 4:25-cv-04354 Document 53-1 Filed 06/11/26 in TXSD Page 2 of 2

Executed on this 27 day of March, 2026, in the State of

Texas. [signature]

[Rogina Guillory]

Subscribed and sworn to before me on this 27th day of March, 2026.

Jamie Wolf

Notary Public, State of Texas

My Commission Expires: 4/27/2029

JAMIE WOLF
Notary Public, State of Texas
Commission Expires 04-27-2029
Notary ID 129406953

| | | | |
|---|---|---|---|
| | EXECUTIVE ORDER<br>**INDEPENDENT POLICE OVERSIGHT BOARD AND OFFICE OF POLICING REFORM AND ACCOUNTABILITY** | | |
| | | EO No. | EO 1-5 Revised |
| | | Effective Date: | Upon Approval |

Exhibit NN

## 1. AUTHORITY

Article VI, Houston City Charter - administrative authority of the Mayor.

## 2. PURPOSE

To create a hybrid model of civilian police oversight, which includes both a reformed and diverse civilian board and a full-time, paid administrative and investigative staff to independently review and investigate allegations of misconduct by employees of the Houston Police Department (HPD).

## 3. OBJECTIVE

To reform the current Independent Police Oversight Board (IPOB) into an effective, diverse, civilian board and to create the Office of Policing Reform and Accountability (OPRA), an office of full-time, paid, administrative and investigative staff under the Office of Inspector General, which together can provide a system of increased accountability and transparency for HPD.

## 4. ORGANIZATION —INDEPENDENT POLICE OVERSIGHT BOARD

4.1. **Appointment.** The Independent Police Oversight Board (IPOB or the Board) shall consist of thirty- one (31) members, appointed by the Mayor and confirmed by City Council in accordance with the City's standard appointment process, including one member from each council district. Each member shall:

4.1.1. Have resided for at least one year, and continue to reside during the term of his/her appointment, within the Houston-The Woodlands-Sugar Land Metropolitan Statistical Area as defined by the Office of Management and Budget within the Executive Office of the President of the United States.

4.1.2. Be willing to spend at least four to five hours a week reviewing cases and attending meetings;

4.1.3. Be willing to make a commitment to serve for up to three years;

4.1.4. Be willing to attend a two-to-three-day training session;

4.1.5. Have no prior felony convictions or convictions for a crime involving moral turpitude;

4.1.6. Hold no political office;

4.1.7. Not be employed by any law enforcement agency;

4.1.8. Not be an employee of the City of Houston; and

4.1.9. Not be an immediate family member of any HPD personnel.

| Approved: | Date Approved: | Page 1 of 7 |
|---|---|---|
| [signature] | 11/09/2021 | |

4.2. **Board and Panel Chairs.** The Mayor shall appoint, and City Council shall confirm, one member to specifically serve as Chair of the Board and six (6) members to serve as Panel Chairs.

4.3. **Panels.** The Board shall be divided into six (6) panels consisting of five members each, including the Panel Chair. The Board Chair, in consultation with each Panel Chair, shall assign members to each of the panels with a view toward maintaining diversity and varied expertise and experience on each panel. One alternate member shall be assigned to each panel.

4.4. **Terms.** Since its inception, IPOB member terms have been staggered. All appointments shall be for a term of two years. Members may serve for no more than four consecutive terms. Appointments that fill the remainder of an unexpired term with less than 12 months remaining shall not be counted towards the term limit. Any vacancy that occurs during an unexpired term shall be filled for the remainder therefor in the manner prescribed in Section 4.1. A member shall hold office until the member's successor has been nominated by the Mayor and confirmed by City Council.

4.5. **Training.** Board members shall attend training necessary to ensure that members can effectively carry out their responsibilities.

4.6. **Quorum.** Three members of a panel, including the Panel Chair, shall constitute a quorum for the conduct of panel business. In the event a Panel Chair is unable to attend a meeting of his/her panel, then the Panel Chair shall, with the approval of the Board Chair, designate a member of his/her panel to serve as acting Chair for such meeting.

4.7. **Meetings.**

4.7.1. Panel meetings shall be held during normal business hours or, upon approval of the Board Chair and the Deputy Inspector General (DIG), after hours.

4.7.2. The City shall provide meeting/office space for the panels and their members.

4.7.3. All meetings shall be held in person and in accordance with the rules established by the Board Chair in consultation with the DIG.

4.8. **Absence.** If a panel member will not be present at a meeting, he/she shall notify the Panel Chair at least three (3) business days prior to the scheduled meeting time so that an alternate may be called. If a Panel Chair will not be present, he/she shall notify the Board Chair at least three (3) business days in advance so that an acting chair may be named.

4.9. **Vacancies.** If a Board member position becomes vacant through a member's death, disqualification, resignation, or removal from the Board, the same shall be filled by an alternate selected by the Mayor for the unexpired portion of such person's term.

4.10. **Removal.** The Mayor may remove a Board member for failure to attend meetings or for inappropriate behavior.

## 5. RESPONSIBILITIES — IPOB

### 5.1. Independent Police Oversight Board

5.1.1. The Board, acting through its designated panels, and with the assistance and support of OPRA:

5.1.1.1. May review any and all internal investigations, and shall review internal investigations of possible misconduct by employees of HPD that involve any of the following:

(a) Use of force;

(b) Discharge of firearms; and/or
(c) Serious bodily injury or death;

5.1.1.2. Shall review investigations identified in 5.1.1.1 to determine if each investigation is sufficient and the conclusions are supported by evidence;

5.1.1.3. Shall recommend, in writing, to the Chief of Police on every case it reviews, whether or not training and/or policy revisions are appropriate;

5.1.1.4. Shall identify complaints to be investigated by OPRA, independently of IAD;

5.1.1.5. Shall review existing and proposed HPD policies;

5.1.1.6. Shall review and make recommendations to the Chief of Police on the employment suitability of all applicants for employment as police trainees;

5.1.1.7. Shall assist in identifying and prioritizing non-mandated training to ensure police trainees and classified officers receive not only skill-based training and education, but also interpersonal and relational education designed to ensure that all citizens are treated with dignity and respect; including crisis-intervention training and training on the handling of citizens with mental-health issues;

5.1.1.8. Shall review the periodic evaluation of officer conduct, including psychological evaluation, testing and counseling to ensure that officers maintain the highest degree of professionalism in the performance of their duties;

5.1.1.9. Shall monitor community concerns, report same to the Chief of Police, and conduct follow-up to ensure that such concerns are given due consideration in the operation of HPD; and

5.1.1.10. Shall recommend reforms related to HPD's recruiting, hiring, promotion, disciplinary, and termination policies and procedures.

5.1.2. **Administrative Disciplinary Committee (ADC).** The Board Chair and a panel member from each panel appointed by the Panel Chair shall sit on the ADC, an internal committee currently responsible for reviewing investigations containing sustained allegations and making a disciplinary recommendation to the Chief of Police. The ADC shall include such HPD personnel, as may be assigned by the Chief of Police. Members chosen to sit on the ADC must be able to serve a minimum of six consecutive months.

5.1.3. **Board Chair.** The Board Chair shall:

5.1.3.1. Supervise the overall operation of the Board;

5.1.3.2. Meet periodically with the DIG to ensure proper coordination and responsiveness to the work of the Board;

5.1.3.3. Meet periodically with the Chief of Police to ensure proper coordination and responsiveness to the work of the Board;

5.1.3.4. Submit quarterly reports to the Mayor and the Council Public Safety and Homeland Security Committee to report on the work of the Board;

5.1.3.5. Assign members and tasks to each panel, as set forth above;

5.1.3.6. Serve as a member of the ADC;

5.1.3.7. Recommend removal of members of the Board to the Mayor in accordance with paragraph 4.10, above; and

5.1.3.8. Act as spokesperson for the Board in communicating with the community.

5.1.4. **Panel Chair**. Each Panel Chair shall:

5.1.4.1. Call meetings of his/her panel, providing at least 72-hours' notice to panel members, except in case of emergency;

5.1.4.2. Preside at all meetings of his/her panel;

5.1.4.3. Submit a roster of members and alternates in attendance at panel meetings to the Board Chair and the DIG;

5.1.4.4. Submit a log of cases reviewed, along with the recommendations made to the Chief of Police, to the Board Chair and to the DIG;

5.1.4.5. Coordinate with the Internal Affairs Division (IAD) to have case files available for review prior to the panel meeting at which they will be considered;

5.1.4.6. Coordinate with IAD to ensure availability of an appropriate IAD officer at the panel meeting at which the case will be considered;

5.1.4.7. Ensure that IPOB Form #1 is completed and attached to each investigative file reviewed by that panel;

5.1.4.8. Ensure that IPOB Form #2 is made available to any dissenting member and, if completed, attached to that particular investigative file;

5.1.4.9. On behalf of his/her panel or a panel member, submit any special request to the IAD or the Chief of Police; and

5.1.4.10. Serve as a member of the ADC or appoint a member of his/her panel to serve on the ADC.

5.1.5. **Panel member.** Each panel member shall:

5.1.5.1. Review investigations conducted by IAD and participate in recommendations;

5.1.5.2. Sign IPOB Form #1 or #2 regarding each investigation reviewed by the panel member;

5.1.5.3. If a dissenting member, complete and sign IPOB Form #2;

5.1.5.4. Attend panel meetings as requested by the Panel Chair or his/her designee;

5.1.5.5. Serve as a member of the ADC when selected by the Panel Chair; and

5.1.5.6. Notify the Panel Chair when he/she will not be able to attend a called panel meeting.

## 6. ORGANIZATION —OFFICE OF POLICING REFORM AND ACCOUNTABILITY

6.1. **The Office of Policing Reform and Accountability.** OPRA shall provide administrative and investigatory support for IPOB.

6.2. **Appointment.** The Mayor shall appoint, in accordance with the City's standard appointment process, an executive-level Deputy Inspector General (DIG), Office of Policing Reform and Accountability, in the Office of Inspector General to direct the functions of the OPRA to achieve this Executive Order's purpose and objective.

6.3. **Deputy Inspector General, Office of Policing Reform and Accountability.** The DIG shall have dual reporting, reporting directly to the Inspector General and a dotted line to the Mayor or Mayor's designee, and shall direct the functions of the OPRA to achieve this Executive Order's purpose and objective.

## 7. RESPONSIBILITIES —OFFICE OF POLICING REFORM AND ACCOUNTABILITY

7.1. **The Office of Policing Reform and Accountability** shall:

7.1.1. Update website and, in addition to the other avenues for complaints, create a process to allow community members to submit complaints online;

7.1.2. Ensure community members can submit complaints in-person at community organizations, such as the National Association for the Advancement of Colored People (NAACP), League of United Latin American Citizens (LULAC), and any other community organizations approved by the DIG;

7.1.3. Translate and accept complaint forms in multiple languages;

7.1.4. Communicate in a transparent and timely fashion with complainants, including confirmation of complaint intake and the results of the complaint;

7.1.5. Serve as an ombudsman to complainants or potential complainants to assist them in understanding the process and requirements;

7.1.6. Provide training or evaluate and select an independent training group to provide training, to Board members at the beginning of their terms and on an annual basis;

7.1.7. Establish timelines, create reports of implementation, and measure progress toward increased independence and transparency;

7.1.8. Attend meetings of the IPOB panels as necessary to achieve the objectives of the office;

7.1.9. Handle the day-to-day functioning of OPRA; and

7.1.10. Audit IPOB annually.

7.2. **The Office of Policing Reform and Accountability** shall assist and support IPOB to:

7.2.1. Investigate allegations of police misconduct as identified by the Board, independent of IAD;

7.2.2. Develop and implement specific plans for community outreach at defined times and locations, including outreach to: (a) inform community of process for complaints; (b) listen to community on specific issues; (c) report back to community on results; and (d) raise the profile of IPOB and OPRA in the community; and

7.2.3. Perform recordkeeping and administrative tasks.

**8. CHIEF OF POLICE**

8.1. **Chief of Police.** The Chief of Police or his/her designee shall:

8.1.1. Facilitate access to personnel and/or records necessary for the Board and the OPRA to accomplish their responsibilities as set forth in this Executive Order;

8.1.2. Provide access to investigative files that will be considered by panels;

8.1.3. Ensure that each IPOB form is incorporated into and maintained as a permanent part of the file to which it pertains;

8.1.4. Consider Board requests for additional investigation by IAD and, if approved, forward to IAD for handling; and

8.1.5. Consider recommendations of the Board.

**9. INTERNAL AFFAIRS**

9.1. **Internal Affairs.** Internal Affairs shall:

9.1.1. Provide DIG and Chair with a list of all IAD matters;

9.1.2. Provide Chair and Panel Chairs with access to IAD files for review;

9.1.3. Be available for questions by Board and Panel Chairs, as described above;

9.1.4. Coordinate with DIG, as necessary, to support OPRA to accomplish its responsibilities set forth in this Executive Order; and

9.1.5. Conduct additional investigations, as requested by the Board and directed by the Chief of Police.

**10. CASE REVIEW PROCEDURE**

10.1. **Police Department.**

10.1.1. Upon completion of an investigation, the Internal Affairs Division will forward the investigative file to the designated Board Panel.

10.1.2. Upon request of the Panel Chair, a member of the Internal Affairs Division will meet with the panel to answer any questions they might have concerning the investigation.

10.1.3. If a majority of the quorum of the members of a panel present, in consultation with the DIG, decides that additional investigation is needed, the Panel Chair and the DIG will meet with the Internal Affairs Division Commander to discuss the panel's concerns. If the Internal Affairs Division Commander agrees with the panel, he/she will see that the additional investigation is completed and then return the file to the panel for panel review.

10.1.4. If the Internal Affairs Division Commander disagrees with the panel, the request will be forwarded to the Chief of Police. If the Chief of Police agrees that additional investigation is required, the investigative file will be returned to the Internal Affairs Division, which will complete the additional investigation and then return the file to the panel.

10.1.5. If the Chief of Police disagrees with the panel's request for additional investigation, he shall meet with the DIG in an effort to reach agreement on such additional investigation. In the event agreement cannot be reached, the DIG may conduct such additional investigation as he/she deems necessary, as authorized by law, to enable the panel to carry out its duties under this Executive Order.

10.2. **Board Panels.**

10.2.1. A panel shall have a minimum of fourteen (14) calendar days in which to complete its review of an investigation and make a recommendation to the Chief of Police. The Chief of Police will determine this timeline based on case deadlines under existing law. Investigative files shall be available in a secure reading area for the entire period, with reasonable access.

10.2.2. The panel shall meet to consider each matter presented to it.

10.2.3. The investigative file for the matter to be reviewed shall be left with the panel, and shall not be removed, for the duration of the meeting at which it will be considered. No copies of any document or paper in the investigative file shall be made by, or for, members of the review panel; however, panel members may take notes.

10.2.4. The panel shall vote on each matter presented to it; each matter shall be decided by a majority vote of the quorum present.

10.2.5. If additional investigation is conducted by OPRA, when a file is returned to the panel with the results of the additional investigation, the panel shall consider the additional information in making its recommendation.

10.2.6. The panel shall record its recommendation on IPOB Form #1, and the Chair shall attach the form to the file along with any completed IPOB Form #2 related to the case and submit the file to the Chief of Police.

10.2.7. In the event a panel fails to meet or complete its review within the timeframe requested after receipt of additional investigation, if any, the Board shall be considered to have waived its right to review the case and it shall be forwarded to the ADC.

10.2.8. In accordance with Chapter 143 of the Local Government Code, IPOB members must maintain strict confidentiality in connection with all investigative materials.

10.3. **Office of Policing Reform and Accountability.**

10.3.1. OPRA investigates complaints as assigned by the Board.

10.3.2. With the exception of the timeframe and the location requirements, IPOB review of an independent investigation conducted by OPRA shall be in accordance with 10.2.

10.3.3. In the event a complaint is investigated by both IAD and OPRA, the same panel shall review both investigations, if reasonably possible.

**11. CONFLICT AND REPEAL**

11.1. This Order supersedes Executive Order 1-5, Independent Police Oversight Board, signed July 21, 2021, which shall be of no further force or effect.

Exhibit OO

Harris County
Justice of the Peace Courts

Search Harris County
Search

Online Services
Find Your Case and Court Date
Pay Your Traffic Ticket
Apply for Driver Safety Course
Find Daily Dockets

Information About
Traffic Cases
Bad Check Cases
Criminal Cases
Small Claims Cases
Eviction Cases
Justice Court Suits
Weddings

Downloadable Forms
Driver Safety Course Application
Traffic Ticket Reply Form
Plea Form for Criminal Cases
More Forms>>

Homepage for the J.P. Courts
Harris County Homepage

## Information about Justice Court Cases

An Eviction Case is a lawsuit brought to recover possession of real property, usually by a landlord against a tenant. A claim for rent may be joined with an Eviction Case if the amount of rent due and unpaid is not more than $20,000 (or $10,000 if the case was filed prior to September 1, 2020), including attorney fees, if any, but excluding statutory interest and costs. The Texas Property Code, Chapters 24, 91, 92, 93, and 94, govern the relationship between landlord and tenant, tenancies, and eviction proceedings. Eviction Cases are governed by Rules 500 – 507, and Rules 510.1 0 510.13, Texas Rules of Practice in Justice Courts. http://www.jp.hctx.net/Images/white.space Eviction Cases must be filed in the Justice Court in the Justice of the Peace Precinct in the county in which the real property is located. See Section 24.004, Texas Property Code.

**Notice To Vacate Prior to Filing Eviction Suit**

http://www.jp.hctx.net/Images/white.space
*Default or Holdover.* If the occupant is a tenant under a written lease or oral rental agreement, the landlord must give a tenant who defaults or holds over beyond the end of the rental term or renewal period at least three (3) days' written notice to vacate the premises before the landlord files an eviction, unless the parties have contracted for a shorter or longer notice period in a written lease or agreement.
http://www.jp.hctx.net/Images/white.space
A landlord who files an eviction on grounds that the tenant is holding over beyond the end of the rental term or renewal period must also comply with the tenancy termination requirements of Section 91.001 of the Texas Property Code.
http://www.jp.hctx.net/Images/white.space
*Tenant at Sufferance.* If the occupant is a tenant at will or by sufferance, the landlord must give the tenant at least three (3) days' written notice to vacate before the landlord files a forcible detainer suit unless the parties have contracted for a shorter or longer notice period in a written lease or agreement.
http://www.jp.hctx.net/Images/white.space
*Tax Foreclosure.* If a building is purchased at a tax foreclosure sale or a trustee's foreclosure sale under a lien superior to the tenant's lease and the tenant timely pays rent and is not otherwise in default under the tenant's lease after foreclosure, the purchaser must give a residential tenant of the building at least 30 days' written notice to vacate if the purchaser chooses not to continue the lease. The tenant is considered to timely pay the rent under this subsection if, during the month of the foreclosure sale, the tenant pays the rent for that month to the landlord before receiving any notice that a foreclosure sale is scheduled during the month or pays the rent for that month to the foreclosing lienholder or the purchaser at foreclosure not later than the fifth (5th) day after the date of receipt of a written notice of the name and address of the purchaser that requests payment. Before a foreclosure sale, a foreclosing lienholder may give written notice to a tenant stating that a foreclosure notice has been given to the landlord or owner of the property and specifying the date of the foreclosure.

See Section 24.005, Texas Property Code.
http://www.jp.hctx.net/Images/white.space
*Protecting Tenants at Foreclosure Act.* The Protecting Tenants at Foreclosure Act of 2009 (the "Act") went into effect May 20, 2009, and expires December 31, 2014. The tenant protection provisions apply in the case of any foreclosure on a "federally related mortgage loan" or on any dwelling or residential real property. Under the Act, "any immediate successor in interest in the property assumes such interest subject to providing to a bona fide tenant a notice to vacate at least 90 days before the effective date of such notice. Tenants under a bona fide lease or tenancy are permitted to stay in the residence until the end of their leases, with two exceptions: (1) When the property is sold after foreclosure to a purchaser who will occupy the property as a primary residence or, (2) When there is no lease or the lease is terminable at will under state law. 12 U.S.C. § 5220.
http://www.jp.hctx.net/Images/white.space

**Delivery of Notice to Vacate**

http://www.jp.hctx.net/Images/white.space
The notice to vacate shall be given in person or by mail at the premises in question. Notice in person may be by personal delivery to the tenant or any person residing at the premises who is 16 years of age or older or personal delivery to the premises and affixing the notice to the inside of the main entry door. Notice by mail may be by regular mail, by registered mail, or by certified mail, return receipt requested, to the premises in question. If the dwelling has no mailbox and has a keyless bolting device, alarm system, or dangerous animal that prevents the landlord from entering the premises to leave the notice to vacate on the inside of the main entry door, the landlord may securely affix the notice on the outside of the main entry door in a sealed envelope that contains the notice and on which is written the tenant's name, address, and in capital letters, the words "IMPORTANT DOCUMENT" or substantially similar language and must, not later than 5 pm of the same day, deposit the notice in the mail from within the same county.

**General Information**

This information is furnished to you to provide basic information relative to the law governing procedures for eviction cases in the Harris County Justice Courts.

The Harris County Justices of the Peace and the Clerks of the Harris County Justice Courts are not allowed to give legal advice. You are urged to review the applicable laws and to consult an attorney of your choice for further information or answers to specific legal questions.

You have the right to a trial by a jury and to be represented by an attorney of your choice, or to represent yourself..

Disclaimer: The law is constantly changing and there may be times when the information on this web site will not be current. This information is provided for general informational purposes only and is not intended as legal advice. This information is not a comprehensive treatment of the subject and is not a substitute for advice from an attorney.

http://www.jp.hctx.net/Images/white.space
The notice period is calculated from the day on which the notice is delivered.
http://www.jp.hctx.net/Images/white.space
If before the notice to vacate is given as required by this section the landlord has given a written notice or reminder to the tenant that rent is due and unpaid, the landlord may include in the notice to vacate required by this section a demand that the tenant pay the delinquent rent or vacate the premises by the date and time stated in the notice. Section 24.005, Texas Property Code.
http://www.jp.hctx.net/Images/white.space
**Notice for Terminating Certain Tenancies**
http://www.jp.hctx.net/Images/white.space
Unless the landlord and tenant have otherwise agreed in a written instrument, or there has been a breach of contract, Section 91.001 of the Texas Property Code provides that a monthly tenancy or a tenancy from month to month may be terminated by the tenant or the landlord giving notice of termination to the other. If the rent-paying period is at least one month, the tenancy terminates on whichever of the following days is the later of the day given in the notice for termination, or one month after the day on which the notice is given.
http://www.jp.hctx.net/Images/white.space
If the rent-paying period is less than a month, the tenancy terminates on whichever of the following days is the later of the day given in the notice for termination, or the day following the expiration of the period beginning on the day on which notice is given and extending for a number of days equal to the number of days in the rent-paying period.
http://www.jp.hctx.net/Images/white.space
If a tenancy terminates on a day that does not correspond to the beginning or end of a rent-paying period, the tenant is liable for rent only up to the date of termination.
http://www.jp.hctx.net/Images/white.space
**Right to Possession**

The only issue in an eviction case is the right to actual possession of the premises. No counterclaims or joinder of suits against third parties are allowed in an eviction case, but may be brought in a separate suit in a court of proper jurisdiction. **Rule 510.3**
http://www.jp.hctx.net/Images/white.space
http://www.jp.hctx.net/Images/white.space
**Recovery of Attorney's Fees and Costs**
http://www.jp.hctx.net/Images/white.space
To recover attorney's fees in an eviction suit, a landlord must give a tenant who is unlawfully retaining possession of the landlord's premises a written demand to vacate the premises. The demand must state that if the tenant does not vacate the premises before the 11th day after the date of receipt of the notice and if the landlord files suit, the landlord may recover attorney's fees. The demand must be sent by registered mail or by certified mail, return receipt requested, at least 10 days before the date the suit is filed.
http://www.jp.hctx.net/Images/white.space
If the landlord gives this notice, or if a written lease entitles the landlord to recover attorney's fees, a prevailing landlord is entitled to recover reasonable attorney's fees from the tenant.
http://www.jp.hctx.net/Images/white.space
If the landlord gives this notice, or if a written lease entitles the landlord or the tenant to recover attorney's fees, the prevailing tenant is entitled to recover reasonable attorney's fees from the landlord. A prevailing tenant is not required to give notice in order to recover attorney's fees under this subsection.
http://www.jp.hctx.net/Images/white.space
The prevailing party is entitled to recover all costs of court.
http://www.jp.hctx.net/Images/white.space
See Section 24.006, Texas Property Code.

**Representation**
An individual may represent himself or herself in Justice Court, or may be represented by an attorney. In an Eviction Case, an individual may be represented by an authorized agent. **Rule 500.4.**

In an Eviction Case, a corporation or other entity may be represented by an an attorney, or by an employee, owner, officer, or partner who is not an attorney, and may be represented by a property manager or other authorized agent in an Eviction Case. **Rule 500.4.**

In an Eviction Case in Justice Court based on nonpayment of rent or holding over beyond a rental term, the parties may represent themselves or be represented by their authorized agents, who need not be attorneys.

In any Eviction Case in Justice Court, an authorized agent requesting or obtaining a default judgment need not be an attorney. See Section 24.011, Texas Property Code.

## Filing Eviction Cases

**Computation of Time for Eviction Cases**
While the timely filing of a document by depositing the document in the United States mail on or before the date it is due is allowed in an Eviction Case, parties to the Eviction Case are warned that if a document filed by mail is not received by the Court by the due date, the Court may take any action authorized by the Rules, including issuing a writ of possession requiring a tenant to leave the property. **Rule 510.2.**

**Petition**

http://www.jp.hctx.net/Images/white.space

A petition seeking an eviction must be filed in the Justice of the Peace Precinct in which the premises are located. To begin an eviction action, the plaintiff, usually the landlord, must file a petition in writing stating the following:

(1) the name of the plaintiff;

(2) the name, address, telephone number, and fax number, if any, of the plaintiff's attorney, if applicable, or the address, telephone number, and fax number, if any, of the plaintiff;

(3) the name, address, and telephone number, if known, of the defendant; and

(4) if the plaintiff consents to email service of the answer and any other motions or pleadings, a statement consenting to email service and email contact information.

In addition, the petition must contain the following information:

(1) a description, including the address, if any, of the premises that the plaintiff seeks possession of;
(2) a description of the facts and the grounds for eviction;
(3) a description of when and how notice to vacate was delivered;
(4) the total amount of rent due and unpaid at the time of filing, if any; and
(5) a statement that attorney fees are being sought, if applicable.

http://www.jp.hctx.net/Images/white.spaceThe complaint should list all home and work addresses of each tenant and state that the landlord knows of no other home or work addresses of the tenant in the county where the premises are located.

Each tenant who has signed a lease must be joined in the eviction proceeding.

**Filing Fees**

http://www.jp.hctx.net/Images/white.space

The Justice of the Peace must collect fees for the filing of a petition in the Justice Court. Section 118.121, Texas Local Government Code governs the filing fee, and additional fees for basic civil legal services to indigents (Section 51.941, Texas Government Code) are applicable. A summary of court costs and service fees is available for download.http://www.jp.hctx.net/Images/white.space

The Commissioners Court of Harris County sets the fee to be charged for services of the Harris County Sheriff and Constables. See Section 118.131, Texas Local Government Code. A summary of court costs and service fees is available for download.http://www.jp.hctx.net/Images/white.space

**Issuance of Citation**

http://www.jp.hctx.net/Images/white.space

When the case has been filed and the filing fee and the service fee have been paid, the clerk will issue a citation and deliver the citation as directed by the plaintiff. If the eviction is based on a written residential lease, the plaintiff must name as defendants all tenants obligated under the lease residing at the premises. **Rule 510.3.**

http://www.jp.hctx.net/Images/white.space

The plaintiff is responsible for obtaining service of the citation. A copy of the petition is attached to the citation. The citation is directed to the defendant and informs the defendant of the filing of the petition. The citation notifies that the defendant must appear for trial at the Justice Court on the date specified in the citation, which must not be less than 10 days nor more than 21 days after the petition is filed, and warns that the defendant's failure to appear in person for trial may result in a default judgment. The citation also informs the defendant of the right to a jury trial on request and payment of the jury fee in the amount of $22.00 no later than 3 days before the date set for trial.

The citation includes the following notice to the defendant, printed in English and Spanish in conspicuous bold print:

http://www.jp.hctx.net/Images/white.space

SUIT TO EVICT

**http://www.jp.hctx.net/Images/white.space**

**THIS SUIT TO EVICT INVOLVES IMMEDIATE DEADLINES. A TENANT WHO IS SERVING ON ACTIVE MILITARY DUTY MAY HAVE SPECIAL RIGHTS OR RELIEF RELATED TO THIS SUIT UDNER FEDERAL LAW, INCLUDING THE SERVICEMEMBERS CIVIL RELIEF ACT (50 U.S.C. APP. SECTION 501 ET SEQ) OR STATE LAW, INCLUDING SECTION 92.017, TEXAS PROPERTY CODE. CALL THE STATE BAR OF TEXAS TOLL-FREE AT 1-877-9TEXBAR IF YOU NEED HELP LOCATING AN ATTORNEY. IF YOU CANNOT AFFORD TO HIRE AN ATTORNEY, YOU MAY BE ELIGIBLE FOR FREE OR LOW-COST LEGAL ASSISTANCE;**

**DEMANDA PARA DESALOJAR ESTA DEMANDA PARA DESALOJAR INVOLUCRA PLAZOS INMEDIATOS. UN INQUILINO QUE ESTA EN SERVICIO MILITAR ACTIVO PUEDE TENER DERECHOS ESPECIALES O SOCORRO EN RELACION CON ESTE TRAJE POR LA LEY FEDERAL, INCLUIDOS LOS MIEMBROS DEL SERVICIO CIVIL RELIEF ACTUAR (50 U.S.C. APP. SECCION 501 Y SS.) O LA LEY DEL ESTADO, INCLUIDA LA SECCION 92.017, TEXAS CODIGO DE LA PROPIEDAD. LLAME AL COLEGIO DE ABOGADOS DE TEXAS (STATE BAR OF TEXAS), LLAMADA GRATUITA AL 1-877-9TEXBAR SI USTED NECESITA AYUDA PARA LOCALIZAR A UN ABOGADO. SI NO ESTÁ A SU ALCANCE CONTRATAR A UN ABOGADO,**

**USTED PUDIERA SER ELEGIBLE PARA ASESORIA LEGAL GRATUITA O DE BAJO COSTO.**

**Service of Citation**

http://www.jp.hctx.net/Images/white.space

The citation in an Eviction Case must be served by a sheriff or constable, unless otherwise authorized by written order of the Court.

http://www.jp.hctx.net/Images/white.space

Citations may be served by personal delivery to the defendant, or by leaving a copy of the citation with the petition attached with a person over the age of 16 years at the defendant's usual place of residence.

Service must be made at least 6 days before the day set for trial. The Return must be filed at least one day before trial.

http://www.jp.hctx.net/Images/white.space
If attempts to serve the defendant are unsuccessful, and the petition lists all home and work addresses of the defendant that are known to the plaintiff, and the sheriff or constable files a sworn statement that diligent efforts were made to serve the citation on at least two occasions, including locations and times, at all addresses of the defendant in the county, the Court may allow service by delivery to the premises. Delivery of the citation to the premises must be completed at least 6 days before the trial date, by placing the citation with a copy of the petition attached through a door mail chute, slipping it under the front door, or if not possible, by securely affixing the citation to the front door or main entry to the premises. **Rule 510.4.**
http://www.jp.hctx.net/Images/white.space
http://www.jp.hctx.net/Images/white.space

**Trial**
http://www.jp.hctx.net/Images/white.space
Once served, the defendant may file a written answer, but whether or not an answer is filed, the defendant is required to appear for trial on the date specified in the citation.
http://www.jp.hctx.net/Images/white.space
If the defendant fails to enter an appearance or file an answer before the case is called for trial, and proof of service has been properly filed, judgment by default may be rendered. The clerk will immediately mail written notice of the default judgment to the defendant at the address of the premises. **Rule 501.6.**
http://www.jp.hctx.net/Images/white.space
http://www.jp.hctx.net/Images/white.space
Either the plaintiff or the defendant has the right to a trial by jury by making a written demand for a jury trial no later than 3 days before the trial date, and by paying a jury fee of $22.00. **Rule 510.7.**

**Postponement of Trial**
http://www.jp.hctx.net/Images/white.space
The trial in an eviction case cannot be postponed for more than 7 days total unless the plaintiff and defendant agree in writing to the postponement. **Rule 510.7.**
http://www.jp.hctx.net/Images/white.space
http://www.jp.hctx.net/Images/white.space
**Judgment**
http://www.jp.hctx.net/Images/white.space
If the plaintiff prevails, the court will enter judgment for the plaintiff for possession of the premises, and on request of the plaintiff and payment of required fees, will award a writ of possession. The writ of possession cannot issue before the 6th day after the date the judgment for possession is signed. If the tenant prevails, the court will give judgment for the tenant against the landlord for costs. **Rule 510.8.**
http://www.jp.hctx.net/Images/white.space

**Writ of Possession**
http://www.jp.hctx.net/Images/white.space
A landlord who prevails in an eviction suit is entitled to a judgment for possession of the premises and a writ of possession. "Premises" includes the unit that is occupied or rented and any outside area or facility that the tenant is entitled to use under a written lease or oral rental agreement, or that is held out for the use of tenants generally.
http://www.jp.hctx.net/Images/white.space
If a judgment is entered for the landlord in a residential eviction case based on non-payment of rent, the Court will determine the amount of rent to be paid each rental pay period during the pendency of any appeal and the amount will be noted in the judgment. If a portion of the rent is payable by a government agency, the court will determine and note in the judgment the portion of the rent to be paid by the government agency and the portion to be paid by the tenant. See Section 24.0053, Texas Property Code.
http://www.jp.hctx.net/Images/white.space
The writ of possession shall order the officer executing the writ to:
http://www.jp.hctx.net/Images/white.space
1. post a written warning of at least 8-1/2 by 11 inches on the exterior of the front door of the rental unit notifying the tenant that the writ has been issued and that the writ will be executed on or after a specific date and time stated in the warning not sooner than 24 hours after the warning is posted; and
http://www.jp.hctx.net/Images/white.space
2. when the writ of possession is executed:
http://www.jp.hctx.net/Images/white.space
(A) deliver possession of the premises to the landlord;
http://www.jp.hctx.net/Images/white.space
(B) instruct the tenant and all persons claiming under the tenant to leave the premises immediately, and, if the persons fail to comply, physically remove them;
http://www.jp.hctx.net/Images/white.space
(C) instruct the tenant to remove or to allow the landlord, the landlord's representatives, or other persons acting under the officer's supervision to remove all personal property from the rental unit other than personal property claimed to be owned by the landlord; and
http://www.jp.hctx.net/Images/white.space
(D) place, or have an authorized person place, the removed personal property outside the rental unit at a nearby location, but not blocking a public sidewalk, passageway, or street and not while it is raining, sleeting, or snowing.
http://www.jp.hctx.net/Images/white.space
The writ of possession authorizes the officer, at the officer's discretion, to engage the

services of a bonded or insured warehouseman to remove and store, subject to applicable law, part or all of the property at no cost to the landlord or the officer executing the writ.

http://www.jp.hctx.net/Images/white.space

The officer may not require the landlord to store the property.

http://www.jp.hctx.net/Images/white.space

The writ of possession must contain notice to the officer that under Section 7.003, Civil Practice and Remedies Code, the officer is not liable for damages resulting from the execution of the writ if the officer executes the writ in good faith and with reasonable diligence.

http://www.jp.hctx.net/Images/white.space

A sheriff or constable may use reasonable force in executing a writ under this section.

http://www.jp.hctx.net/Images/white.space

See Section 24.0061, Texas Property Code.

A writ of possession cannot be issued more than 60 days after a judgment for possession is signed, and a writ of possession cannot be executed after the 90th day after a judgment for possession is signed. **Rule 510.8.**

http://www.jp.hctx.net/Images/white.space

**Appeal**

http://www.jp.hctx.net/Images/white.space

There is no motion for new trial in an eviction proceeding. **Rule 510.8.**

If the Justice Court enters judgment for the landlord in a residential eviction case based on nonpayment of rent, the Justice Court shall determine the amount of rent to be paid each rental pay period during the pendency of the appeal and note that amount in the judgment.

During the appeal of an eviction case for nonpayment of rent, if a tenant fails to pay rent into the registry of the Justice Court or the County Civil Courts at Law as the rent becomes due under the rental agreement, the landlord may file a sworn motion with the County Civil Courts at Law stating that the tenant failed to pay rent as required. After hearing, if the County Civil Courts at Law find that the tenant has not paid the delinquent rent together with the landlord's attorney fees, if any, the County Civil Courts at Law will issue a writ of possession to be executed after the expiration of 5 days. See Section 24.0054, Texas Property Code.

http://www.jp.hctx.net/Images/white.spaceEither party may appeal from a final judgment in an Eviction Case within 5 days after the judgment is signed by filing a bond, making a cash deposit, or filing with the Justice Court a Sworn Statement of Inability to Pay. The Court will set the amount of the bond or cash deposit based on damages, if any, for withholding or defending possession of the premises during the appeal, loss of rentals during the appeal, and attorney fees, if any. **Rule 510.11.**

The bond or cash deposit must be payable to the appellee and must be conditioned on the appellant's prosecution of the appeal to effect and the payment of any judgment and all costs rendered against the appellee on appeal. A party filing a bond or making a cash deposit must serve written notice of the appeal on all other parties within 5 days of filing the bond or making the cash deposit.

A Sworn Statement of Inability to Pay may be contested within 5 days after the opposing party receives notice that the Sworn Statement of Inability to Pay was filed. If the contest is sustained, within 5 days of the date of the Justice Court's order sustaining the contest, the appellant may appeal the Justice Court's decision to the County Civil courts at Law by filing notice of the appeal of the contest with the Justice Court. The County Civil Courts at Law must set the contest for a hearing within 5 days. If the County Civil Courts at Law sustains the contest, within 1 business day, the appellant must file with the Justice Court either an appeal bond or make a cash deposit. **Rule 510.9.**

http://www.jp.hctx.net/Images/white.space

**Payment of Rent in Nonpayment of Rent Appeals**

http://www.jp.hctx.net/Images/white.space

If a defendant appeals an eviction for nonpayment of rent by filing a Sworn Statement of Inability to Pay, the Justice Court will give the tenant a written notice at the time the Sworn Statement of Inability to Pay is filed that notifies the tenant (1) of the amount of the initial deposit of rent that the tenant must pay into the registry of the Justice Court; (2) whether the initial deposit of rent must be paid in cash, cashier's check, or money order, and to whom the cashier's check or money order must be made payable; (3) the calendar date within 5 days of the date the Sworn Statement of Inability to Pay is filed, and if applicable, the time, by which the initial deposit must be paid; and (4) a statement that failure to pay the required amount into the Justice Court registry by the date and time specified may result in the issuance of a writ of possession without hearing.

The defendant appealing by Sworn Statement of Inability to Pay may remain in possession of the premises during the pendency of the appeal by (1) making the initial deposit of rent into the Justice Court registry within 5 days of the date the defendant files the Sworn Statement of Inability to Pay, and (2) paying the rent within 5 days of the rental due date under the rental agreement into the registry of the County Civil Courts at Law. **Rule 510.8**

http://www.jp.hctx.net/Images/white.space

See also Section 24.0053 and Section 24.0054, Texas Property Code.

http://www.jp.hctx.net/Images/white.space

**Right to Request Appointment of Attorney in County Civil Courts at Law after**

**Approval of Pauper's Affidavit**

http://www.jp.hctx.net/Images/white.space

A tenant appealing an Eviction Case by filing a Sworn Statement of Inability to Pay has the right to request the appointment of an attorney in the proceedings in the County Civil Courts at Law if the tenant was in possession of the residence at the time the eviction was filed. This right is exercised after the Sworn Statement of Inability to Pay has been approved and the appeal perfected by making a written application to the County Court at Law in which the appeal is filed.

http://www.jp.hctx.net/Images/white.space

http://www.jp.hctx.net/Images/white.space

An appointed attorney's representation is in the trial *de novo* in County Civil Court at Law. The County Civil Court at Law may terminate the representation for cause.

http://www.jp.hctx.net/Images/white.space

See Section 25.0020, Texas Government Code.

**Trial *de novo* in the County Civil Courts at Law**

An Eviction Case appealed to the County Civil Courts at Law will be tried at any time after the expiration of 8 days after the transcript is filed. If the defendant did not file a written answer in the Justice Court, the defendant must file a written answer in the County Civil Courts at Law within 8 days after the transcript is filed in the County Civil Courts at Law. Failure to file a written answer in the County Civil Courts at Law will result in the entry of a judgment by default. **Rule 510.12.**

**Writ of Possession Appeal**

At the conclusion of the appeal, a writ of possession, or execution, or both, will be issued by the County Clerk and will be executed by the Sheriff or Constable. A judgment of the County Civil Courts at Law cannot be stayed unless within 10 days from the date of judgment, the party further appealing the judgment of the County Civil Courts at Law files a supersedeas bond. **Rule 510.13.** See also Section 24.007, Texas Property Code

More Information about Eviction Cases

The information contained in this site was valid at the time of posting. Harris County assumes no liability for damages incurred directly or indirectly as a result of errors, omissions or discrepancies. Moreover, Harris County is not responsible for the content nor endorses any site which has a link from these pages. For additional information please review our Privacy Policy.

Exhibit PP

"In Plato's vision of a perfect society—in a republic that honors the core of democracy—the greatest amount of power is given to those called the Guardians. Only those with the most impeccable character are chosen to bear the responsibility of protecting the democracy."

—THE NOBILITY OF POLICING

# CITY OF HOUSTON

## MAYOR'S TASK FORCE ON POLICING REFORM

SEPTEMBER 2020

# THE PEOPLE ARE THE CITY

"Houston 911... Do you need medical, police, or fire? What is the address of your emergency?"

The conclusion of this call for service from a member of our community should not end in the death of a Black or Brown human being. All too often, this has been the case. Can this ever be different?

Citizens over the decades have increasingly entrusted law enforcement with the privilege to protect and serve its citizenry. After all, they are public servants.

This privilege is granted in Houston through the community's election of a Mayor, the appointment of a Police Chief by that Mayor, and the budget allocated to the department by vote of the City Council.

Over time, as the social fabric of society has evolved, Houstonians have allowed police officers to assume far too many non-law enforcement duties without proper context, training, and supervision. We must properly train and support partnerships to aid our officers.

We must examine 911 calls for police intervention–calls that all too often lead to on-the-scene escalation rather than de-escalation and so-called "justified" excessive force. Just because it is legal does not make it right, particularly if it leads to the death of a human being.

Change comes when we address culture and policies, track behaviors, establish appropriate consequences for one's actions, and conduct regular evaluations and assessments.

The titles of the cast members of these all-too-familiar tragedies and life-ending stories must change. The fixed roles of victims, villains, heroes, enemies, allies, supporters, and detractors are all in need of being re-examined and recast, particularly in the "majority-minority" city that is Houston. Transparency and accountability are essential components in achieving change.

In the events of recent months, it is clear in Houston and across the nation that our community, Mayor, City Council, Police Chief, officers, and their Union must all work together to protect and serve the constitutional rights of all our citizens.

The Mayor's Task Force on Policing Reform has listened to numerous voices of Houstonians and organizations, as to the type and kind of police department they desire and demand. We have engaged in extensive research on the issues and best practices around the country. The Task Force's community survey alone yielded over 7,000 responses.

Enclosed are the one hundred and four (104) recommendations for policing reform proposed by the 45 members and organizations of this citizen-led Task Force.

We look forward to your establishment of timelines, reports of implementation, and measurement of progress on behalf of all Houstonians. We stand ready to assist in the next phase of this ongoing process.

I close with this question: What will the fair, moral, and ethical treatment of all human being lives look like?

We have not asked this question because it is a hard question and therefore, we have avoided it. People want to do the right thing, but they do not know what it means in this post-George Floyd reality.

What do we believe? What do we stand for as a community? As a City?

Mayor Turner, we thank you for your trust and the privilege to serve our community. We served with a rich sense of our City's history; for those who have come before us and fought for racial justice and equality; for the current generations that are engaged; and for those yet to be born.

This is a call for servant leaders from all sectors of our community to have "The Fierce Urgency of Now."[1]

Submitted on this day, September 25, in the year 2020.

For Such a Time as This,[2]

Laurence J. "Larry" Payne
Chair, Mayor's Task Force on Policing Reform

"We are now faced with the fact that tomorrow is today. **We are confronted with the fierce urgency of now.** In this unfolding conundrum of life and history, there is such a thing as being too late. This is no time for apathy or complacency. This is a time for vigorous and positive action."

—MARTIN LUTHER KING, JR.

Societal governance is a sacred trust. Thus, laws and systems of government must originate from the highest moral and ethical principles and values to ensure equal treatment of and protection for every person.

Houston is sixteen years away from her bicentennial. On August 30, 2036, will Houston be a better place to live than it is today, or will it be worse? This is the key aspirational question that has guided our work.

Each shift, officers clad themselves in a bullet-proof vest and then strap a firearm on their hip as a part of donning the uniform. Those two pieces of equipment serve as twin reminders that policing is unique among the public services because as part of their service, police officers both risk their own lives and are authorized to exercise deadly force. We readily honor and esteem police officers for heeding this dangerous call to service. We also recognize that our task is to address problems in policing, especially those stemming from that power, indeed that too-often deadly power, granted to the police to do their work. The fact that confronts us in Houston in 2020 is that a Black person is roughly 3.4 times more likely to find themselves in the sights of that gun than is a White person.[3] The lived experience of Black and Brown Houstonians points to a problem in the culture of policing that we believe mandates immediate reform within the Houston Police Department ("HPD").

The key challenge ahead of us is to eliminate racism in policing. Without respect to the hearts or minds of individual officers, it is demonstrably true that there is racism embedded in how policing is effected across America and in Houston. Consciously or unconsciously, intentionally or unintentionally, our police officers play a role in a system that subjects Black and Brown persons to violence at a disproportionate rate. For these reasons, the system *in our City* requires reform.

In order to achieve the reforms our City needs, we recognize that law enforcement work must be reserved exclusively for exemplary citizens who prove worthy of the high honor and trust accorded the police. Falling short of this lofty ideal puts a civil society at risk. It subjects the public to implicit biases, invites abuses, and fosters distrust for law enforcement. Further, it undermines the peaceful coexistence of neighbors, creating chaos rather than community. We must have a police force that is responsible to the citizens of Houston *and* leads our nation in the highest virtues of policing.

This summer, following the deaths of Breonna Taylor and George Floyd, the American conscience was awakened to systemic racism in policing.[4] Those examples, and the numerous other recent prominent cases of police killings of Black people, reveal that our nation has an appalling problem in policing. This problem has not been held at bay by Houston's city limits. Black people in Houston are more likely to be pulled over by police across the city.

Our region's police are more likely to use force against Black people during a traffic stop.[5] Moreover in numerous conversations spawned by the work of the Task Force we asked Black men from across the socioeconomic strata and professional rungs of the ladder whether they had ever (1) been pulled over by the police when they had committed no crime and (2) whether the police had drawn their weapon on them. The answer was affirmative to both questions almost 100% of the time. Living with the constant concern that one might be pulled over and potentially shot is an anxiety-producing and weariness-inducing reality for Black citizens in general and Black men in particular. This is all to say, Black people and other minorities have borne the burden of unequal protection under the law.

Problems in policing are not restricted to Black people. In 1977, the HPD murder of Jose Campos Torres gripped the city.[6] This year, the shootings of Nicholas Chavez, Christopher Aguirre, Adrian Medearis, Rayshard Scales, and Randy Lewis[7]—not to mention the Harding Street Raid[8]—all point to a need to address systemic racism and reform the HPD. Even HPD Chief Acevedo told our Task Force, "I am the Chief of Police and I get nervous when a police officer pulls behind me."[9]

## *THE MORAL AND ETHICAL BASIS FOR CHANGE*

Policing is an essential part of the sacred trust of government. Houston has six major faith traditions: Christianity,[10] Judaism,[11] Islam,[12] Buddhism,[13] Hinduism,[14] and Sikhism.[15] Each tradition teaches the inherent dignity and worth of every person. Good people of every faith and of none hold the common ethical conviction that every person has value, deserves respect, and has the right to be treated fairly and equally. Furthermore, for a society to be ethical it must strive to have a fair system of justice. That justice must be administered and enforced in a manner such that no class or group of people is treated differently. All members of a society must feel protected and served by the representatives of the society, especially those who are authorized to carry weapons and exercise deadly force.

Houston has the potential to be "a city on a hill."[16] We are a model of industrious business success, and we are, in a very true sense, the future of the nation. Houston is in 2020 ethnically and demographically what America will be ethnically and demographically in 2050. We are a "majority-minority city" and the most ethnically diverse city in America, but our diversity has not yielded inclusivity. Policing reform is a critical step we must take to achieve the inclusivity required to be a great city. Recommendations on policing reform have been frequently accepted but rarely enacted.[17] The results of the Task Force's recommendations need to be applied lest we further demoralize our community. How many reports and task forces are needed before the HPD is accountable and reformed for the good? Moreover, what the Task Force is providing today is only the start. Beginning with dignity for each person we must imagine, enact, and work together to create **a safe city for all.**